Norman J. Roger, Esq. SBN 62554
Patricia M. Fama, Esq. SBN 138362
Roger, Scott & Helmer LLP
1001 Marshall Street, Suite 400
Redwood City, Ca. 94063-2000
Telephone: 650-365-7700
Facsimile: 650-365-0677

#126341
Attorneys for Plaintiff
INSURANCE CORPORATON OF NEW YORK

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

INSURANCE CORPORATION OF NEW YORK,

Plaintiff,

vs.

H & H PLASTERING, INC., CONCRETE SHELL STRUCTURES, INC. ; and DOES 1 through 10, inclusive,

Defendants.

Case No. C 07-05214 JL

**CASE MANAGEMENT STATEMENT OF INSURANCE CORPORATION OF NEW YORK**

January 16, 2008, 10:30 a.m.
Hon. James Larson
Ctrm F, 15th Floor

INSURANCE CORPORATION OF NEW YORK ("InsCorp") submits this Case Management Conference Statement and Proposed Order.

Defendants H&H Plastering, Inc. ("H&H") Concrete Shell Structures, Inc. ("CSS") have been served in this matter but have not yet filed responsive pleadings. It is anticipated that InsCorp will default the defendants and request a prove up hearing to conclude this action.

1. **JURISDICTION AND SERVICE**

In this diversity action InsCorp seeks Reformation of Insurance Policies and for Declaratory Relief in relation to an underlying construction defect dispute. InsCorp insured H&H Plastering, Inc. ("H&H"). Concrete Shell Structures, Inc. ("CSS") brought a cross claim against H&H in relation to a construction defect claim.

InsCorp is a New York corporation with its principal place of business in New York.

H&H is a California corporation with its principal place of business in Fremont, CA. H&H corporate status is suspended. H&H was served through its Agent for Service of Process, James Hoffman on or about November 6, 2007. Mr. Hoffman contacted counsel for InsCorp shortly after service and it was recommended that he contact counsel for H&H for advice regarding this matter.

CSS is a California corporation with its principal place of business in San Leandro, CA. CSS's corporate status is dissolved. CSS was served through its Agent for Service of Process, Brian R. Cameron on or about November 18, 2007.

By separate certified letters dated December 28, 2007, InsCorp advised H&H and CSS of their need to file responsive pleadings and stated that if no responsive pleading was filed InsCorp would request default judgment against the non-responding party. CSS by James Cameron, acknowledged the letter but CSS has not filed a responsive pleading.

2. **UNDERLYING FACTS**

In March of 1998 Britannia Pointe Grand Limited Partnership ("Britannia") entered into a contract with CSS to construct the exterior framing and EIFS (Exterior Insulation and Finish System) for the project. CSS subcontracted with H&H for the installation of the exterior EIFS

skin.

On June 16, 2004 Britannia filed and served a demand for mediation and arbitration against CSS alleging construction defects at the project. CSS, in turn, filed a cross-claim and demand for arbitration against subcontractors that performed work at the property, including H&H. (the "Britannia action") While Britannia's claims encompassed damages falling outside the scope of H&H's work, insofar as H&H is concerned Britannia alleged that improper installation of caulk joints and the EIFS system itself was contributing to water intrusion, and resultant damage, to the project.

The defense of CSS claims was tendered to both Inscorp and Gerling America Insurance Company ("Gerling"). Inscorp did not initially accept a defense obligation. Gerling initiated an action against Inscorp, *Gerling America Insurance Company v. Insurance Corporation of New York,* San Mateo Superior Court Action No. CIV 456421. That action resolved with Inscorp agreeing to defend H&H under a Reservation of Right in the Britannia action and to share Gerling's defense expenses.

InsCorp brings this action seeking reformation and a declaration regarding coverage under the policies of insurance issued to H&H. Inscorp insured H&H for four years. All policies issued to H&H consistent with Inscorp underwriting guidelines were required to and did include the EIFS. (Exterior Insulation Finish System) exclusion. The EIFS exclusion provides:

**This Endorsement Changes the Policy. PLEASE READ IT CAREFULLY.**

**EXCLUSION – DESIGNATED WORK**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

---

**Description of your work:**

1. The design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair, including remodeling, service, correction, or replacement, of an "exterior insulation and finish system" (commonly referred to as synthetic stucco) or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulkings or sealants in connection with such a system.

2. Any work or operations with respect to any exterior component, fixture or feature of any structure in an "exterior insulation and finish system" is used on any part of that structure. This exclusion applies to "your work" described in Paragraph 1. or Paragraph 2. above performed by you or on your behalf.

For the purposes of this endorsement, an "exterior insulation and finish system" means an exterior cladding or finish system used on any part of any structure, and consisting of:

a) a rigid or semi rigid insulation board made of expanded polystyrene or other materials and

b) the adhesive and/or mechanical fasteners used to attach the insulation board to the substrate, and

c) a reinforced base coat, and

d) a finish coat providing surface texture and color

---

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.

