1  Norman J. Roger, Esq. SBN 62554
   Patricia M. Fama, Esq. SBN 138362
2  Roger, Scott & Helmer LLP
   1001 Marshall Street, Suite 400
3  Redwood City, CA 94063-2000
   Telephone: 650-365-7700
4  Facsimile: 650-365-0677

5  #129317
   Attorneys for Plaintiff
6  INSURANCE CORPORATON OF NEW YORK

7

8                UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10

11 INSURANCE CORPORATION OF NEW          )  Case No.  C 07-05214 JL
   YORK,                                  )
12                                        )  **INSURANCE CORPORATION OF NEW**
                    Plaintiff,            )  **YORK'S MEMORANDUM OF POINTS**
13                                        )  **AND AUTHORITIES IN SUPPORT OF**
   vs.                                    )  **APPLICATION FOR DEFAULT**
14                                        )  **JUDGMENT OF DEFENDANTS H & H**
   H & H PLASTERING, INC., CONCRETE       )  **PLASTERING, INC. and CONCRETE**
15 SHELL STRUCTURES, INC. ; and DOES 1   )  **SHELL STRUCTURES, INC.**
   through 10, inclusive,                 )
16                                        )
                    Defendants.          )
17                                        )
                                          )
18                                        )
                                          )
19 _____ )

20

21   **The court may grant default judgment based on the facts and law**
     **presented in this application without a formal court hearing.**

22       Federal Rule of Civil Procedure Rule 55 (b)(s) provides, "…The court *may* conduct

23 hearings or make referrals…when to effectuate judgment, it needs to: A) conduct an accounting,

24 B) determine the amount of damages, C) establish the truth of any allegation by evidence; or C)

25 investigate any other matter {emphasis added}."  Courts have interpreted Rule 55(b)(2)'s

26 statements regarding hearings in the conditional sense, only requiring a hearing when certain

27 circumstances exist.  "Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that on the

28                                        1

matter of damages the court *may* conduct such hearings or order such references as it deems necessary and proper . . . .' (emphasis added). That rule allows but does not require the district judge to conduct a hearing. See *Fustok v. ContiCommodity Services, Inc., 873* F.2d 38, 40 (2d Cir. 1989) ('It was not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in a default judgment.')." *Action S.A. v. Marc Rich & Co., 951* F.2d 504, 508 (2d Cir. 1991). See also *James v. Frame,* (5th Cir. 1993) 6 F3d 307, 310, where an award of punitive damages and attorney fees was upheld without an evidentiary hearing.

In this matter, the court may rely on the defaults entered against H & H Plastering Inc. ("H&H") and Concrete Shell Structures, Inc. ("CSS"), the attached declarations, and the points and authorities in this application as support for the entry of default judgment against H&H and CSS.

If the court deems a hearing necessary, at the time and place of hearing, plaintiff will present proof of the following matters:

    1.      Defendants H&H and CSS are not infants or incompetent persons or in military service or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940; and

    2.      Said defendants have not appeared in this action.

    3.      Plaintiff is entitled to judgment against said defendants on account of the claims pleaded in the complaint, to wit: Reformation of the Insurance Policies, Declaratory Relief – Duty to Defend, and Declaratory Relief – Duty to Indemnify.

    4.      The judgment sought is as follows, and as set forth in the attached declaration of Patricia M. Fama:

On the First Cause of Action

    a.      For reformation of Policy No. IC10019414 01 00 (effective October 1, 1999 - (Continuous)) to reflect the true intent of the parties, as follows:   To include the EIFS endorsement as required, agreed and expected by the parties.

    b.      For reformation of Policy No. IC10019414 02 00 (effective October 1, 2000 -

(Continuous)) to reflect the true intent of the parties, as follows:   To include the EIFS endorsement as required, agreed and expected by the parties.

On the Second Cause of Action

a.    For a declaration of plaintiff and defendants' respective rights and duties under the insurance policies herein as follows:

1.)   That Plaintiff has no obligation to defend H & H under the policies in relation to Britannia claims and/or CSS claims.

On the Third Cause of Action

a.    For a declaration of plaintiff and defendants' respective rights and duties under the insurance policies herein as follows:

1.)   That Plaintiff has no obligation to indemnify H & H under the policies for the Britannia claims and/or CSS claims.

