1  Norman J. Roger, Esq. SBN 62554
   Patricia M. Fama, Esq. SBN 138362
2  Roger, Scott & Helmer LLP
   1001 Marshall Street, Suite 400
3  Redwood City, Ca. 94063-2000
   Telephone: 650-365-7700
4  Facsimile: 650-365-0677

5  #129321
   Attorneys for Plaintiff
6  INSURANCE CORPORATON OF NEW YORK

7

8

9                    UNITED STATES DISTRICT COURT

10               NORTHERN DISTRICT OF CALIFORNIA

11

12  INSURANCE CORPORATION OF NEW   )   Case No.  C 07-05214 JL
    YORK,                          )
13                                 )   **DECLARATION OF PATRICIA M.**
                                   )   **FAMA IN SUPPORT OF PLAINTIFF**
14            Plaintiff,           )   **INSURANCE COMPANY OF NEW**
                                   )   **YORK'S APPLICATION FOR DEFAULT**
15  vs.                            )   **JUDGMENT OF CONCRETE SHELL**
                                   )   **STRUCTURES, INC. AND H&H**
16  H & H PLASTERING, INC., CONCRETE )  **PLASTERING, INC.**
    SHELL STRUCTURES, INC. ; and DOES 1 )
17  through 10, inclusive,         )
                                   )
18            Defendants.          )
                                   )
19                                 )
                                   )
20  _____)

21

22      I, Patricia M. Fama, declare as follows:

23      1.      I am a partner with the law firm of Roger Scott & Helmer, counsel of record for

24  plaintiff INSURANCE CORPORATION OF NEW YORK (hereafter "INSCORP") in the above

25  captioned litigation.  I have personal knowledge of facts set forth herein and if called as a

26  witness could competently testify thereto.

27      2.      Defendant CONCRETE SHELL STRUCTURES, INC. (hereafter "CSS") is not an

28

infant or an incompetent person or in military service or otherwise exempted under the Soldiers'
and Sailors' Relief Act of 1940.

     3.      CSS has not appeared in this action

     4.      Defendant H&H Plastering, Inc. (hereafter "H&H") is not an infant or an
incompetent person or in military service or otherwise exempted under the Soldiers' and Sailors'
Relief Act of 1940.

     5.      H&H has not appeared in this action

     6.      Attached hereto as Exhibit "A" is a true and correct copy of CSS's Demand for
Arbitration and Amended Answering Statement/Cross-Claim and Demand for Arbitration
brought by Britannia Pointe Grand Limited Partnership.

     I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct. Executed this _31_ day of March, 2008, at Redwood City,
California.

Patricia M. Fama, Esq.

# EXHIBIT A

# AMERICAN ARBITRATION ASSOCIATION
## CONSTRUCTION INDUSTRY ARBITRATION RULES
### DEMAND FOR ARBITRATION

**MEDIATION**  *If you want the AAA to contact the other party and attempt to arrange a mediation, please check this box.*  ☒

| TO: Name of Respondent<br>Concrete Shell Structures, Inc. | Name of Representative (if known) | | |
| --- | --- | --- | --- |
| Address<br>P.O. Box 2233 | Representative's Address | | |
| City<br>San Leandro | State<br>CA | Zip Code<br>94577 | City | State | Zip Code |
| Phone No.<br>(510) 483-4515 | Fax No.<br>(510) 483-4351 | | Phone No. | | Fax No. |

THE NAMED CLAIMANT, A PARTY TO A WRITTEN AGREEMENT PROVIDING FOR ARBITRATION UNDER THE CONSTRUCTION INDUSTRY ARBITRATON RULES, HEREBY DEMANDS ARBITRATION THEREUNDER (ATTACH THE ARBITRATION CLAUSE)  **Please see Attachment A.**

ARBITRATION CLAUSE CONTAINED IN THE FOLLOWING CONTRACT DOCUMENT: (Please check one)

☒ AIA-American Institute of Architects   ☐ AGC-Associated General Contractors of America   ☐ DBIA-Design Build Institute of America
☐ EJCDC-Engineers Joint Contract Documents Committee   ☐ ASA-American Subcontractors Association
☐ CMAA-Construction Management Association of America   ☐ Other (specify _____ )

THE NATURE OF THE DISPUTE (Please give enough details to enable the AAA to select arbitrators with appropriate experience)

Construction Defects - Please see Attachment B.

| DOLLAR AMOUNT OF CLAIM<br>$ 225,000.00  (approx.) | OTHER RELIEF SOUGHT |
| --- | --- |

PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR (S) TO BE APPOINTED TO HEAR THE DISPUTE  An attorney with significant construction experience.

CLAIMANT IS
☒ Owner   ☐ Design professional (specify_____ )   ☐ Contractor
☐ Subcontractor (specify_____ )   ☐ Other (specify_____ )

RESPONDENT IS
☐ Owner   ☐ Design professional (specify_____ )   ☒ Contractor
☐ Subcontractor (specify_____ )   ☐ Other (specify_____ )

Estimated time needed for hearings overall _____ hours 1-2 _____ days

Copies of this demand are being filed with the American Arbitration Association at its San Francisco office. Claimant requests that the AAA commence the administration of the arbitration. Under the rules, you may file an answering statement within fifteen days after notice from the AAA.

