1    FOLGER LEVIN & KAHN LLP
     Wesley D. Hurst (CSB No. 127564, whurst@flk.com)
2    Eric M. Lode (CSB No. 209129, elode@flk.com)
     Embarcadero Center West
3    275 Battery Street, 23rd Floor
     San Francisco, CA  94111
4    Telephone: (415) 986-2800
     Facsimile: (415) 986-2827
5

6    Attorneys for Third-Party Assignee
     Britannia Pointe Grand Limited Partnership

7

8                        UNITED STATES DISTRICT COURT

9                     NORTHERN DISTRICT OF CALIFORNIA

10                        SAN FRANCISCO DIVISION

11

12   INSURANCE CORPORATION OF NEW          Case No. CV 07-05214 WHA
     YORK,
13                                          **THIRD-PARTY ASSIGNEE BRITANNIA
                     Plaintiff,             POINTE GRAND LIMITED
14                                          PARTNERSHIP'S MEMORANDUM OF
           v.                               POINTS AND AUTHORITITES IN
15                                          OPPOSITION TO PLAINTIFF
     H&H PLASTERING, INC.; CONCRETE         INSURANCE CORPORATION OF NEW
16   SHELL STRUCTURES, INC.; and DOES       YORK'S APPLICATION FOR DEFAULT
     1 though 10, inclusive,                JUDGMENT**
17
                     Defendants.            Date:        May 22, 2008
18                                          Time:        8:00 a.m.
                                            Courtroom:   9
19                                          Judge:       Hon. William Alsup
20

21

22

23

24

25

26

27

28

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

BRITANNIA'S MPA IN OPPOSITION OF
APPLICATION FOR DEFAULT JUDGMENT;
CASE NO. CV 07-05214 WHA

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................. 1

II.  BACKGROUND ................................................................................................ 4

A.   InsCorp's Insured, H&H, Is Responsible To Britannia For Defective Construction .................................................................................................... 4

B.   InsCorp Refused To Participate In H&H's Defense In The Britannia Arbitration For Approximately Two-And-A-Half Years..................................... 5

C.   InsCorp Filed This Action Seeking To Reform Its Insurance Policies With H&H To Include An EIFS Exclusion That InsCorp Believes Would Eliminate Its Indemnity Obligations As To Claims Raised In The Britannia Arbitration. ...................................................................................................... 5

D.   InsCorp Did Not Serve Any Of Its Pleadings On Concrete Shell's Counsel, Apparently Serving Only Concrete Shell's Former Principal, Who Is Approximately 75 Years Old And Retired............................................................. 6

E.   Concrete Shell's Counsel Expressly Requested That InsCorp Refrain From Seeking A Default. ........................................................................................... 6

F.   Concrete Shell's Defense Counsel In The Britannia Arbitration Referred InsCorp's Complaint To Concrete Shell's Coverage Counsel, With The Understanding That Coverage Counsel Would Respond To The Complaint ......... 7

G.   Less Than One Week After Britannia Agreed To Settle With Every Party To The Britannia Arbitration Except For H&H, InsCorp Moved For An Entry Of Default Without Notifying Counsel ................................................... 7

H.   Britannia Now Has Been Formally Assigned Concrete Shell's Rights And Claims Against InsCorp ................................................................................... 8

III. ARGUMENT ...................................................................................................... 9

A.   Litigating This Case On The Merits Would Not Be Prejudicial To InsCorp.......... 9

B.   There Are, At The Very Least, Serious Issues As To The Merits Of InsCorp's Claim ............................................................................................. 10

1.   InsCorp's Pleadings Raise Serious Doubts As To Whether InsCorp Could Meet Its Burden Of Establishing Mutual Mistake By Clear And Convincing Evidence ...................................................... 10

2.   Britannia Has Meritorious Defenses To InsCorp's Claims ..................... 11

a.   The Alleged "Mistake" Was The Result Of InsCorp's Negligence ................................................................................... 11

b.   InsCorp Cannot Provide A Sufficient Explanation For The Alleged "Mistake." .......................................................................... 12

c.   InsCorp's Action Is Barred By Laches ......................................... 12

d.   Reformation Would Prejudice Britannia....................................... 13

C.   InsCorp's Complaint Fails To Allege Facts Sufficient To Establish InsCorp's Substantive Claims ........................................................................ 14

D.   The Sum At Stake Favors Deciding This Case On The Merits ........................... 14

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

BRITANNIA'S MPA IN OPPOSITION OF
APPLICATION FOR DEFAULT JUDGMENT;
CASE NO. CV 07-05214 WHA

1

**TABLE OF CONTENTS**
**(continued)**

2

Page

3    E.    There Are Disputes As To Material Facts ............................................................. 15

    F.    Any "Neglect" Was Excusable ............................................................... 15

4

    G.    The Strong Policy Favoring Decisions On The Merits Supports Denying

5        InsCorp's Application ............................................................... 17

6  IV.    CONCLUSION ............................................................................................. 17

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

BRITANNIA'S MPA IN OPPOSITION OF
APPLICATION FOR DEFAULT JUDGMENT;
CASE NO. CV 07-05214 WHA

# TABLE OF AUTHORITIES

**Page**

## CASES

*Appalachian Ins. Co. v. McDonnell Douglas Corp.*,
214 Cal. App. 3d 1 (1989) ................................................................................................ 11, 12

*Bell Atl. Corp. v. Twombly*,
__ U.S. __, 127 S. Ct. 1955 (2007) ..................................................................................... 3, 14

*Community Dental Servs. v. Tani*,
282 F.3d 1164 (9th Cir. 2002) ........................................................................................... 3, 9

*Eitel v. McCool*,
782 F.2d 1470 (9th Cir. 1986) ....................................................................................... passim

*Falk v. Allen*,
739 F.2d 461 (9th Cir. 1984) ............................................................................................... 10

*Gen. Employees Trust Fund v. Victory Build. Maintenance, Inc.*,
2007 WL 1288393 (N.D. Cal. 2007) .................................................................................... 14

*Hutton v. Fisher*,
359 F.2d 913 (3d Cir. 1966) ............................................................................................ 4, 16

