## DECLARATION OF DAVID S. HENNINGSEN

I, David S. Henningsen, declare as follows:

1. I am a partner at Robinson & Wood, counsel for Concrete Shell Structures, Inc. ("Concrete Shell") in the American Arbitration Association proceeding *Britannia Pointe Grand Limited Partnership v. Concrete Shell Structures, Inc.* (AAA Case No. 74 110 M 00660 04 BRSH) (the "Britannia Arbitration"). I have personal knowledge of the following facts and, if called as a witness, could and would testify competently thereto.

2. Concrete Shell is a dissolved corporation. Brian Cameron, Concrete Shell's former president, is approximately 75 years old and retired.

3. Insurance Corporation of New York ("InsCorp") participated in the defense of H&H Plastering, Inc. ("H&H") in the Britannia Arbitration. The attorneys appointed by InsCorp to participate in H&H's defense were aware that I represented Concrete Shell in the Britannia Arbitration.

4. I first became aware of the proceeding entitled *Insurance Corporation of New York v. H&H Plastering Inc.; Concrete Shell Structures, Inc.; and Does 1 through 10* (N.D. Cal. Case No. 07-05214 WHA) (the "InsCorp Action") on or about October 26, 2007, when the parties to the Britannia Arbitration were engaged in settlement discussions.

5. InsCorp did not serve me with a copy of the Complaint it filed in the InsCorp action. InsCorp has not served me with copies of any pleadings that it has filed in the InsCorp action.

6. I discussed InsCorp's Complaint in the InsCorp Action with InsCorp's counsel, Norman Roger, on or about October 26, 2007. Mr. Roger stated that InsCorp's insured, H&H was no longer in business. Mr. Roger further stated that H&H's former principal had been involved in a serious car accident that had rendered him severely disabled, and that it was unlikely that H&H would respond to InsCorp's Complaint.

7. During that same conversation with Mr. Roger, I requested that InsCorp refrain from seeking a default in the InsCorp action. I made it clear that Concrete Shell intended to answer and protect its interests, but that the process for doing so needed to be worked out.

8. By a facsimile to Mr. Roger, dated October 26, 2008, I reiterated my request that InsCorp refrain from seeking a default at that time. A true and correct copy of my October 26, 2008 facsimile to Mr. Roger is attached hereto as Exhibit A.

9. Neither Mr. Roger nor any of InsCorp's other attorneys denied, or responded to, my request that InsCorp refrain from seeking a default. I assumed that InsCorp would not pursue a default.

10. Concrete Shell's defense in the Britannia Arbitration was handled by two different law firms, each of which were appointed by two different insurers of Concrete Shell's: (1) my law firm, Robinson & Wood; and (2) Craig S. Jones' law firm, Archer Norris. My firm, Robinson & Wood, was appointed by Travelers, while Archer Norris was appointed by StarNet Insurance Company ("StarNet").

11. StarNet appointed coverage counsel for Concrete Shell regarding the claims raised by Britannia Pointe Grand Limited Partnership ("Britannia") in the Britannia Arbitration, while Travelers did not appoint such coverage counsel. Since StarNet had appointed coverage counsel, I referred the InsCorp Complaint to Craig S. Jones, my co-counsel in the Britannia Arbitration, with the expectation that the coverage counsel appointed by StarNet would respond to InsCorp's Complaint on behalf of Concrete Shell.

12. On or around January 17, 2008, every party to the Britannia Arbitration -- with the exception of H&H -- agreed to settle their respective claims against each other related to that proceeding. As part of that settlement, Concrete Shell agreed to assign to Britannia all of Concrete Shell's rights and claims against H&H and H&H's insurers that are related to the Britannia Arbitration, including Concrete Shell's additional insured rights.

13. I did not become aware that the Court entered defaults against Concrete Shell and H&H in the InsCorp Action until on or about January 29, 2008, when counsel for Britannia notified me that such defaults had been entered.

14. Upon becoming aware of the defaults, and as part of the ongoing settlement negotiations, Concrete Shell's attorneys and Britannia's attorney discussed how to address the default entered against Concrete Shell. Britannia ultimately agreed to seek relief from the Court pursuant to an assignment from Concrete Shell.

15. The settlement agreement between the settling parties to the Britannia Arbitration requires the negotiation of, and approval by, numerous parties, insurance companies, and law firms. The settlement agreement between the settling parties to the Britannia Arbitration still is not finalized. The assignment agreement pursuant to which Concrete Shell agreed to assign to Britannia all of Concrete Shell's rights and claims against H&H and H&H's insurers that are related to the Britannia Arbitration, including Concrete Shell's additional insured rights, was not finalized until April 30, 2008.

16. On or about April 24, 2008, when it appeared that the process of drafting and finalizing the settlement agreement and the assignment agreement was nearing completion, I wrote to Mr. Roger, counsel for InsCorp, to request that InsCorp stipulate to the withdrawal of the default entered against Concrete Shell in the InsCorp Action. Mr. Roger has not responded to my April 24, 2008 correspondence. A true and correct copy of my April 24, 2008 correspondence to Mr. Roger is attached hereto as Exhibit B.

I, David S. Henningsen, declare under penalty of perjury of the laws of the United States and the State of California that the foregoing is true and correct.

Executed this 30 day of April, 2008 at San Jose, California.

David S. Henningsen