Through human error and oversight the issued policy declaration sheets on the middle two policy years (or "the renewal policies") did not list the EIFS endorsement. There is no question that under the first and fourth policy year there is no coverage pursuant to the EIFS endorsement. Through this action, InsCorp will rely upon the underwriting guidelines, the documentation of the intent upon policy issuance and renewal and the policies themselves to confirm the EIFS endorsement was intended and expected to be a part of each policy.

## INSURANCE POLICIES

InsCorp provided four years of insurance coverage to H&H from October 1, 1998 through October 1, 2002. Coverage for H&H from October 1, 1998 to October 1, 2001, was provided under Policy No. IC10019414 00 00 and two annual renewals. The policy number assigned to

the policy ends in "00 00" to indicate it is new business. Thereafter, and for renewed policies, the policy is given the renewal indicators "01 00" and 02 00" to indicate the first renewal and second renewal, respectively. The coverage was provided under the following policies:

- Policy No. IC10019414 00 00 (effective October 1, 1998 - (Continuous))
- Policy No. IC10019414 01 00 (effective October 1, 1999 - (Continuous))
- Policy No. IC10019414 02 00 (effective October 1, 2000 - (Continuous))
- Policy No. IC10021378 00 00 (effective October 1, 2001 – (Continuous))

The effective dates for Policy No. IC10019414 00 00 when first issued was "October 1, 1998 to (Continuous)." As to the policy effective dates, Policy No. IC10019414 00 00 provided:

> "Unless stated elsewhere, this policy is effective at 12:01a.m. at the mailing address shown below. If the policy period is shown above as 'continuous', the policy continues until it is non-renewed at the annual anniversary of the effective date or cancelled."

Policy No. IC10019414 00 00 included, as required by the underwriting guidelines the Exclusion –Designated Work (CG 2134 01 87 (EIFS)) (the "EIFS exclusion") The EIFS exclusion is listed on the Common General Liability Declarations of Policy No. IC10019414 00 00 and a copy of the EIFS exclusion was included and a part of Policy No. IC10019414 00 00.

The evidence will establish that the mandatory EIFS endorsement applied to class codes 92338 and 98449 and that a policy would not be issued to either of these class codes without the EIFS endorsement. The class code for H&H was 98449. In fact the H&H application for the October 1, 1998 – (Continuous) policy considered the option of providing the excluded EIFs coverage but it could not be quoted under the underwriting guidelines and the renewal checklist noted that the renewal policy would exclude EIFS as did the initial policy.

An underwriting referral prior to the first renewal on October 1, 1999, reflects the continuous nature of coverage under the October 1, 1998 – (Continuous) policy and states:

"No significant changes at renewal. A few small alterations here and there."

Without the EIFS exclusion for a plasterer such as H&H the policy would not have been

issued. Policy No. IC10019414 00 00 was first renewed for the period October 1, 1999 to (Continuous) under Policy No. IC10019414 01 00. When the first renewal was issued, the policy forms were computer generated. Certain forms, including the mandatory EIFS policy endorsement had to be user selected to be included on the policy declarations. This meant, an individual had to manually select the forms to be listed on the policy declarations. Because the use of the EIFS endorsement was mandatory for class 98449 plasters like H&H, the first renewal would not and could not have been issued without the EIFS endorsement. The renewal checklist confirmed the mandatory EIFS endorsement was to be included in the first renewal policy. Through error and oversight, it appears that the mandatory EIFS endorsement was not user selected and the policy forms, when generated, did not list the EIFS exclusion on the renewal. The EIFS exclusion was to have been included and a part of the policy on renewal in accordance with the underwriters notes and underwriting guidelines. The EIFS exclusion could not have been deleted from the policy upon first renewal for any plasterer including H&H. If the EIFS exclusion was omitted, the risk would not have been acceptable and the first renewal policy would not have been issued.

Policy No. IC10019414 00 00 was renewed a second time, on its anniversary, for the period October 1, 2000 to (Continuous) under policy number 1C10019414 02 00 (the "second renewal policy"). As with the first renewal, through error and oversight, it appears that the mandatory EIFS endorsement was again not user selected and the policy forms, when generated, did not list the EIFS exclusion. The EIFS exclusion was to have been included and a part of the policy on second renewal in accordance with the underwriter guidelines. The EIFS exclusion could not have been deleted from the policy upon second renewal for any plasterer including H&H. If the EIFS exclusion was omitted, the risk would not have been acceptable and the second renewal policy would not have been issued.