On All Causes of Action:

For costs of suit incurred herein;

For such other and further relief as the Court may deem proper.

## BACKGROUND FACTS

This action arises out of alleged construction defects in a commercial building developed and owned by Britannia Pointe Grand Limited Partnership ("Britannia").   In March of 1998 Britannia entered into a contract with CSS to construct all of the exterior framing and EIFS (Exterior Insulation and Finish System) for the project.   CSS subcontracted with H&H for the actual installation of the exterior EIFS skin.   Insofar as H&H is concerned, the building involving its work was substantially completed on October 1, 1998.

On June 16, 2004 Britannia filed and served a demand for mediation and arbitration against CSS alleging construction defects at the project.   CSS, in turn, filed a cross-claim and

3

demand for arbitration against subcontractors that performed work at the property, including H&H (See Fama Dec., Exhibit "A"). While Britannia's claims encompassed damages falling outside the scope of H&H's work, insofar as H&H is concerned Britannia alleged that improper installation of caulk joints and the EIFS system itself was contributing to water intrusion, and resultant damage, to the project.

Specifically, Britannia contended that at two caulk joints the caulk separated from the EIFS and also that the EIFS was not installed according to the manufacturer's specifications. By way of example, Britannia pointed out that while the manufacturer's specifications provided that mesh used in the process should be fully embedded in the base coat of the EIFS, in fact exposed mesh was visible. H&H was also implicated in claims of leakage through the windows as a result of deficient EIFS installation. The Britannia demand for arbitration provides:

> "Defects associated with the EIFS. CSS was responsible for installing the EIFS onto the buildings. However, CSS and its Subcontractors failed to properly do so. For example, on the south elevation of the north half of Sugen I, there was an open crack in the EIFS wall system at a window sill and door jamb intersection. During leak testing, water dripped inside the wall. After testing, water pooled along the interior sill framing. This leak resulted in stained ceiling tiles, stains on the interior wall sheathing above the ceiling, and a rusted sill plate.
>
> CSS also is responsible for an open crack in the EIFS wall system at an inside window near the 1st floor laboratory on the north half of Sugen 1. This crack led to leakage, which resulted in stained tiles, stains on the interior face of the wall sheathing, rust stains on interior horizontal steel framing, and water collecting along a metal header."

All policies issued to H&H, consistent with Inscorp underwriting guidelines were required to and did include the EIFS. (Exterior Insulation Finish System) exclusion. The EIFS exclusion provides:

**This Endorsement Changes the Policy. PLEASE READ IT CAREFULLY.**

**EXCLUSION – DESIGNATED WORK**

4

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Description of your work:**

1. The design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair, including remodeling, service, correction, or replacement, of an "exterior insulation and finish system" (commonly referred to as synthetic stucco) or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulkings or sealants in connection with such a system.

2. Any work or operations with respect to any exterior component, fixture or feature of any structure in an "exterior insulation and finish system" is used on any part of that structure. This exclusion applies to "your work" described in Paragraph 1. or Paragraph 2. above performed by you or on your behalf.

For the purposes of this endorsement, an "exterior insulation and finish system" means an exterior cladding or finish system used on any part of any structure, and consisting of:

a) a rigid or semi rigid insulation board made of expanded polystyrene or other materials and

b) the adhesive and/or mechanical fasteners used to attach the insulation board to the substrate, and

c) a reinforced base coat, and

d) a finish coat providing surface texture and color

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.

**Inscorp's Coverage to H&H and the Mandatory EIFS Endorsement**

Inscorp provided four years of insurance coverage to H&H from October 1, 1998 through October 1, 2002.  The coverage was provided under the following policies:

- Policy No. IC10019414 00 00 (effective October 1, 1998 - (Continuous))
- Policy No. IC10019414 01 00 (effective October 1, 1999 - (Continuous))
- Policy No. IC10019414 02 00 (effective October 1, 2000 - (Continuous))
- Policy No. IC10021378 00 00 (effective October 1, 2001 – (Continuous))

(See Daniels Declaration, ¶ 6)

David Cast, the then Underwriting Manager for HDR Insurance Services authored an e-mail dated Monday, April 20, 1998 9:04 AM.  The subject line of the e-mail states:  Underwriting Notes '98-7(EIFs).   The e-mail provides:

> "Subject:        Underwriting Notes '97-7 (EIFs)
>
> Background/Overview:
>
> The video on the installation of the EIFs system, and the comments by the HDR principals as to their concern on our covering this exposure provide the background for our position to NOT provide Products/Completed Operations Coverage for EIFs work.  In order to accomplish this objective you will need to attach the endorsements CG 21 34 01 87 (EIFs) to all policies that are identified as have a potential for the EIFs exposure.
>
>       Underwriting:
>
> Classes that may have the exposure – Primarily the Exterior Plastering/Stucco (98449) class with have this exposure and the endorsement MUST be applied when this class in on the policy.  The Drywall (92338) contractors may have the exposure and the endorsement should be applied in situations where you can not make a sound determination.
>
> If the account is currently doing (EIFs) work the account must be discussed with the Underwriting VP or an HDR principal.  It is doubtful

6

that we would want to insure them unless they have coverage for the Product/Completed Operations exposure in another market.

Since the endorsement is restrictive you need to be sure that the insured/agent is aware that it will be utilized.  On New Business the endorsement is effective immediately and should be included with the quote.  On the renewals we need to let the insured/agent know that we will be utilizing the endorsement. (Daniels Declaration ¶ 7, Exhibit "A")

The mandatory EIFS endorsement applied to class codes 92338 and 98449.  There was no reason or basis to remove the EIFS endorsement from any policy issued to insureds within class codes 92338 and 98449.  A policy would not be issued to either of these class codes without the EIFS endorsement. (Daniels Dec., ¶ 8)

The class code for H&H was 98449.  (Daniels Dec., ¶9, Exhibit "B")

H&H's application for the October 1, 1998 – (Continuous) policy considered the option of providing the excluded EIFs coverage.  The application provides, in part:

"***QUOTE AS AN OPTION:  COVERAGE FOR "EIFS" THE SYNTHETIC STUCCO PRODUCT ***…"

Since the EIFS exclusion was mandatory on all policies issued to plasterers the option was not and could not be quoted.  (Daniels Dec., ¶¶ 10 and 11, Exhibit "C")

Coverage for H&H for the three year period, October 1, 1998 to October 1, 2001, was provided under Policy No. IC10019414 00 00 and two annual renewals.  The policy number assigned to the policy ends in "00 00" to indicate it is new business.  Thereafter, and for renewed policies, the policy is given the renewal indicators "01 00" and 02 00" to indicate the first renewal and second renewal, respectively.  (Daniels Dec., ¶ 12).

The effective dates for Policy No. IC10019414 00 00 when first issued was "October 1, 1998 to (Continuous)."  As to the policy effective dates, Policy No. IC10019414 00 00 provided:

"Unless stated elsewhere, this policy is effective at 12:01a.m. at the mailing address shown below.  If the policy period is shown above as 'continuous',

7

the policy continues until it is non-renewed at the annual anniversary of the effective date or cancelled." (Daniels Dec., ¶ 14)

Policy No. IC10019414 00 00 included, as required by the underwriting guidelines the Exclusion –Designated Work (CG 2134 01 87 (EIFS). (the "EIFS exclusion") The EIFS exclusion is listed on the Common General Liability Declarations of Policy No. IC10019414 00 00 and a copy of the EIFS exclusion was included and a part of Policy No. IC10019414 00 00. (Daniels Dec., ¶¶ 13 and 15, Exhibit "D").

When Policy No. IC10019414 00 00 was first renewed on or about October 1, 1999, the underwriting guidelines for the policy made the use of the EIFS exclusion mandatory for plastering subcontractors such as H&H. The Artisan Pak Underwriting Checklist- Renewal lists the renewal forms for the first renewal, as including, "exclude EIFS". This is consistent with the Underwriting Guidelines then in effect. (Daniels Dec., ¶ 16, Exhibit "E").

The ARTISAN INSURANCE PROGRAM Drywall and/or Plastering Contractor UNDERWRITING GUIDE Edition 12/98 provided in part, at page 2:

"PART III: COVERAGE CONSIDERATIONS

The following classifications, pricing and coverage guidelines are unique to this program and shall be used on accounts that are participating in the program.