CLAIMANT REQUESTS THAT ARBITRATION HEARINGS BE HELD AT THE FOLLOWING LOCALE
San Francisco Office of the American Arbitration Association.

| Signature (may be signed by a representative)<br>*M. Kay Martin* | Title<br>Attorney | Date<br>June 16, 2004 |
| --- | --- | --- |

| Name of Claimant<br>Britannia Pointe Grande Limited Partnership | Name of Representative<br>M. Kay Martin | Name of Firm (if Applicable)<br>Folger Levin & Kahn LLP |
| --- | --- | --- |
| Address (to be used in connection with this case)<br>555 Twelfth Street, Suite 1650 | | Representative's Address<br>275 Battery Street, 23rd Floor |
| City<br>Oakland | State<br>CA | Zip Code<br>94607 | City San Francisco | State<br>CA | Zip Code<br>94111 |
| Phone No.<br>(510) 834-7116 | Fax No.<br>(510) 763-6262 | | Phone No.<br>(415) 986-2800 | | Fax No.<br>(415) 986-2827 |

TO INSTITUTE PROCEEDINGS, PLEASE SEND TWO COPIES OF THIS DEMAND AND THE ARBITRATION AGREEMENT, WITH THE FILING FEE AS PROVIDED FOR IN THE RULES, TO THE AAA. SEND THE ORIGINAL DEMAND TO THE RESPONDENT.

Form C12-04/04

**ATTACHMENT A**

## ATTACHMENT A

### Mediation and Arbitration Clauses – AIA Document A201-1997, ¶¶ 4.5, 4.6

**4.5    MEDIATION**

**4.5.1**    Any Claim arising out of or related to the Contract, except claims relating to aesthetic effect and except those waived as provided for in Subparagraphs 4.3.10, 9.10.4 and 9.10.5 shall, after decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party.

**4.5.2**    The parties shall endeavor to resolve their Claims by mediation which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect. Request for mediation shall be filed in writing with the other party to the Contract and with the American Arbitration Association. The request may be made concurrently with the filing of a demand for arbitration but, in such event, mediation shall proceed in advance of arbitration or legal or equitable proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order.

**4.5.3**    The parties shall share the mediator's fee and any filing fee equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

**4.6    ARBITRATION**

**4.6.1**    Any Claim arising out of or related to the Contract, except claims relating to aesthetic effect and except those waived as provided for in Subparagraphs 4.3.10, 9.10.4 and 9.10.5, shall, after decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Paragraph 4.5.

**4.6.2**    Claims not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. The demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association, and a copy shall be filed with the Architect.

**4.6.3**    A demand for arbitration shall be made within the time limits specified in Subparagraphs 4.4.6 and 4.6.1 as applicable, and in other cases within a reasonable time after the Claim has arisen, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such Claim would be barred by the applicable statute of limitations as determined pursuant to Paragraph 13.7.

1

**4.6.4  Limitation on Consolidation or Joinder.** No arbitration arising out of or relating to the Contract shall include, by consolidation or joinder or in any other manner, the Architect, the Architect's employees or consultants, except by written consent containing specific reference to the Agreement and signed by the Architect, Owner, Contractor and any other person or entity sought to be joined. No arbitration shall include, by consolidation or joinder or in any other manner, parties other than the Owner, Contractor, a separate contractor as described in Article 6 and other persons substantially involved in a common question of fact or law whose presence is required if complete relief is to be accorded in arbitration. No person or entity other than the Owner, Contractor, or a separate contractor as described in Article 6 shall be included as an original third party or additional third party to an arbitration whose interest or responsibility is insubstantial. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of a Claim not described therein or with a person or entity not named or described therein. The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to the Agreement shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

**4.6.5  Claims and Timely Assertion of Claims.** The party filing a notice of demand for arbitration must assert in the demand all Claims then known to that party on which arbitration is permitted to be demanded.

**4.6.6  Judgment on Final Award.** The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

17035\3008\397815.1

2

**ATTACHMENT B**

## ATTACHMENT B

### Nature of Dispute

This dispute centers on construction defects at 169 and 170 Harbor Way, South San Francisco, California. Britannia Pointe Grand Limited Partnership ("Britannia"), the Owner, seeks reimbursement from Concrete Shell Structures, Inc. ("CSS"), the Contractor, for the costs that Britannia incurred in remedying these defects. Britannia gave CSS an opportunity to remedy these defects, but CSS refused. As a result, Britannia hired Hathaway Dinwiddie ("Hathaway") and Allana-Lippert ("Allana") to perform remedial work and necessary mold testing. The cost to Britannia of correcting CSS's work was approximately $225,000.00.

The contract between Britannia and CSS consists of AIA Document A101-1997, AIA Document A210-1997, and other documents (such as the Drawings) that were incorporated into the contract by reference.