*In re Roxford Foods, Inc.*,
12 F.3d 875 (9th Cir. 1993) .................................................................................................. 16

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
304 F.3d 829 (9th Cir. 2002) ............................................................................................... 12

*Roller v. Cal. Pac. Title Ins. Co.*,
92 Cal. App. 2d 149 (1949) ................................................................................................. 12

*Schools Excess Liability Fund v. Westchester Fire Ins. Co.*,
117 Cal. App. 4th 1275 (2004) ............................................................................................ 13

*Shupe v. Nelson*,
254 Cal. App. 2d 693 (1967) .......................................................................................... 11, 15

*Swink v. City of Pagedale*,
810 F.2d 791 (8th Cir. 1987) ............................................................................................... 14

*TCI Life Ins. Plan v. Knoebber*,
244 F.3d 691 (9th Cir. 2001) ........................................................................................... 3, 10

*Thompson v. Am. Home Assur. Co.*,
95 F.3d 429 (6th Cir. 1996) ................................................................................................. 10

*West. Sav. & Loan Ass'n v. Heflin Corp.*,
797 F. Supp. 790 (N.D. Cal. 1992) ........................................................................... 3, 11, 13, 15

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-iii-

BRITANNIA'S MPA IN OPPOSITION OF
APPLICATION FOR DEFAULT JUDGMENT;
CASE NO. CV 07-05214 WHA

As part of the settlement of a related arbitration, Defendant Concrete Shell Structures, Inc. ("Concrete Shell") has assigned to Britannia Pointe Grand Limited Partnership ("Britannia") all of Concrete Shell's rights and claims against Defendant H & H Plastering, Inc. ("H&H") and H&H's insurers – including Concrete Shell's rights and claims against Plaintiff Insurance Corporation of New York's ("InsCorp"). Third-Party Assignee Britannia now respectfully submits this Memorandum of Points and Authorities in Opposition to Plaintiff InsCorp's Application for a Default Judgment ("InsCorp's Application").

## I.    INTRODUCTION

Plaintiff InsCorp brought this action in an attempt to reform certain of its insurance policies with Defendant H&H, so that such policies would contain an exclusion that InsCorp believes would eliminate its indemnity obligations for claims raised by Third-Party Assignee Britannia and Defendant Concrete Shell in a related arbitration (the "Britannia Arbitration").

Concrete Shell is a dissolved corporation, and its former principal is approximately 75 years old and retired. While the parties to the Britannia Arbitration were involved in settlement discussions, Concrete Shell's counsel learned of this action and expressly requested that InsCorp refrain from seeking a default on the grounds that Concrete Shell intended to respond to InsCorp's Complaint and protect Concrete Shell's interests. This request was then reiterated in writing. Despite this request, InsCorp sought and obtained entries of default without even notifying counsel for Concrete Shell. Without mentioning these facts – and without having provided Concrete Shell's counsel with even a courtesy copy of InsCorp's Application – InsCorp now seeks a default judgment.

The Britannia Arbitration involved defective construction at commercial properties located in South San Francisco. Britannia, the owner of the properties, contracted with Concrete Shell, a general contractor, to construct a building for the use of a biopharmaceutical company tenant of Britannia's. Concrete Shell in turn subcontracted with H&H to, among other things, install caulk joints and exterior installation finishing system ("EIFS") on the building's exterior. The construction was defective and, consistent with the parties' contracts, Britannia initiated an American Arbitration Association proceeding against Concrete Shell. Concrete Shell, in turn,

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

BRITANNIA'S MPA IN OPPOSITION  OF
APPLICATION  FOR DEFAULT JUDGMENT;
CASE NO. CV 07-05214 WHA

1    cross-claimed for indemnity against various subcontractors, including H&H.

2    H&H was insured by InsCorp. H&H is no longer in business, and its former principal was

3    involved in serious car accident that rendered him severely disabled.

4    InsCorp refused to defend H&H in the Britannia Arbitration for almost two-and-a-half

5    years. InsCorp then finally agreed to defend H&H under a reservation of rights. H&H was

6    subsequently represented in the Britannia Arbitration by the law firm of McCarthy & McCarthy.

7    While the parties to the Britannia Arbitration were involved in settlement discussions,

8    another InsCorp law firm, Roger Scott & Helmer LLP, filed this reformation action against H&H

9    and Concrete Shell. InsCorp presumably named Concrete Shell as a Defendant because Concrete

10    Shell has additional insured rights under H&H's InsCorp insurance policies. InsCorp did not

11    name Britannia as a Defendant in this action.

12    In January 2008, all the parties to the Britannia Arbitration – with the exception of H&H –

13    agreed to settle their respective claims against each other in that proceeding. All potential claims

14    against H&H and H&H insurers (including InsCorp) were carved out of the settlement. As part

15    of the settlement, Concrete Shell agreed to assign to Britannia all of Concrete Shell's rights and

16    claims against H&H and H&H's insurers – including its additional insured rights against InsCorp.

17    Soon after all the parties except for H&H agreed to settle the Britannia Arbitration,

18    InsCorp sought, and received, entries of default in this Court against both Concrete Shell and

19    H&H. InsCorp did <u>not</u> provide counsel for either Concrete Shell or Britannia with notice of

20    InsCorp's request for entry of default. InsCorp has not served counsel for either Concrete Shell

21    or Britannia with even courtesy copies of <u>any</u> of InsCorp's pleadings in this action.

22    The assignment agreement pursuant to which Concrete Shell agreed to assign to Britannia

23    all of Concrete Shell's rights and claims against H&H and H&H's insurers – including Concrete

24    Shell's additional insured rights against InsCorp – was not finalized until April 30, 2008. Now

25    that the assignment agreement has been finalized, Britannia intends to pursue its rights and

26    remedies against H&H and H&H's insurers, including InsCorp. Britannia accordingly submits

27    this Opposition to InsCorp's Application for Entry of Default Judgment.