The omission of the EIFS exclusion from the general liability declaration pages of the first renewal and the second renewal of Policy No. No. IC10019414 00 00 was in error and contrary to the Underwriting Guidelines for the risk. The EIFS exclusion was not deleted from the policies

upon either renewal. It could not have been. If it had the policies would not and could not have been renewed.

The underwriting guidelines for the Artisan Insurance Program which mandated use of the EIFS exclusion for all plastering insureds continued and remained in force through the date of the second renewal on Policy No. IC10019414 00 00, October 1, 2000. Policy No. IC10019414 02 00 in force for the period October 1, 2000 – (Continuous) was non-renewed on the October 1, 2001 renewal anniversary.

Coverage for H&H was rewritten under a new policy, Policy No. 1C10021378-00-00. Policy No. IC 10021378 00 00, and a policy period of "October 1, 2001 to (Continuous)". Policy No. IC 10021378 00 00 did include the EIFS exclusion, consistent with the underwriting guidelines then in effect and consistent with the parties intention. Evidence will confirm it was clearly understood and required that the EIFS exclusion, which was a part of the coverage for H&H Plastering, Inc. over the three previous years, was to remain a part of and be included in the new policy.

Under these facts, the Inscorp renewal policies are without question subject to reformation to conform them to the intention of the contracting parties.

3. **Legal Issues**

a. Whether the middle two policies are subject to reformation?

b. Whether the policies provide coverage to H&H in relation to the CSS action?

c. Whether InsCorp is obligated to defend H&H in relation to the CSS action?

d. Whether InsCorp is obligated to indemnify H&H in relation to the CSS action?

4. **Motions** Should parties appear in action, Summary Judgment will be filed.

5. **Amendment of Pleadings** None Anticipated.

6. **Evidence Preservation** There are no anticipated evidentiary issues.

7. **Disclosures** Timely disclosure and exchange will be made if parties appear.

8. **Discovery** None anticipated at this time.

9. **Class Action** Not Applicable.

10. **Related Cases** The underlying action is a demand for arbitration.

11. **Relief Sought** Reformation of Insurance Policies and Declaration of no coverage in relation to the Britannia action.

12. **Settlement and ADR** None to date.

13. **Consent of Magistrate Judge for All Purposes:** To be determined.

14. **Other References** Not Applicable

15. **Narrowing of Issues** Should parties appear the parties might be able to stipulate to certain facts.

16. **Expedited Schedule** Should the parties appear an early Summary Judgment should resolve the issues.

17. **Scheduling** Should defaults be taken plaintiff requests a Prove-Up hearing be scheduled in late February/early March 2008.

18 **Trial** If defaults are taken, trial will consist of a prove up hearing.

19 **Disclosures of Non-Party Interested Entities or Persons:** Insurance Corporation of New York.

Dated: January 9, 2007 [handwritten correction: 8]

ROGER, SCOTT & HELMER, LLP

By [signature: Patricia M Fama]

Norman J. Roger, Esq.
Patricia M. Fama, Esq.
Attorneys for Plaintiff
INSURANCE CORPORATION OF NEW YORK

I, the undersigned, declare that:

I am, and was at the time of the service hereinafter mentioned, a citizen of the United States of America, employed in the County of San Mateo, California. I am over the age of eighteen years and not a party to the within cause; my business address is 1001 Marshall Street, Suite 400, Redwood City, California 94063.

On **January 9, 2008,** I caused to be served the following:

- **CASE MANAGEMENT STATEMENT OF INSURANCE CORPORATION OF NEW YORK**

on the parties involved addressed as follows:

James Hoffman
Agent for Service of Process
H & H Plastering, Inc.
908 Regency Court
San Ramon, CA 94583

Brian R. Cameron
Concrete Shell Structures, Inc.
1960 S Forest Hill Place
Danville, CA 94526

BY CERTIFIED MAIL-RETURN RECEIPT REQUESTED: I caused each such envelope above, with postage thereon fully prepaid, to be placed in the United States mail at Redwood City, California. (CCP Section 1013(a)(1))

<u>XXX</u> **MAIL:** I caused each such envelope above, with postage thereon fully prepaid, to be placed in the United States mail at Redwood City, California. (CCP Section 1013(a)(1))

VIA FACSIMILE TRANSMISSION (CCP Section 1013)

BY OVERNIGHT MAIL - FEDEX (CCP Section 1013(c))

I am readily familiar with the business practice for collection and processing of mail in this office. That in the ordinary course of business said document would be deposited with the U. S. Postal Service in Redwood City on that same day. I understand that service shall be presumed invalid upon motion of a party served if the postal cancellation date or postage meter date on the envelope is more than one day after the date of deposit for mailing contained on the affidavit.

I declare, under penalty of perjury, under the laws of the State of California that the foregoing is true and correct. Executed **January 9, 2008**, at Redwood City, California.

Luz Marie Ramirez