- Drywall or Wallboard Installation (92338)
- Plastering or Stucco Work (98449)

\* \* \*

- **Mandatory Exclusion** – All insureds with a Plastering/Stucco exposure must exclude the Product-Completed Operations hazard associated with EIFS (Exterior Insulation Finish System) using the ISO endorsement "Exclusion – Designated Work (CG 21 34)" with the Description of Your Work completed as per the attached sample."

(Daniels Dec., ¶17, Exhibit "F")

An underwriting referral form dated September 23, 1999, prior to the first renewal on October 1, 1999, reflects the continuous nature of coverage under the October 1, 1998 –

8

(Continuous) policy and states:

"No significant changes at renewal.  A few small alterations here and there."

The elimination of the EIFS exclusion on a policy issued to a plasterer would have been more than a "small alteration" and would have been an unacceptable risk and contrary to the underwriting guidelines.  Without the EIFS exclusion for a plasterer such as H&H the policy would not have been issued.  (Daniels Dec., ¶ 18, Exhibit "G")

Policy No.  IC10019414 00 00 was first renewed for the period October 1, 1999 to (Continuous) under Policy No. IC10019414 01 00.  (Daniels Dec., ¶19, Exhibit "H")

When the first renewal was issued, the policy forms were computer generated.  Certain forms, including the mandatory EIFS policy endorsement had to be user selected to be included on the policy declarations.   Because the use of the EIFS endorsement was mandatory for class 98449 plasters like H&H, the first renewal would not have been issued without the EIFS endorsement.   The renewal checklist confirmed the mandatory EIFS endorsement was to be included in the first renewal policy.

Through error and oversight, it appears that the mandatory EIFS endorsement was not user selected and the policy forms, when generated, did not list the EIFS exclusion.  The EIFS exclusion was to have been included and a part of the policy on renewal in accordance with the underwriters notes per Artisan Pak Underwriting Checklist- Renewal and underwriting guidelines.  The EIFS exclusion could not have been deleted from the policy upon first renewal for a plasterer including H&H.  If the EIFS exclusion was omitted, the risk would not have been acceptable and the first renewal policy would not have been issued.  (Daniels Dec., ¶ 20).

Policy No. IC10019414 00 00 was renewed a second time, on its anniversary, for the period October 1, 2000 to (Continuous) under policy number 1C10019414 02 00 (the "second renewal policy").  (Daniels Dec, ¶ 21, Exhibit "I")  As with the first renewal, through error and oversight, it appears that the mandatory EIFS endorsement was not user selected and the policy forms, when generated, did not list the EIFS exclusion.   The EIFS exclusion was to have been

INSURANCE CORPORATION OF NEW YORK'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF APPLICATION FOR DEFAULT JUDGMENT OF DEFENDANTS H & H PLASTERING, INC.
AND CONCRETE SHELL STRUCTURES, INC. – Action No. C 07 05214JL

included and a part of the policy on second renewal in accordance with the underwriter guidelines. The EIFS exclusion could not have been deleted from the policy upon second renewal for a plasterer including H&H. If the EIFS exclusion was omitted, the risk would not have been acceptable and the second renewal policy would not have been issued.

The omission of the EIFS exclusion from the general liability declaration pages of the first renewal and the second renewal of Policy No. No. IC10019414 00 00 was in error and contrary to the Underwriting Guidelines for the risk. The EIFS exclusion was not deleted from the policies upon either renewal. (Daniels Dec., ¶ 22)

The underwriting guidelines for the Artisan Insurance Program which mandated use of the EIFS exclusion for all plastering insureds continued and remained in force through the date of the second renewal on Policy No. IC10019414 00 00, October 1, 2000. (Daniels Dec., ¶ 23)

The underwriting guidelines for the Artisan Insurance Program were revised effective December, 2000, after the second renewal policy effective date, October 1, 2000, and the EIFS exclusion continued to remain a mandatory form for use on policies issued to plastering subcontractors. The ARTISAN INSURANCE PROGRAM Drywall and/or Plastering Contractor UNDERWRITING GUIDE Edition 12/98 provided in part, at page 2:

> **"PART III: COVERAGE CONSIDERATIONS**
> The following classifications, pricing and coverage guidelines are unique to this program and shall be used on accounts that are participating in the program.
>
> **GL**
>
> - Drywall or Wallboard Installation (92338)
>
> - Plastering or Stucco Work (98449)
>
> * * *
>
> **Mandatory Exclusion** – The following exclusion will be included on all accounts written under the program – Product-Complete Operations hazard associated with EIFS (Exterior Insulation Finish System) using the ISO endorsement "Exclusion - Designated Work (CG2134)" (Daniels Dec., ¶ 24, Exhibit "J")

The underwriting guidelines for the Artisan Insurance Program were revised effective

10

August 2001.  The ARTISAN INSURANCE UNDERWRITING PROGRAM GUIDELINES HDR INSURANCE SERVICES FOR Drywall and/or Plastering Contractor Edition Dated:  8/01 provided in part, at page 7 of 41:

> "COVERAGE CONSIDERATIONS
>
> The following classifications, pricing and coverage guidelines are unique to this program and shall be used on accounts that are participating in the program.
>
> **General Liability**
> * Drywall or Wallboard Installation (92338)
> * Plastering or Stucco Work (98449)
>
>             * * *
>
> **Mandatory Exclusion** – The following exclusion will be included on all accounts written under the program – Product-Complete Operations hazard associated with EIFS (Exterior Insulation Finish System) using the ISO endorsement "Exclusion - Designated Work (CG2134)"  (Daniels Dec., ¶ 25, Exhibit "K")

A September 6, 2001 underwriting file note prepared prior to expiration of the October 1, 2000-(Continuous) policy states,

> "Per email from agent EIFS and condo work is in the past – agent understands policy has exclusion – no current or future work."
> (Daniels Dec., ¶ 26, Exhibit "L")

It was clearly understood and required that the EIFS exclusion, which was a part of the coverage for H&H over the three previous years, was to remain a part of and be included in the new policy.  (Daniels Dec., ¶ 27)

Policy No. IC10019414 02 00 in force for the period October 1, 2000 – (Continuous) was non-renewed on the October 1, 2001 renewal anniversary.  Coverage for H&H was rewritten under a new policy, Policy No. 1C10021378-00-00.  Policy No. IC 10021378 00 00 had a policy period of "October 1, 2001 to (Continuous)".  Policy No. IC 10021378 00 00 did include the EIFS exclusion, consistent with and as required by the Artisan Insurance Program December 2000 Underwriting Guidelines and ARTISAN INSURANCE UNDERWRITING PROGRAM GUIDELINES HDR

INSURANCE SERVICES FOR Drywall and/or Plastering Contractor Edition Dated:  8/01.  Daniels Dec., ¶ 28)

## POINTS AND AUTHORITIES

Equity allows reformation of a written contract when the contract terms do not express the intention of the parties.  This is so even where the rights of third party claimants who are not parties to the insurance contract are adversely affected.  *UTICA Mut. Ins. Co. v. Monarch Ins. Co.* (1967) 250 Cal.App.2d 538.  California Insurance Code § 3399 provides:

> When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contact does not truly express the intention of the parties, it may be revised on the application of a party agrieved, so as to express that intention, so far as it can be done without prejudice to the rights acquired by third persons, in good faith, and for value."

Civil Code Section 3401 provides:

> "In revising a written instrument, a Court may inquire what the instrument was intended to mean, and what were intended to be its legal consequences, and is not confined to the inquiry what the language of the instrument was intended to be."

The purpose of reformation is to make a written contract truly express the intention of the parties.  This language refers to 'a single intention' entertained by both parties.  (*Shupe v. Nelson* (1967) 254 Cal. App. 2d 693, 700; *American Home Ins. Co. v. Travelers Indemnity Co.* (1981) 122 Cal. App. 3d 951, 963.

> "As applied to this case, the principal prerequisite [of reformation] is the demonstration of a mistake which results in the failure of a written contract to express the true intention of the parties to the agreement.  This mistake may be the mutual error of both parties to the contract, or the oversight of one party which the other knew or suspected at the time of entering the agreement.  The party seeking the revision of the writing must show how it is "aggrieved" by the mistake, and define the actual intention of the contracting parties.  The general principles applicable to reformation of contracts are

**INSURANCE CORPORATION OF NEW YORK'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR DEFAULT JUDGMENT OF DEFENDANTS H & H PLASTERING, INC. AND CONCRETE SHELL STRUCTURES, INC. – Action No. C 07 05214JL**

applicable to insurance contracts. [Citations]' (*Continental Insurance Co. of New York v. Cotton* (9th Cir. 1970) 427 F. 2d 48, 51-52)" Id., at 961.