The construction defects attributable to CSS, and the measures taken to correct them, are as follows:

Defects associated with the expansion joints on the pedestrian bridge. CSS was responsible for installing a pedestrian bridge that would connect the buildings at 169 and 170 Harbor Way. However, the expansion joints that CSS and its Subcontractors used to connect the pedestrian bridge to the buildings were different from those detailed in the Drawings. Pursuant to the Drawings, the expansion joints should have had mechanical attachments, but the joints that CSS and its Subcontractors installed relied solely on caulking to attach the bridge to the buildings. CSS claimed this replacement system would work. It did not, and in any event Britannia never approved this change, nor was a Change Order authorizing this change ever issued. CSS accordingly violated its contract with Britannia, which provides that "[t]he Contractor shall perform all work in accordance with the Contract Documents," that "[t]he Contractor may make substitutions only with the consent of the Owner, after evaluation by the Architect and in accordance with a Change Order," and that "[t]he Contractor warrants to the Owner . . . that the Work will be free from the defects not inherent in the quality required or permitted, and that the work will conform to the requirements of the Documents. Work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective." AIA Document A201-1997 ¶¶ 3.1.2, 3.4.2, 3.5.1.

Moreover, the work performed by CSS and its Subcontractors was deficient in a number of respects. For example, the caulking deteriorated both in the joints between the bridge and the buildings and in many of the miter joints. Furthermore, the metal plates in the bridge were not properly aligned, leading to further problems with the caulking used to connect the bridge to the buildings. As a result of these defects, the bridge began to tear away from 170 Harbor Way, further opening up the joints and leading to further deterioration in the caulking. Rain water then leaked into the buildings and also saturated the buildings' EIFS.

Britannia gave CSS the opportunity to correct these defects, but CSS refused. In remedying these defects, Hathaway and its Subcontractors (1) removed the existing expansion

joints; (2) removed and replaced EIFS at both buildings; and (3) installed expansion joints of the sort originally detailed in a manner consistent with the original Drawings.

      Defects associated with the EIFS. CSS also was responsible for installing EIFS onto the buildings. However, CSS and its Subcontractors failed to install the EIFS according to Parex's (the manufacturer's) specifications. For example, the specifications state that the mesh in the EIFS should be embedded in the base coat, but exposed mesh was visible on the south side of 170 Harbor Way. Moreover, the caulking in two of the vertical caulk joints deteriorated. As a result of these defects, rain water was driven into the EIFS caulk joints and into the building, as evidenced by stains in the interior ceiling tiles and by paint deterioration.

      After consulting with a Parex representative, Hathaway and its Subcontractors (1) removed and reinstalled the EIFS on approximately 40% of the surface on the south side of 170 Harbor Way; and (2) repaired the two caulk joints. Danco Waterproofing, CSS's Subcontractor, assisted in repairing the caulk joints. CSS ignored its obligations.

      Defects associated with the windows. CSS · Subcontractors improperly installed approximately eight to ten of the windows on ˙ ˙ ˙e of 170 Harbor Way, allowing them to have caulk joints that were smaller ˙ ˙ ˙˙ stated in Parex's specifications and the 3/8˙˙ stated in South Valle˙ ˙ ˙remedying these defects, Hathaway and its Subcontractors recaulked th˙

      Defects associated with ˙ ˙ ˙ ˙ the installation of a patio at 170 Harbor Way. Howeve˙ ˙ ˙ncrete on the patio in such a manner that two r ˙ ˙ ˙ong – were lower than the floor inside th˙ ˙ ˙ ˙io also sloped toward, rather than a˙ ˙ ˙ ˙˙er flowed into 170 Harbor Way a˙ ˙ ˙ ˙˙old on the building's exterior walls.

      In remedying these de˙ ˙ ˙ ˙ ˙ ˙ved the ˙ concrete and the bottom twelve inches ˙ ˙ ˙ ˙) repoured the concrete. Hathaway and its Subcontracto˙ ˙ ˙ ˙ had been incorrectly installed and had to be destroye˙ ˙ ˙˙crete work. Dolan Concrete, CSS's Subcontractor on the patio, a˙ ˙ ˙˙nish the new concrete for free. Again, CSS ignored its obligations.

      Defects associated with the doors. Th˙ ˙ ˙ ˙nd pedestrian doors that CSS and its Subcontractors installed at 170 Harbor Way failed t˙ ˙ ˙p water out of the building. In remedying these defects, Hathaway and its Subcontractors removed the sliding and pedestrian doors and installed doors that are better able to prevent the intrusion of water.

      The defects described above led to signs of mold on the outside of 170 Harbor Way and on the pedestrian bridge, and to water leaks in both buildings and in the pedestrian bridge. As a result, Allana hired RGA Environmental, Inc. to perform mold testing.

CSS warranted in the contract that "the Work will be free from the defects not inherent in the quality required or permitted." *See* AIA Document A201-1997 ¶ 3.5.1. As detailed in this Attachment, CSS did not fulfill this provision.

The parties and the Architect have exchanged correspondence about the defects. On June 7, 2004, Britannia sent a letter to CSS, demanding that CSS reimburse Britannia for the costs Britannia incurred in remedying the construction defects attributable to CSS. CSS did not respond to Britannia's request. As a result, Britannia now seeks to initiate mediation and arbitration pursuant to AIA Document A201-1997 ¶¶ 4.5, 4.6.