28    "[J]udgment by default is an extreme measure and a case should, 'whenever possible, be

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-2-

BRITANNIA'S MPA IN OPPOSITION OF
APPLICATION FOR DEFAULT JUDGMENT;
CASE NO. CV 07-05214 WHA

1    decided on the merits.'" *Community Dental Servs. v. Tani*, 282 F.3d 1164, 1171 (9th Cir. 2002)

2    (citation omitted).  Factors that this Court may consider in ruling on InsCorp's Application

3    "include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive

4    claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the

5    possibility of a dispute concerning material facts; (6) whether the default was due to excusable

6    neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring

7    decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (affirming

8    denial of motion for default judgment where "several of these factors support[ed] the district

9    court's denial").

10       InsCorp's Application fails to address most all of these factors, much less to establish that

11   these factors favor a default judgment here.  Since these factors favor deciding this case on the

12   merits, InsCorp's Application should be denied.

13       First, litigating on the merits would not be prejudicial to InsCorp.  *TCI Life Ins. Plan v.*

14   *Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001) (application to set aside default).

15       Second, there are serious issues as to the merits of InsCorp's substantive claims.  *See*

16   *Eitel*, 782 F.3d at 1472.   InsCorp's entire Complaint is based upon a request to reform its

17   insurance policies with H&H on the alleged ground of "mutual mistake."  InsCorp has the burden

18   of proving the alleged "mutual mistake" by clear and convincing evidence.  *West. Sav. & Loan*

19   *Ass'n v. Heflin Corp.*, 797 F. Supp. 790, 792 (N.D. Cal. 1992).  Yet InsCorp has not offered to

20   introduce any evidence that the alleged "mistake" was "mutual" – *i.e.*, that it was shared by H&H.

21   Moreover, Britannia has numerous meritorious defenses to InsCorp's request for reformation.

22       Third, the Complaint fails to allege facts sufficient to establish that InsCorp is entitled to

23   relief.  For example, InsCorp fails to allege facts sufficient to show that the H&H shared in the

24   alleged "mistake."  *See Bell Atl. Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1964-65 (2007)

25   ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more

26   than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

27   not do.") (citation omitted).   InsCorp also fails to allege facts sufficient to establish that it has no

28   obligations as to claims raised in the Britannia Arbitration.

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-3-

BRITANNIA'S MPA IN OPPOSITION  OF
APPLICATION  FOR DEFAULT JUDGMENT;
CASE NO. CV 07-05214 WHA

1    <u>Fourth</u>, substantial sums are involved in this dispute.  InsCorp's potential indemnification

2    obligations could exceed $1,000,000.

3    <u>Fifth</u>, there is a likelihood of a dispute concerning material facts.  As stated above,

4    InsCorp has the burden of proving the alleged "mutual mistake" by clear and convincing

5    evidence, yet InsCorp provides no evidence that H&H shared in the alleged "mistake."

6    <u>Sixth</u>, any "neglect" that led to the default was excusable.  InsCorp filed this action while

7    the parties to the Britannia Arbitration were involved in settlement negotiations, and InsCorp

8    failed to notify Concrete Shell's counsel of InsCorp's request for a default even after Concrete

9    Shell's counsel requested that InsCorp refrain from pursuing a default.  *See generally Eitel*, 782

10   F.2d at 1472 (settlement negotiations); *Hutton v. Fisher*, 359 F.2d 913, 915 (3d Cir. 1966)

11   (acquiescence in request of counsel).

12   <u>Seventh</u>, the strong policy in favor of resolving disputes on the merits entails that the

13   dispute should be resolved on the merits here.

## II.    BACKGROUND

### A.    InsCorp's Insured, H&H, Is Responsible To Britannia For Defective Construction.

17   InsCorp's insured, H&H, defectively installed caulk joints and EIFS at an office building

18   owned by Britannia located at 230 East Grand Avenue, South San Francisco, California

19   ("Building 230").  When defectively installed, caulk joints and EIFS can lead to water intrusion

20   and resultant damage, as they did here.

21   Britannia became aware of construction defects at Building 230 – including defective

22   installation of caulk joints and EIFS that led to resultant damage – and, consistent with its

23   construction contracts, filed an American Arbitration Association Arbitration Demand against the

24   general contractor, Concrete Shell (American Arbitration Association Case Number No. 74 110

25   M 00660 04 BRSH).  *See* Declaration of Eric M. Lode ("Lode Decl.") ¶¶ 1, 2.[1]  Concrete Shell in

---

26   [1] Britannia also demanded arbitration against Concrete Shell over defective construction at

27   three other buildings, each of which is also located in South San Francisco:  220 East Grand Avenue, 169 Harbor Way, and 170 Harbor Way.  InsCorp alleges that H&H performed work only at Building 230.

28

1   turn filed cross-claims for indemnification against the subcontractors responsible for the

2   construction, including H&H.  *See id.* ¶ 2.

3       Britannia already has expended over $200,000 in repairing defects at Building 230, and

4   has obtained a repair estimate of $1,700,000 to repair additional defects at that building.  Most of

5   these defects relate to construction for which H&H was responsible; H&H's potential liability to

6   Britannia could exceed $1,000,000.

7   **B.    InsCorp Refused To Participate In H&H's Defense In The Britannia
        Arbitration For Approximately Two-And-A-Half Years.**

8

9       H&H was insured by InsCorp.  *See* Complaint ¶ 6.  H&H is no longer in business, and its

10  former principal was involved in a serious automobile accident that rendered him severely

11  disabled.  *See* Declaration of David S. Henningsen ("Henningsen Decl.") ¶ 6.

12      InsCorp acknowledges that it refused to defend H&H in the Britannia Arbitration for

13  approximately two-and-a-half years.  *See* Complaint ¶ 20.  When InsCorp finally agreed to defend

14  H&H in June 2007, InsCorp did so under a reservation of rights.  *See id.*  H&H was then

15  defended by the law firm of McCarthy & McCarthy.  *See* Lode Decl. ¶ 2.