Evidence which is relied upon to establish the existence of fraud or mistake as a ground for reformation must be clear and convincing and not loose, equivocal or contradictory, leaving the question of fraud or mistake in doubt. *Bert v. Los Angeles Olive Growers Assn.* (1917) 175 Cal. 668, 675 and *Dale v. Dale* (1927) 87 Cal.App. 359, 369.

> "It is also the general rule that the intent and meaning of the parties is far more important that the strict literal sense of the words used in the contract. For that reason it is equally important to consider the subject matter of insurance and the purpose or object which the parties had in view at that time. It is also proper to consider the business of the parties, the circumstances surrounding the making of a contract, the situation of the property, and all other conditions which may have a legitimate bearing upon the intention of the parties." *Employers Casualty Company v. Northwestern Nation Insurance Group* (1980) 109 Cal. App. 3e 462 citing *Dart Transportation Service v. Mack Trucks, Inc.* (1970) 9 Cal. App. 3d 837, at 847.

The presumption therefore that the written contract correctly expresses the intention of the parties may be overcome. (See *Welk v. Conner* (1929) 102 Cal.App. 286, 289; *Hochstein v. Berghauser* (1899) 123 Cal. 681, 684)

The intention of the parties is central to the inclusion of EIFS endorsement on each of the Inscorp policies issued to H&H. Under the facts submitted in support of this application, reformation is appropriate where, as here, an intended endorsement is mistakenly not listed on a renewal policy declaration sheet. The mistaken omission does not alter or rewrite the insurance coverage the contracting parties intended.

In *Truck Ins. Exch .v. Wilshire Ins. Co.* (1978) Cal.App.3d 553 an endorsement was not physically incorporated or attached to the issued policy. The Court found there was substantial evidence to support reformation. In *Truck* the insured asked for and expected certain coverage and the policy underwriter likewise considered and proposed coverage consistent with the insured's request and as expected by the application. When the policy was ordered, it

mistakenly did not include an anticipated endorsement. Like here, the mistake on policy assembly was not noticed until coverage was requested under the policy. Even so, the appellate court inferred that reformation was appropriate to conform the policy to the parties' intent and to correct the mistake on policy issuance.

Like the situation in *Truck Ins. Exchange, supra,* policy reformation is appropriate herein to correct the parties' intent to include the EIFS endorsement on the policies. It was unquestionably the parties' intent that H&H's first and second renewal policies would include the EIFS endorsement. The mistake in failing to list the EIFS endorsements on the renewal policies' declaration sheets cannot be ignored. It is undisputed that the EIFS endorsements were intended to be a part of the insurance coverage issued to H&H.

There is no question therefore that the policies are subject to reformation in light of the mistake in attaching and listing the EIFS endorsement to the renewal policies general liability declarations. It is undisputed that the underwriting guidelines required the EIFS endorsement to be a part of each policy issued to H&H and that it was the intention of the parties to the policy that it would be. Because the policy must be reformed to include the EIFS endorsement, plaintiffs owe no duty to defend or to indemnify H&H in relation to the claims made in the *Britannia* action.

<u>**CONCLUSION**</u>

The court should enter default judgment against H&H and CSS, reforming the insurance policies as laid out above and issue a declaration that Plaintiffs have no obligation to defend

///
///
///
///
///
///

14

and/or indemnify H H under any of the policies  in relation to the claims made in the Britannia claims and/or CSS claims.

Dated:  April 3, 2008

ROGER, SCOTT & HELMER, LLP

By _____
Norman J. Roger, Esq.
Patricia M. Fama, Esq.
Attorneys for Plaintiff
INSURANCE CORPORATION OF NEW YORK

INSURANCE CORPORATION OF NEW YORK'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR DEFAULT JUDGMENT OF DEFENDANTS H & H PLASTERING, INC. AND CONCRETE SHELL STRUCTURES, INC. – Action No. C 07 05214JL