17035\3008\397675.1

3

*Britannia Pointe Grand Limited Partnership v. Concrete Shell Structures, Inc.*
American Arbitration Association Case No. 74 110 M 00660 04 OLTR

## ADDITIONAL CLAIMS

### Nature of Dispute

Britannia Pointe Grand Limited Partnership ("Britannia"), the Owner, amends its Arbitration Demand to include additional claims against Concrete Shell Structures, Inc. ("CSS"), the Contractor. These additional claims all involve construction defects at the Sugen 1 and 2 buildings, located at 220 and 230 East Grand Avenue, South San Francisco, California. The contracts between Britannia and CSS for the Sugen 1 and 2 buildings consist of AIA Document A101-1987 edition; AIA Document A201-1987 edition; AIA Document A101/CMa-1992 edition; and AIA Document A201/CMa-1992.

To remedy the construction defects at the Sugen 1 and 2 buildings, Britannia hired Hathaway Dinwiddie ("Hathaway") and Allana-Lippert to perform remedial work and necessary testing. As the Contractor, CSS is responsible for each of these construction defects, and Britannia accordingly seeks reimbursement from CSS for the costs associated with repairing them. Britannia anticipates that the costs of correcting CSS's work will be at least $235,000.00.

The additional construction defects attributable to CSS, and the measures taken to correct them, are as follows:

Defects associated with expansion joints. CSS was responsible for installing expansion joints at both sides of the breezeway that connected Sugen 1 to Sugen 2, as well as between the north and south halves of Sugen 1. However, the expansion joints that CSS and its Subcontractors used were different from those detailed in the Drawings. Pursuant to the Drawings, the expansion joints should have had mechanical attachments, but the joints that CSS and its Subcontractors installed relied solely on caulking.

Moreover, the work performed by CSS and its Subcontractors was deficient in a number of respects. For example, the expansion joints were not sealed properly, and sealant joints were open in the breezeway. The expansion joint between the north and south halves of Sugen 1 was poorly terminated and poorly sealed along its entire length, from the ground floor to the rooftop. As a result, daylight could be observed through the expansion joint from the interior of the building. Furthermore, construction defects associated with the expansion joints led to (1) leak stains on the horizontal framing; (2) dirt and debris collecting behind the expansion joint on the ground floor of Sugen 1; and (3) water traveling through and around the expansion joint on the second floor of Sugen 1 and running onto the carpet.

In remedying these defects, Hathaway and its Subcontractors (1) removed the existing joint and the surrounding EIFS; (2) removed and replaced the drywall substrate where it was damaged by the EIFS removal; (3) installed and sealed new joints; (4) replaced the surrounding EIFS; (5) caulked new joints to the EIFS; and (6) replaced the caulking where it was removed for repairs.

1

**EXHIBIT** _6_

Defects associated with the EIFS.  CSS was responsible for installing EIFS onto the buildings.  However, CSS and its Subcontractors failed to do so properly.  For example, on the south elevation of the north half of Sugen 1, there was an open crack in the EIFS wall system at a window sill and jamb intersection.  During leak testing, water dripped inside the wall.  After testing, water pooled along the interior sill framing.  This leak resulted in stained ceiling tiles, stains on the interior wall sheathing above the ceiling, and a rusted sill plate.

CSS also is responsible for an open crack in the EIFS wall system at an inside window near the 1st floor laboratory on the north half of Sugen 1.  This crack led to leakage, which resulted in stained tiles, stains on the interior face of the wall sheathing, rust stains on interior horizontal steel framing, and water collecting along a metal header.

In remedying these defects, Hathaway and its Subcontractors (1) removed caulking; (2) ground the EIFS finish to expose its base coat; (3) installed new EIFS base coat and reinforcing mesh; (4) refinished the EIFS; and (5) reinstalled the caulk material.

Subsequent testing has indicated other defects associated with the EIFS, including cracks, chipped finish, and exposed mesh.

Defects associated with the window systems.  CSS was responsible for installing window systems.  However, the window system for the cafeterias at North Sugen 1 was not installed properly.  The horizontal window frame components abutted the vertical frame, which allowed water to enter.  Water dripped on the window interior, and a large stain formed above the cafeteria's double doors.

In remedying these defects, Hathaway and its Subcontractors trimmed the vinyl window gasketing and sealed the window system with caulking.

Defects associated with door systems.  CSS was responsible for installing door systems.  However, much of the installation was defective.  For example, the weatherstripping was defectively installed at a kitchen door at the south elevation of the north half of Sugen 1, which led to leakage.  Similarly, the weatherstripping was defectively installed at the cafeteria double doors at the south elevation of Sugen 1.  The door thresholds at this location also were poorly sealed, and the doors contained a large gap.  These defects allowed water to easily enter the building, which resulted in stains on the linoleum.  Furthermore, the double doors in the breezeway between Sugen 1 and Sugen 2 contained a gap, which led to leaking.

In remedying these defects, Hathaway and its Subcontractors applied weatherstripping, drip cap, thresholds, and seals.  Hathaway and its Subcontractors also removed and replaced the double doors at the breezeway between Sugen 1 and Sugen 2.

Other defects.  Subsequent testing has indicated other construction defects.  For example, the sealant is loose or open in numerous places.  In addition, leak testing has revealed problems with a steel support on the roof of Sugen 1.