16  **C.    InsCorp Filed This Action Seeking To Reform Its Insurance Policies With
        H&H To Include An EIFS Exclusion That InsCorp Believes Would Eliminate
        Its Indemnity Obligations As To Claims Raised In The Britannia Arbitration.**

17

18      Another of InsCorp's law firms filed this action in October 2007,[2] seeking to reform

19  certain of InsCorp's insurance policies with H&H so that such policies would include an EIFS

20  exclusion that InsCorp failed to include in the policies that it actually issued.  *See* Complaint ¶¶

21  24-31.  Based solely on its request for reformation, InsCorp further requests declarations that it

22  had no duty to defend or indemnify H&H as to the claims raised by Britannia and/or Concrete

23  Shell in the Britannia Arbitration.  *See id.* ¶¶ 17, 33-43.

24      InsCorp named both H&H and Concrete Shell as Defendants in this action, presumably

25  because Concrete Shell is listed as an additional insured in H&H's InsCorp policies.  InsCorp did

26

27      [2] The instant action was filed by the law firm of Roger, Scott & Helmer LLP, which did
    not represent H&H in the Britannia Arbitration.

28

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-5-

BRITANNIA'S MPA IN OPPOSITION  OF
APPLICATION  FOR DEFAULT JUDGMENT;
CASE NO. CV 07-05214 WHA

1  not name Britannia as a Defendant in this action.  InsCorp also has not served on Britannia or

2  Britannia's counsel either InsCorp's Complaint or any of InsCorp's further pleadings in this

3  action.  *See* Lode Decl. ¶ 3.

4      **D.    InsCorp Did Not Serve Any Of Its Pleadings On Concrete Shell's Counsel,**
        **Apparently Serving Only Concrete Shell's Former Principal, Who Is**
5      **Approximately 75 Years Old And Retired.**

6          InsCorp did not serve its Complaint or any of its pleadings on Concrete Shell's counsel,

7  even though InsCorp became aware of such counsel's identities through the Britannia Arbitration.

8  *See* Henningsen Decl. ¶ 3, 5.  InsCorp appears to have served its Complaint and further pleadings

9  only on Brian Cameron, Concrete Shell's former principal and registered agent.  Concrete Shell is

10  a dissolved corporation; Mr. Cameron is approximately 75 years old and retired.  *See id.* ¶ 2.

11      **E.    Concrete Shell's Counsel Expressly Requested That InsCorp Refrain From**
        **Seeking A Default.**
12          On or about October 26, 2007, while the parties to the Britannia Arbitration were involved

13  in settlement discussions, Concrete Shell's counsel became aware of this action and discussed

14  InsCorp's Complaint with InsCorp's counsel.  *See id.* ¶ 4-6.

15          During that conversation, InsCorp's counsel stated that H&H was no longer in business,

16  and that H&H's former principal had been involved in a serious automobile accident that left him

17  severely disabled.  *See id.* ¶ 6.  As such, InsCorp's counsel stated that it was unlikely that H&H

18  would respond to InsCorp's Complaint.  *See id.*

19          During that same conversation, Concrete Shell's counsel expressly requested that InsCorp

20  refrain from seeking a default, stating that Concrete Shell intended to answer InsCorp's

21  Complaint and protect Concrete Shell's interests, but that the process for doing so needed to be

22  resolved.  *See id.* ¶ 7.  That same day, Concrete Shell's counsel also requested in writing that

23  InsCorp refrain from seeking a default.  *See id.* ¶ 8.  InsCorp did not deny, or respond to,

24  Concrete Shell's counsel's request.  *See id.* ¶ 9.  Concrete Shell's counsel accordingly assumed

25  that InsCorp would not pursue a default.  *See id.*

26          InsCorp has not mentioned its communications with Concrete Shell's counsel in any of its

27  pleadings in this action.

28

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-6-

BRITANNIA'S MPA IN OPPOSITION  OF
APPLICATION  FOR DEFAULT JUDGMENT;
CASE NO. CV 07-05214 WHA

1

**F.     Concrete Shell's Defense Counsel In The Britannia Arbitration Referred InsCorp's Complaint To Concrete Shell's Coverage Counsel, With The Understanding That Coverage Counsel Would Respond To The Complaint.**

2

3

Concrete Shell's defense in the Britannia arbitration was handled by two different law

4

firms that were appointed by two of Concrete Shell's different insurance companies.  *See*

5

Henningsen Decl. ¶ 10; Declaration of Craig S. Jones ("Jones Decl.") ¶ 4.  One of these insurance

6

companies retained coverage counsel for Concrete Shell, while the other did not.  *See* Henningsen

7

Decl. ¶ 11; Jones Decl. ¶ 5.  On or about October 31, 2007, counsel for Concrete Shell in the

8

Britannia Arbitration referred InsCorp's Complaint to a third-party claims adjuster and to

9

Concrete Shell's coverage counsel, with the understanding that coverage counsel would respond

10

to the Complaint.  *See* Jones Decl. ¶ 5.  On or about November 26, 2007, Concrete Shell's

11

counsel sent a follow-up email to the third-party claims adjuster.  *See id.*

12

**G.     Less Than One Week After Britannia Agreed To Settle With Every Party To The Britannia Arbitration Except For H&H, InsCorp Moved For An Entry Of Default Without Notifying Counsel.**

13

14

On or about January 17, 2008, Britannia agreed to settle the Britannia Arbitration with

15

every party to that arbitration except for H&H.  *See* Lode Decl. ¶ 4; Henningsen Decl. ¶ 12; Jones

16

Decl. ¶ 6.  Any and all claims against H&H and H&H insurers were expressly carved out of the

17

settlement.  As part of the settlement, Concrete Shell agreed to assign to Britannia all of Concrete

18

Shell's rights and claims against H&H and H&H's insurers – including Concrete Shell's

19

additional insured rights against InsCorp.  *See* Lode Decl. ¶ 4; Henningsen Decl. ¶ 12; Jones

20

Decl. ¶ 6.

21

Less than one week later, on January 22, 2008, InsCorp requested entries of default

22

against both Concrete Shell and H&H.  In doing so, InsCorp did <u>not</u> notify counsel for either

23

Concrete Shell or Britannia of its request, despite the fact that InsCorp was aware of such

24

counsel's identities.  *See* Henningsen Decl. ¶ 5; Jones Decl. ¶ 3; Lode Decl. ¶ 3.  In seeking entry

25

of default against Concrete Shell, InsCorp further ignored Concrete Shell's counsel's request that

26

InsCorp refrain from pursuing a default.  InsCorp also has not provided counsel for either

27

Concrete Shell or Britannia with even a courtesy copy of either InsCorp's request for a default or

28

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-7-

BRITANNIA'S MPA IN OPPOSITION  OF
APPLICATION  FOR DEFAULT JUDGMENT;
CASE NO. CV 07-05214 WHA

InsCorp's Application for a Default Judgment.