CSS warranted that "the Work will be free from the defects not inherent in the quality required or permitted."  *See* AIA Document AIA Document A201/CMa-1992 ¶ 3.5.1; AIA Document A201-1987 ¶ 3.5.1.  As detailed above, CSS did not fulfill these provisions.

2

As a result, Britannia now demands arbitration pursuant to AIA Document AIA Document A201/CMa-1992 ¶ 4.9 and AIA Document A201-1987 ¶¶ 4.5. Prior to any arbitration, the parties should attempt to resolve the matter at the mediation scheduled for early 2005.

17035\3005\414920.2

3

ATTACHMENT A

## ATTACHMENT A

### Arbitration Clauses – AIA Document A201-1987

## 4.5    ARBITRATION

**4.5.1   Controversies and Claims Subject to Arbitration.**  Any controversy or Claim arising out of or related to the Contract, or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof, except controversies or Claims relating to aesthetic effect and except those waived as provided for in Subparagraph 4.3.5.  Such controversies or Claims upon which the Architect has given notice and rendered a decision as provided in Subparagraph 4.4.4 shall be subject to arbitration upon written demand of either party.  Arbitration may be commenced when 45 days have passed after a Claim has been referred to the Architect as provided in Paragraph 4.3 and no decision has been rendered.

**4.5.2   Rules and Notices for Arbitration.**  Claims between the Owner and Contractor not resolved under Paragraph 4.4 shall, if subject to arbitration under Subparagraph 4.5.1, be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect, unless the parties mutually agree otherwise.  Notice of demand for arbitration shall be filed in writing with the other party to the Agreement between the Owner and Contractor and with the American Arbitration Association, and a copy shall be filed with the Architect.

**4.5.3   Contract Performance During Arbitration.**  During arbitration proceedings, the Owner and Contractor shall comply with Subparagraph 4.3.4.

**4.5.4   When Arbitration May Be Demanded.**  Demand for arbitration of any Claim may not be made until the earlier of (1) the date on which the Architect has rendered a final written decision on the Claim, (2) the tenth day after the parties have presented evidence to the Architect or have been given reasonable opportunity to do so, if the Architect has not rendered a final written decision by that date, or (3) any of the five events described in Subparagraph 4.3.2.

**4.5.4.1**  When a written decision of the Architect states that (1) the decision is final but subject to arbitration and (2) a demand for arbitration of a Claim covered by such decision must be made within 30 days after the date on which the party making the demand receives the final written decision, then failure to demand arbitration within said 30 days' period shall result in the Architect's decision becoming final and binding upon the Owner and Contractor.  If the Architect renders a decision after arbitration proceedings have been initiated, such decision may be entered as evidence, but shall not supersede arbitration proceedings unless the decision is acceptable to all parties concerned.

**4.5.4.2** A demand for arbitration shall be made within the time limits specified in Subparagraph 4.5.1 and 4.5.4 Clause 4.5.4.1 as applicable, and in other cases within a reasonable time after the Claim has arisen, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such Claim would be barred by the applicable statute of limitations as determined pursuant to Paragraph 13.7.

**4.5.6    Limitation on Consolidation or Joinder.** No arbitration arising out of or relating to the Contract Documents shall include, by consolidation or joinder or in any other manner, the Architect, the Architect's employees or consultants, except by written consent containing specific reference to the Agreement and signed by the Architect, Owner, Contractor and any other person or entity sought to be joined. No arbitration shall include, by consolidation or joinder or in any other manner, parties other than the Owner, Contractor, a separate contractor as described in Article 6 and other persons substantially involved in a common question of fact or law whose presence is required if complete relief is to be accorded in arbitration. No person or entity other than the Owner, Contractor or a separate contractor as described in Article 6 shall be included as an original third party or additional third party to an arbitration whose interest or responsibility is insubstantial. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of a dispute not described therein or with a person or entity not named or described therein or with a person or entity not named or described therein. The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to the Agreement shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

**4.5.6    Claims and Timely Assertion of Claims.** A party who files a notice of demand for arbitration must assert in the demand all Claims then known to that party on which arbitration is permitted to be demanded. When a party fails to include a Claim through oversight, inadvertence or excusable neglect, or when a Claim has matured or been acquired subsequently, the arbitrator or arbitrators may permit amendment.

**4.5.7    Judgment on Final Award.** The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

**Arbitration Clauses – AIA Document A201/CMA-1992**

**4.9    ARBITRATION**

**4.9.1    Controversies and Claims Subject to Arbitration.** Any controversy or Claim arising out of or related to the Contract, or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof, except controversies or Claims relating to aesthetic effect and except those waived as provided for in Subparagraph 4.7.5. Such

controversies or Claims upon which the Architect has given notice and rendered a decision as provided in Subparagraph 4.8.4 shall be subject to arbitration upon written demand of either party. Arbitration may be commenced when 45 days have passed after a Claim has been referred to the Architect as provided in Paragraph 4.7 and no decision has been rendered.

**4.9.2  Rules and Notices for Arbitration.** Claims between the Owner and Contractor not resolved under Paragraph 4.8 shall, if subject to arbitration under Subparagraph 4.9.1, be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect, unless the parties mutually agree otherwise. Notice of demand for arbitration shall be filed in writing with the other party to the Agreement between the Owner and Contractor and with the American Arbitration Association, and copies shall be filed with the Construction Manager and Architect.