### H.    Britannia Now Has Been Formally Assigned Concrete Shell's Rights And Claims Against InsCorp.

Neither Britannia nor Concrete Shell's counsel were aware that this Court entered a default against Concrete Shell until January 29, 2008, when the entry of default was discovered by counsel for Britannia.  *See* Lode Decl. ¶ 5; Henningsen Decl. ¶ 13; Jones Decl. ¶ 7. Britannia's counsel promptly notified Concrete Shell's counsel that defaults had been entered. *See* Lode Decl. ¶ 5.

After learning of the defaults, Concrete Shell's attorneys and Britannia's attorney discussed how to address the default that had been entered against Concrete Shell.  *See* Hennignsen Decl. ¶ 15; Lode Decl. ¶ 6.  Britannia ultimately agreed to seek relief from this Court pursuant to an assignment from Concrete Shell.  *See* Lode Decl. ¶ 6; Hennignsen Decl. ¶ 15.

On April 24, 2008, Concrete Shell's counsel wrote to InsCorp's counsel requesting that InsCorp stipulate to a withdrawal of the default entered against Concreter Shell on the grounds that Concrete Shell's attorneys were never informed by InsCorp of the default and were not given an opportunity to protect Concrete Shell's interests until after the default was entered.  *See* Henningsen Decl. ¶ 16.  Counsel for InsCorp has not responded to this request.  *See id.*

The assignment agreement pursuant to which Britannia was assigned Concrete Shell's rights and claims against H&H and H&H's insurers (the "Assignment Agreement") was not finalized until April 30, 2008.  *See* Lode Decl. ¶ 7 & Ex. A; Henningsen Decl. ¶ 16; Jones Decl. 9.  The settlement agreement between the settling parties to the Britannia Arbitration requires the approval of numerous parties and insurance companies, and still is not finalized.  *See* Henningsen Decl. ¶ 15; Jones Decl. ¶ 9; Lode Decl. ¶ 9.

Now that the Assignment Agreement have been finalized and Britannia has been formally assigned Concrete Shell's rights and claims against H&H and H&H's insurers, Britannia intends to pursue its rights against InsCorp.  Britannia accordingly submits this Opposition to InsCorp's

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-8-

BRITANNIA'S MPA IN OPPOSITION  OF
APPLICATION  FOR DEFAULT JUDGMENT;
CASE NO. CV 07-05214 WHA

1   Application for a Default Judgment.[3]

2   ## III.    ARGUMENT

3   "[J]udgment by default is an extreme measure and a case should, 'whenever possible, be

4   decided on the merits.'"  *Community Dental Services v. Tani*, 282 F.3d 1164, 1171 (9th Cir.

5   2002) (citation omitted).

6   Courts in this Circuit may consider several factors in ruling on a motion for default

7   judgment, including: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's

8   substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the

9   action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due

10   to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure

11   favoring decisions on the merits."  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

12   These factors are known as the *Eitel* factors; each factor need <u>not</u> support the denial of a default

13   judgment in order for this Court to deny InsCorp's application.  *See id.* (affirming denial of

14   motion for default judgment where "several of these factors support[ed] the district court's

15   denial").

16   As demonstrated below, the *Eitel* factors favor deciding this case on the merits, and

17   InsCorp's Application should be denied.

18   ### A.    Litigating This Case On The Merits Would Not Be Prejudicial To InsCorp.

19   InsCorp's application fails to address the first *Eitel* factor, which is the possibility of

20   prejudice to plaintiff.  *See Eitel*, 782 F.2d at 1471.  This is unsurprising, because this factor favors

21   deciding this case on the merits here.

22   In the analogous context of requests to <u>set aside</u> a default, the Ninth Circuit has

23   emphasized that "<u>merely being forced to litigate on the merits cannot be considered</u>

24   _____

25   [3]  It is unclear if H&H will be able to respond to InsCorp's Application, since H&H is no
longer in business and its former principal is severely disabled.  *See* Henningsen Decl. ¶ 6.

26   Now that Britannia has been assigned Concrete Shell's rights and claims against H&H and
H&H's insurers, Britannia also will file a Motion to Set Aside the Default Entered Against

27   Concrete Shell.

28

1    prejudicial . . . ." *TCI Life Ins. Plan v. Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001)  (emphasis

2    added).   The Ninth Circuit has also made it clear that setting aside a default would prejudice a

3    plaintiff only if doing so would hinder the plaintiff in its ability to pursue its claim.  *See Falk v.*

4    *Allen*, 739 F.2d 461, 463 (9th Cir. 1984) (per curiam)  To be prejudicial, a "delay must result in

5    tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity

6    for fraud or collusion."  *Thompson v. Am. Home Assur. Co.*, 95 F.3d 429, 433-34 (6th Cir. 1996),

7    *quoted in TCI*, 244 F.3d at 701.

8         Here, InsCorp did not even seek reformation of the H&H policies until almost <u>three years</u>

9    after H&H tendered claims to InsCorp.  *See* Complaint ¶ 20 (alleging that claims were tendered

10   on January 31, 2005).[4]   Any "hindrance" in InsCorp's ability to pursue its claim was caused by

11   InsCorp's own delays in filing this action, and not by Britannia or Concrete Shell.  InsCorp thus

12   cannot demonstrate that it would be prejudiced by having to litigate this case on the merits.

13
      **B.     There Are, At The Very Least, Serious Issues As To The Merits Of InsCorp's**
             **Claim.**
14

15        The second *Eitel* factor – the merits of plaintiff's substantive claim – also favors deciding

16   this case on the merits.  *See Eitel*, 782 F.2d at 1471.  In *Eitel*, the Ninth Circuit affirmed the trial's

17   courts denial of motion for default judgment where "the district court could have had serious

18   doubts as to the merits of Eitel's substantive claims based upon the pleadings."  *See id.* at 1472.