**4.9.3  Contract Performance During Arbitration.** During arbitration proceedings, the Owner and Contractor shall comply with Subparagraph 4.7.4.

**4.9.4  When Arbitration May Be Demanded.** Demand for arbitration of any Claim may not be made until the earlier of (1) the date on which the Architect has rendered a final written decision on the Claim, (2) the tenth day after the parties have presented evidence to the Architect or have been given reasonable opportunity to do so, if the Architect has not rendered a final written decision by that date, or (3) any of the five events described in Subparagraph 4.7.2.

**4.9.4.1** When a written decision of the Architect states that (1) the decision is final but subject to arbitration and (2) a demand for arbitration of a Claim covered by such decision must be made within 30 days after the date on which the party making the demand receives the final written decision, then failure to demand arbitration within said 30 days' period shall result in the Architect's decision becoming final and binding upon the Owner and Contractor. If the Architect renders a decision after arbitration proceedings have been initiated, such decision may be entered as evidence, but shall not supersede arbitration proceedings unless the decision is acceptable to all parties concerned.

**4.9.4.2** A demand for arbitration shall be made within the time limits specified in Subparagraph 4.9.1 and 4.9.4 and Clause 4.9.4.1 as applicable, and in other cases within a reasonable time after the Claim has arisen, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such Claim would be barred by the applicable statue of limitations as determined pursuant to Paragraph 13.7.

**4.9.5 Limitation on Consolidation or Joinder.** No arbitration arising out of or relating to the Contract Documents shall include, by consolidation or joinder or in any other manner, the Construction Manager, the Architect, or the Construction Manager's or Architect's employees or consultants, except by written consent containing specific reference to the Agreement and signed by the Construction Manager, Architect, Owner, Contractor and any other person or entity sought to be joined. No arbitration shall include, by consolidation or joinder or in any other manner, parties other than the Owner, Contractor, other Contractors as described in Article 6 and other persons substantially involved in a common question of fact or law whose presence is required if complete relief is to be accorded in arbitration. No persons or entities other than the

Owner, Contractor or other Contractors as defined in Subparagraph 3.1.2 shall be included as an original third party or additional third party to an arbitration whose interest or responsibility is insubstantial . Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of a dispute not described therein or with a person or entity not named or described therein. The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to the Agreement shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

**4.9.6   Claims and Timely Assertion of Claims.**  A party who files a notice of demand for arbitration must assert in the demand all Claims then known to that party on which arbitration is permitted to be demanded.  When a party fails to include a Claim through oversight, inadvertence or excusable neglect, or when a Claim has matured or been acquired subsequently, the arbitrator or arbitrators may permit amendment.

**4.9.7   Judgment on Final Award.**  The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

17035\3008\418926.1

*BRITANNIA POINTE v. CONCRETE SHELL STRUCTURES, INC.*

AMENDED DEMAND FOR ARBITRATION
ANSWERING STATEMENT &
CROSS-CLAIM

ICN 0119

# AMERICAN ARBITRATION ASSOCIATION
## CONSTRUCTION INDUSTRY ARBITRATION RULES
### AMENDED    DEMAND FOR ARBITRATION

*MEDIATION   If you want the AAA to contact the other party and attempt to arrange a mediation, please check this box* ☐

| TO: Name of Respondent See Attached List | | | Name of Representative (if known) | | |
|---|---|---|---|---|---|
| Address | | | Representative's Address | | |
| City | State | Zip Code | City | State | Zip Code |
| Phone No. | Fax No. | | Phone No. | Fax No. | |

THE NAMED CLAIMANT, A PARTY TO A WRITTEN AGREEMENT PROVIDING FOR ARBITRATION UNDER THE CONSTRUCTION INDUSTRY ARBITRATON RULES, HEREBY DEMANDS ARBITRATION THEREUNDER (ATTACH THE ARBITRATION CLAUSE)

ARBITRATION CLAUSE CONTAINED IN THE FOLLOWING CONTRACT DOCUMENT: (Please check one)
☐ AIA–American Institute of Architects  ☐ AGC–Associated General Contractors of America
☐ EJCDC–Engineers Joint Contract Documents Committee  ☐ DBIA–Design Build Institute of America
☐ CMAA–Construction Management Association of America  ☐ ASA–American Subcontractors Association
☒ Other (specify  Subcontract                )

THE NATURE OF THE DISPUTE (Please give enough details to enable the AAA to select arbitrators with appropriate experience)
Defective Construction, Commercial Building

DOLLAR AMOUNT OF CLAIM
$ Approximately $230,000

OTHER RELIEF SOUGHT
Indemnity

PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR (S) TO BE APPOINTED TO HEAR THE DISPUTE
Construction Specialist

CLAIMANT IS
☐ Owner    ☐ Design professional (specify———————————)
☐ Subcontractor (specify————————————)  ☐ Contractor
                                    ☐ Other (specify————————)

RESPONDENT IS
☐ Owner    ☐ Design professional (specify———————)
☒☒ Subcontractor (specify See List                )  ☐ Contractor
                                    ☐ Other (specify————————)

Estimated time needed for hearings overall _____ hours  10 _____ days

Copies of this demand are being filed with the American Arbitration Association at its _____ office.
Claimant requests that the AAA commence the administration of the arbitration. Under the rules, you may file an answering statement within fifteen days after notice from the AAA.