19   Here, InsCorp's pleadings reveal "serious doubts" as to the merits of InsCorp's claims.

20   Moreover, Britannia has numerous meritorious defenses to InsCorp's request for reformation.

21
      **1.     InsCorp's Pleadings Raise Serious Doubts As To Whether InsCorp**
             **Could Meet Its Burden Of Establishing Mutual Mistake By Clear And**
22           **Convincing Evidence.**

23        InsCorp seeks a declaration that it has no indemnity obligations as to the claims raised in

24   the Britannia Arbitration.  *See* Complaint ¶¶ 39-43.  The only purported basis for such a

25   _____

26       [4] Indeed, InsCorp alleges that it refused to even to participate in H&H's defense until two-
     and-a-half years after H&H tendered claims to InsCorp.  *See* Complaint ¶ 20 (alleging that H&H
27   tendered claims on January 31, 2005 and that InsCorp did not agree to participate in H&H's
     defense until June 1, 2007).

28

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-10-

BRITANNIA'S MPA IN OPPOSITION  OF
APPLICATION  FOR DEFAULT JUDGMENT;
CASE NO. CV 07-05214 WHA

1  declaration is InsCorp's request that its insurance policies with H&H be reformed to include an

2  EIFS exclusion on the alleged ground of mutual mistake.  *See* Complaint ¶¶ 17, 24-31.

3        Written contracts are presumed to correctly express the parties' intentions.  *See, e.g.*,

4  *Appalachian Ins. Co. v. McDonnell Douglas Corp.*, 214 Cal. App. 3d 1, 19 (1989).  As the party

5  seeking reformation, InsCorp must prove the existence of a <u>mutual</u> mistake by clear and

6  convincing evidence.  *See West. Sav. & Loan Ass'n v. Heflin Corp.*, 797 F. Supp. 790, 792 (N.D.

7  Cal. 1992) (citing *Shupe v. Nelson*, 254 Cal. App. 2d 693 (1967)).

8        Here, InsCorp purports to offer evidence that it itself intended for there to be an EIFS

9  exclusion in its policies with H&H.  Yet InsCorp offers absolutely no evidence that this mistake

10  was mutual – *i.e.*, that it was shared by H&H.  Indeed, InsCorp's Complaint alleges that H&H

11  tendered the claims in the Britannia Arbitration to InsCorp.  *See* Complaint ¶ 20.  Since the

12  claims against H&H relate to H&H's installation of EIFS, InsCorp's allegation is inconsistent

13  with its InsCorp's theory that H&H intended for there to be an EIFS exclusion in the applicable

14  policies.  Moreover, it makes little sense for an EIFS subcontractor to knowingly agree to renew

15  an insurance policy where the EIFS subcontractor knew that the renewed policy would contain an

16  EIFS exclusion – *i.e.*, an exclusion that would purport to eviscerate insurance protection for the

17  subcontractor's work.

18        Thus, at the very least, this Court should conclude that there are "serious doubts" as to the

19  merits of InsCorp's claims.  *Eitel*, 782 F.2d at 1472.

20        **2.      Britannia Has Meritorious Defenses To InsCorp's Claims.**

21        In addition to the defense that there was no "meeting of the minds" required for

22  establishing a mutual mistake, Britannia has numerous other defenses to InsCorp's claims, each

23  of which also raises serious doubts as to the merits of InsCorp's substantive claims.  These

24  defenses both are discussed below and are stated in Britannia's proposed Answer to the InsCorp's

25  Complaint, which is attached as Exhibit B to the Lode Declaration.

26        **a.      The Alleged "Mistake" Was The Result Of InsCorp's**
         **Negligence.**

27

28  "Since reformation is an equitable remedy, it may be denied if the mistake was the result

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-11-

BRITANNIA'S MPA IN OPPOSITION  OF
APPLICATION  FOR DEFAULT JUDGMENT;
CASE NO. CV 07-05214 WHA

1   of 'the want of that degree of care and diligence which would be exercised by persons of

2   reasonable prudence under the circumstances.'"  *Appalachian Ins. Co. v. McDonnell Douglas*

3   *Corp.*, 214 Cal. App. 3d 1, 19 (1989).  Here, InsCorp seeks to "explain" the purported mistake by

4   alleging that "[t]hrough error and oversight it appears that the mandatory EIFS endorsement was

5   not user selected . . . ."  Complaint ¶ 17.  InsCorp's negligence as to the alleged mistake provides

6   Britannia with a meritorious defense.  *Appalachian Ins.*, 214 Cal. App. 3d at 19.

7          **b.     InsCorp Cannot Provide A Sufficient Explanation For The
               Alleged "Mistake."**
8

9          A party's burden of explaining the alleged mistake is "much heavier" where, as here, that

10  party itself caused the alleged mistake.  *See id.* at 22 n.10 (quoting *Roller v. Cal. Pac. Title Ins.*

11  *Co.*, 92 Cal. App. 2d 149, 154 (1949)).  Since InsCorp admits that it is responsible for the alleged

12  mistake, *see* Complaint ¶ 17, Britannia also has the meritorious defense that InsCorp fails to

13  provide a satisfactory explanation for the alleged mistake contained within an insurance policy

14  that InsCorp itself drafted.  *Appalachian Ins.*, 214 Cal. App. at 20.

15         **c.     InsCorp's Action Is Barred By Laches.**

16         Britannia also has the meritorious defense of laches.  Laches may be shown where, as

17  here, a defendant suffered prejudice as a result of the plaintiff's unreasonable delay in bringing

18  suit.  *See, e.g.*, *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002).

19  Here, InsCorp delayed in filing this reformation action for almost <u>eight years</u> after the effective

20  date of the first policy it seeks to reform, and for almost <u>three years</u> after H&H tendered the

21  Britannia claims to InsCorp.  *See* Complaint ¶¶ 10-11, 20.

22         InsCorp's delays in filing this lawsuit therefore prejudiced Britannia in Britannia's role as

23  Concrete Shell's assignee.  After the effective date of the policies – and apparently after H&H

24  tendered the claims to Britannia – H&H went out of business and its former principal was

25  involved in a serious automobile accident, which rendered him severely disabled.  *See*

26  Henningsen Decl. ¶ 6.  InsCorp's own counsel stated that he did not expect H&H to even respond

27  to InsCorp's Complaint, much less to participate in these proceedings.  *See id.* ¶ 6.