CLAIMANT REQUESTS THAT ARBITRATION HEARINGS BE HELD AT THE FOLLOWING LOCALE
San Francisco American Arbitration Association offices

| Signature (may be signed by a representative) | Title Attorney at Law | Date December 22, 2004 |
|---|---|---|

| Name of Claimant Concrete Shell Structures, Inc. | Name of Representative Craig S. JOnes | Name of Firm (if Applicable) Archer Norris |
|---|---|---|
| Address (to be used in connection with this case) 1960 S. Foresthill Place | Representative's Address 2033 N. Main Street, Suite 800 | |
| City Danville | State CA | Zip Code 94526 | City Walnut Creek | State CA | Zip Code 94596 |
| Phone No. | Fax No. | Phone No. 925.930.6600 | Fax No. 925.930.6620 |

TO INSTITUTE PROCEEDINGS, PLEASE SEND TWO COPIES OF THIS DEMAND AND THE ARBITRATION AGREEMENT, WITH THE FILING FEE AS PROVIDED FOR IN THE RULES, TO THE AAA. SEND THE ORIGINAL DEMAND TO THE RESPONDENT.

ICN 0120

# AMERICAN ARBITRATION ASSOCIATION
## CONSTRUCTION INDUSTRY ARBITRATION RULES
### ANSWERING STATEMENT/CROSS—CLAIM

*MEDIATION   If you want the AAA to contact the other party and attempt to arrange a mediation, please check this box.* ☐

| TO: Name of Claimant | | | Name of Representative (if Known) |
|---|---|---|---|
| Britannia Pointe Grand Partnership | | | M. Kay Martin of Folger, Levin & Kahn LLP |
| Address | | Limited | Address |
| | | | 275 Battery St., 23rd Flr. |
| City | State | Zip Code | City San Francisco / State CA / Zip Code 94111 |
| Phone No. | Fax No. | | Phone No 415.986.2800 / Fax No. |

**RESPONDENT ANSWERS CLAIMANT DEMAND FOR ARBITRATION AS FOLLOWS**
Please describe the dispute and any counterclaim in sufficient detail so the AAA may select an arbitrator with appropriate qualifications and experience
AAA Case # (if known)

SEE ATTACHED PAGES TO ANSWERING STATEMENT

| DOLLAR AMOUNT OF CLAIM | OTHER RELIEF SOUGHT Defense & Indemnity of |
|---|---|
| $ | claimant's underlying claim for defects of $500,000 |

**PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR (S) TO BE APPOINTED TO HEAR THE DISPUTE**

CONSTRUCTION SPECIALIST

**ESTIMATED TIME NEEDED FOR HEARINGS OVERALL** _____ hours __10__ days

**RESPONDENT REQUESTS THAT ARBITRATION HEARINGS BE HELD AT THE FOLLOWING LOCALE**

American Arbitration Association, San Francisco offices

| Signature (may be signed by a representative) | Title Attorney at Law | Date December 22, 2004 |
|---|---|---|
| Name of Respondent | | |
| Concrete Shell Structures, Inc. | Name of Representative | |
| Address | Craig S. Jones/Archer Norris | |
| 1960 S. Foresthill Place | Address | |
| | 2033 N. Main Street, Suite 800 | |
| City Danville | State CA | Zip Code 94526 | City Walnut Creek | State CA | Zip Code 94596 |
| Phone No. | Fax No. | Phone No. 925.930.6600 | Fax No. 925.930.6620 |
| Email | | Email cjones@archernorris.com | |

**PLEASE SEND TWO COPIES OF THIS ANSWERING STATEMENT, WITH THE FILING FEE FOR ANY COUNTERCLAIM, AS PROVIDED FOR IN THE RULES, TO THE AAA. SEND THE ORIGINAL ANSWERING STATEMENT TO THE CLAIMANT**

Form C14 11/00

ICN 0121

ATTACHMENT "A" TO AMENDED ANSWERING STATEMENT/CROSS-DEMAND
FOR ARBITRATION BY CONCRETE SHELL STRUCTURES, INC.

## _LISTING OF CROSS-RESPONDENTS_

1.    Danco Waterproofing Corporation, 3142 Diablo Avenue, Hayward, CA 94545, telephone: (510) 782-7844, fax: (510) 782-1242

2.    Dolan Concrete Construction, 3600 West Bayshore Road, #105, Palo Alto, CA 94303, telephone: (650) 813-9191, fax: (650) 813-9117

3.    Elite Plastering, Inc., 555 Foxfire Drive, Manteca, CA 95337, telephone: (510) 387-1090, fax: (510) 825-4960

4.    South Valley Glass, Inc., 5715 South Front Road, D-1, Livermore, CA 94550, telephone: (925) 447-7434, fax: (925) 447-0916

5.    West Bay Mechanical, Inc., 1728-C, Rogers Avenue, San Jose, CA 95112, telephone: (408) 441-4644, fax: (408) 441-7640