28         As noted above, InsCorp bears the burden of establishing, by clear and convincing

Folger Levin &
Kahn llp
Attorneys At Law

-12-

BRITANNIA'S MPA IN OPPOSITION  OF
APPLICATION  FOR DEFAULT JUDGMENT;
CASE NO. CV 07-05214 WHA

1   evidence, that the alleged mistake was shared both by InsCorp and by H&H.  *West. Sav. & Loan*

2   *Ass'n v. Heflin Corp.*, 797 F. Supp. 790, 792 (N.D. Cal. 1992).  InsCorp's delay in filing this

3   action has prejudiced Britannia by hindering it in its ability to obtain evidence that would

4   establish, among other things, that the alleged mistake was <u>not</u> shared by H&H.

5               **d.      Reformation Would Prejudice Britannia.**

6           An additional meritorious defense is that InsCorp's request for would prejudice the rights

7   of third parties, including Britannia.  InsCorp seeks reformation under California law, *see*

8   Complaint ¶ 16, and the California Court of Appeal has held that a request for reformation may

9   be denied where, as here, it was made years after the policy was executed and only after the

10  prejudice to third parties was apparent:

11          We agree with the trial court that where the parties attempt
            reformation years after the policy was executed and only after the
12          adverse impact to third parties was apparent, such prejudice should
            be considered in determining the initial intent of the contracting
13          parties.  Under such circumstances, although they may eventually
            achieve reformation, they are not free merely to decide between
14          themselves that something other than their clear written provision
            was their initial intent.  A court of equity must look at the whole
15          picture in deciding if there was a mutual mistake that permits
            reformation.

16

17  *Schools Excess Liability Fund v. Westchester Fire Ins. Co.*, 117 Cal. App. 4th 1275, 1284 (2004).

18          The policies that InsCorp seeks to reform in this action were issued over seven and eight

19  years ago – in October 1999 and October 2000.  *See* Complaint ¶¶ 29-30.  Moreover, InsCorp's

20  request for reformation was not made until well after the commencement of the Britannia

21  Arbitration that implicated those policies.  Furthermore, InsCorp fails to allege facts sufficient to

22  show that it sought reformation in a timely manner after purportedly discovering the alleged

23  mistake – InsCorp alleges that it only that it discovered the alleged mistake sometime since

24  January 2005 – when "H&H tendered tendered the Britannia claims to InsCorp."  *Id.* ¶ 27. As in

25  *Schools Excess Liability Fund*, the request for reformation at issue here was not made "until years

26  after the policy was executed and only after the adverse impact to third parties was apparent."

27  *Schools Excess Liability Fund*, 117 Cal. App. 4th at 1284.  Since InsCorp's belated and unilateral

28  request would for reformation would adversely impact Britannia, this Court should conclude that

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-13-

BRITANNIA'S MPA IN OPPOSITION  OF
APPLICATION  FOR DEFAULT JUDGMENT;
CASE NO. CV 07-05214 WHA

1    Britannia has a meritorious defense that raises "serious doubts" as to the merits of InsCorp's

2    substantive claims.

3    **C.    InsCorp's Complaint Fails To Allege Facts Sufficient To Establish InsCorp's**
     **Substantive Claims.**

4

5    The third *Eitel* factor – the sufficiency of the complaint – further favors deciding this case

6    on the merits.  InsCorp alleges no <u>facts</u> sufficient to establish that the alleged "mutual mistake"

7    actually was "mutual" – *i.e.*, that it was shared by H&H.  Instead, InsCorp's Complaint contains

8    only boilerplate, conclusory allegations, made on information and belief, as to whether H&H

9    shared in the alleged "mistake."  *See, e.g.*, Complaint ¶¶ 26, 31.

10    As the Supreme Court has made clear, "a plaintiff's obligation to provide the 'grounds'  of

11    his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation

12    of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, __ U.S. __, 127 S.

13    Ct. 1955, 1964-65 (2007) (citation omitted).  Since InsCorp provides only "labels and

14    conclusions, and a formulaic recitation" that the alleged "mistake" was shared by H&H, this

15    Court should conclude that the third *Eitel* factor favors deciding this case on the merits.

16    Moreover, even if InsCorp had alleged facts sufficient to establish that it is entitled to

17    reformation, which it has not, it has alleged no facts sufficient to establish that it is entitled to the

18    other relief that it seeks – *i.e.*, that it has absolutely no duty to defend or indemnify H&H for the

19    claims raised in the Britannia Arbitration.

20    **D.    The Sum At Stake Favors Deciding This Case On The Merits.**

21    InsCorp fails to address the fourth *Eitel* factor – the sum of money at stake in the action –

22    which also favors denying InsCorp's application.  *Eitel*, 782 F.2d at 1471.  In evaluating this

23    factor, the Court is to take into account the amount of money at stake in relation to the seriousness

24    of the defendants' actions.  *See, e.g.*, *Gen. Employees Trust Fund v. Victory Build. Maintenance,*

25    *Inc.*, 2007 WL 1288393, at *4 (N.D. Cal. 2007).  There is "a strong public policy, supported by

26    concepts of fundamental fairness, in favor of trial on the merits, particularly when the monetary

27    damages sought are substantial."  *Swink v. City of Pagedale*, 810 F.2d 791, 792 n.2 (8th Cir.

28    1987).

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-14-

BRITANNIA'S MPA IN OPPOSITION  OF
APPLICATION  FOR DEFAULT JUDGMENT;
CASE NO. CV 07-05214 WHA

1    Here, H&H's potential liability to Britannia could exceed $1,000,000, and H&H's

2    InsCorp policy limits were $1,000,000 per occurrence and $2,000,000 aggregate.  InsCorp itself

3    recognizes that significant sums are involved in this dispute because InsCorp has invoked the

4    diversity jurisdiction of this Court – thereby conceding that at least $75,000 is at stake.  *See*

5    Complaint ¶ 4.

6    Moreover, neither Britannia nor Concrete Shell have caused any harm to InsCorp –

7    Britannia merely is seeking recovery for defective construction, for which InsCorp's insured is

8    responsible.  The "amount at stake" *Eitel* factor therefore favors deciding this case on the merits.