6.    H&H Plastering, Inc., 5580 Boscell Common, Fremont, CA 94538; telephone: (510) 490-8210

BR061/165607-1

ICN 0122

## PAGE 2  OF ANSWERING STATEMENT/DEMAND FOR ARBITRATION OF CONCRETE SHELL STRUCTURES, INC.

The dispute is set forth in Claimant's "Additional Claims" statement attached hereto. Respondent denies any responsibility to claimant for the alleged defective conditions and damages. However, in the event any liability does exist, respondent hereby makes its cross-claim and demand for arbitration for a complete defense and indemnity on claimant's claims against Danco Waterproofing Corporation, Dolan Concrete Construction, Elite Plastering, Inc., South Valley Glass, Inc. and West Bay Mechanical, Inc. The identification and contact information of each cross-respondent is set forth in attachment A, hereto.

Respondent/cross-complainant is a party to a written agreement with claimant providing for arbitration under the Construction Industry Arbitration Rules. A copy of said arbitration clause is set forth herein as a Attachment B. Respondent/cross-claimant has written agreements with all cross-respondents which incorporates and makes applicable the arbitration provision of the contract between claimant and respondent/cross-claimant. Said provision provides:

"Subcontractor agrees: (a) Two assume toward Contract all obligations and responsibilities assumed by Contractor toward the Owner under any General Contract pertaining to the job which this Subcontract relates, to the extent that such obligations and responsibilities apply, generally or specifically to the subject matter of this Subcontract."

HR001736646 05 1

## PROOF OF SERVICE

Name of Action: Britaunia Pointe Grand, L.P. v. Concrete Shell Structures, Inc.
Court and Action No: AAA Case No. 74 110 M 00660 04 OLTR

I, Connie S. Costanza, declare that I am over the age of eighteen years, and not a party to this action or proceeding. My business address is 391 North Main Street, Suite 210, Corona, CA 92880. On January 19, 2005, I caused the following document(s) to be served:

### AMENDED ANSWERING STATEMENT/CROSS-CLAIM AND DEMAND FOR ARBITRATION

[X]  by placing a true copy of the document(s) listed above, enclosed in a sealed envelope, addressed as set forth below, for collection and mailing on the date and at the business address shown above following our ordinary business practices. I am readily familiar with this business' practice for collection and processing of correspondence for mailing with the United States Postal Service. On the same day that a sealed envelope is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service with postage fully prepaid.

[ ]  by placing a true copy of the document(s) listed above enclosed in a sealed envelope, with postage fully prepaid thereon, in the United States mail at Corona, California addressed as set forth below.

[ ]  by having a true copy of the document(s) listed above transmitted by facsimile to the person(s) at the facsimile number(s) set forth below before 5:00 p.m. The transmission was reported as complete without error by a report issued by the transmitting facsimile machine. A true and correct copy of the transmission report is attached hereto.

[ ]  by having personally delivered a true copy of the document(s) listed above, enclosed in a sealed envelope, to the person(s) and at the address(es) set forth below.

[ ]  by having personal delivery by _____ of a true copy of the document(s) listed above, enclosed in a sealed envelope, to the person(s) and at the address(es) set forth below.

*Please see attached Service List*

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 19, 2005, at Walnut Creek, California.

Connie S. Costanza

BR081/387297.1

ICN 0124

Name of Action: Britannia Pointe Grand, L.P. v. Concrete Shell Structures, Inc.
Court and Action No: AAA Case No. 74 110 M 00660 04 GLTR

1

2

Service List

3

4    *Plaintiff Britannia Pointe Grand*

5    M. Kay Martin, Esq.
     FOLGER, LEVIN & KAHN, LLP
     275 Battery Street, 23rd Floor
6    San Francisco, CA 94111
     Tel: (415)
7    Fax: (415)

8    *South Valley Glass*

9    Christopher Appleton, Esq.
     FORGE & ZAYNER
10   2841 Junction Avenue, Suite 110
     Central Park Plaza
11   San Jose, CA 95134-1921
     Tel: (408) 750-3300
12   Fax: (408) 750-3322

13   *West Bay Mechanical, Inc.*

14   David W. White, Esq.
     GLASPY & GLASPY
15   One Walnut Creek Center
     100 Pringle Avenue, Suite 750
16   Walnut Creek, CA 94596
     Tel: (925)
17   Fax: (925)

18   *In Pro Per*

19   Danco Waterproofing Corporation
     3142 Diablo Avenue
20   Hayward, CA 94545

21

22

23

24

25

26

27

28

*Elite Plastering*

James S. Han, Esq.
ARRUTI & ASSOCIATES
1899 East Roseville Pkwy., Suite 110
Roseville, CA 95661
Tel: (916) 786-3111
Fax: (916) 786-2151

*In Pro Per*

West Bay Mechanical, Inc.
1728-C Rogers Avenue
San Jose, CA 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

*In Pro Per*

Dolan Concrete Construction
481 Auzerais Avenue
San Jose, CA 95126

*Co-Counsel for Concrete Shell Structures*

David S. Henningsen
Jonathan N. King
ROBINSON & WOOD, INC.
227 North First Street
San Jose, CA 95113
Tel: (408) 298-7120
Fax: (408) 298-0477

HR081738729?.1

2