9    **E.    There Are Disputes As To Material Facts.**

10   InsCorp fails to address the fifth *Eitel* factor – the possibility of disputes as to material

11   facts – which also favors deciding this case on the merits.  *See Eitel* 782 F.2d at 1481-82.  As

12   shown above, InsCorp must establish, by clear and convincing evidence, that the alleged "mutual

13   mistake" was shared by H&H.  *See West. Sav. & Loan Ass'n v. Heflin Corp.*, 797 F. Supp. 790,

14   792 (N.D. Cal. 1992) (citing *Shupe v. Nelson*, 254 Cal. App. 2d 693 (1967)).  Yet InsCorp has

15   alleged no facts to support its view that H&H shared in the alleged "mistake".  This Court should

16   accordingly conclude that there will be disputes as to material facts.

17   **F.    Any "Neglect" Was Excusable.**

18   The sixth *Eitel*  factor – whether the default was due to excusable neglect – also favors

19   deciding this case on the merits.  *See* Eitel, 782 F.2d 1470.  Britannia and its counsel were

20   unaware that InsCorp had filed an action against Concrete Shell – much less that a default was

21   entered – until *after* Britannia agreed to a settlement under which it received an assignment of

22   Concrete Shell's rights and claims against H&H and H&H's insurers, including InsCorp.  *See*

23   Lode Decl. ¶ 5.  The Assignment Agreement were not finalized until April 30, 2008.  *See id.* ¶ 7

24   & Ex. A.  Since Britannia could not have responded to InsCorp's Complaint until after it received

25   an assignment of Concrete Shell's rights and claims, the default was not the result of any neglect

26   on the part of Britannia.

27   Moreover, any "neglect" on the part of Concrete Shell was excusable.  Concrete Shell is a

28   dissolved corporation and its former principal and agent for service of process is approximately

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-15-

BRITANNIA'S MPA IN OPPOSITION  OF
APPLICATION  FOR DEFAULT JUDGMENT;
CASE NO. CV 07-05214 WHA

1   75 years old and retired.   *See* Henningsen Decl. ¶ 2.  Two different law firms and insurance

2   companies were involved in Concrete Shell's defense in the Britannia Arbitration.  *See id.* ¶ 10;

3   Jones Decl. ¶ 4.  While the parties to the Britannia Arbitration were involved in settlement

4   discussions, one of Concrete Shell's attorneys referred the InsCorp Complaint to Concrete Shell's

5   coverage counsel with the understanding that coverage counsel would respond to InsCorp's

6   Complaint.  *See* Jones Decl. ¶ 4.  Another of Concrete Shell's attorneys contacted InsCorp's

7   counsel and requested that InsCorp refrain from seeking a default on the ground that Concrete

8   Shell intended to answer the Complaint and protect its interests.  *See* Henningsen Decl. ¶ 7.

9   Concrete Shell's counsel then reiterated this request in writing.  *See id.* ¶ 8.  InsCorp did not

10  deny, or respond, to Concrete Shell's counsel's request.  *See id.* ¶ 9.  Concrete Shell's counsel

11  accordingly assumed that InsCorp would not pursue a default.  *See id.* ¶ 9.

12          Significantly, InsCorp fails to mention its communications with Concrete Shell's counsel

13  in any of its pleadings.[5]  This Court should determine that the pendency of settlement

14  negotiations, as well InsCorp's failure to notify Concrete Shell's counsel of InsCorp's intent to

15  seek a default, render any "neglect" on the part of Concrete Shell excusable.  Indeed, in *Eitel*, the

16  Ninth Circuit referenced prior settlement negotiations in finding excusable neglect as to a failure

17  to answer.  *See Eitel*, 782 F.2d at 142.  Moreover, the Third Circuit has vacated a default

18  judgment where, as here, a default was entered without notice to the defendant's attorney.  In

19  *Hutton v. Fisher*, 359 F.2d 913 (3d Cir. 1966), the plaintiff's senior attorney knew the defendant

20  had retained an attorney and had also acquiesced in the defense attorney's request for more time

21  to answer.  *See id.* at 915. Two months later, a more junior attorney for the plaintiff requested and

22  received an order of default without notifying the defendant's attorney.  *See id.*  Reversing the

23  District Court, the Third Circuit set aside the default.  *See id.*  Because Concrete Shell's counsel

24  expressly requested that InsCorp refrain from seeking a default, and because InsCorp acquiesced

25

26          [5]  In alleging that Concrete Shell has not appeared in this action, InsCorp ignores that
    "informal contacts between the parties [may constitute an 'appearance'] when the party in default
27  has thereby demonstrated a clear purpose to defend the suit."  *In re Roxford Foods, Inc.*, 12 F.3d
    875, 879 (9th Cir. 1993) (internal quotation marks and citation omitted).

28

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-16-

BRITANNIA'S MPA IN OPPOSITION  OF
APPLICATION  FOR DEFAULT JUDGMENT;
CASE NO. CV 07-05214 WHA

1    in Concrete Shell's request, this Court should rule that any neglect on the part of Concrete Shell

2    was excusable.  *See id.*

3        **G.    The Strong Policy Favoring Decisions On The Merits Supports Denying
            InsCorp's Application.**

4

5        The seventh and final *Eitel* factor is "the strong policy underlying the Federal Rules of

6    Civil Procedure favoring decisions on the merits."  *Eitel*, 782 F.2d at 1472.  This factor favors

7    allowing a decision on the merits here.

8                              **IV.    CONCLUSION**

9        For the foregoing reasons, this Court should deny InsCorp's application for a default

10   judgment.

11   Dated: May 1, 2008                          FOLGER LEVIN & KAHN LLP

12                                               /s/ Eric M. Lode

13                                               Eric M. Lode
                                                 Attorneys for Third-Party Assignee
14                                               Britannia Pointe Grand Limited Partnership

15

16   17035\3008\599737.2

17

18

19

20

21

22

23

24

25

26

27

28