1  FOLGER LEVIN & KAHN LLP
   Wesley D. Hurst (CSB No. 127564, whurst@flk.com)
2  Eric M. Lode (CSB No. 209129, elode@flk.com)
   Embarcadero Center West
3  275 Battery Street, 23rd Floor
   San Francisco, CA  94111
4  Telephone: (415) 986-2800
   Facsimile: (415) 986-2827
5
   Attorneys for Third-Party Assignee
6  Britannia Pointe Grand Limited Partnership

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                       SAN FRANCISCO DIVISION

11

12 | INSURANCE CORPORATION OF NEW YORK, | Case No. CV 07-05214 WHA
13 |                                     |
14 |   Plaintiff,                        | **THIRD-PARTY ASSIGNEE BRITANNIA POINTE GRAND LIMITED PARTNERSHIP'S MEMORANDUM OF POINTS AND AUTHORITITES IN SUPPORT OF ITS MOTION TO SET ASIDE THE DEFAULT ENTERED AGAINST CONCRETE SHELL STRUCTURES, INC.**
15 |   v.                                |
16 | H&H PLASTERING, INC.; CONCRETE SHELL STRUCTURES, INC.; and DOES 1 though 10, inclusive, |
17 |                                     |
18 |   Defendants.                       | Date:       June 5, 2008
   |                                     | Time:       8:00 a.m.
   |                                     | Courtroom:  9
19 |                                     | Judge:      Hon. William Alsup

20

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................................... 1

II. BACKGROUND ...................................................................................................................... 4

    A. InsCorp's Insured, H&H, Is Responsible To Britannia For Defective Construction ............................................................................................................ 4

    B. InsCorp Refused To Participate In H&H's Defense In The Britannia Arbitration For Approximately Two-And-A-Half Years........................................ 4

    C. InsCorp Filed This Action Seeking To Reform Its Insurance Policies With H&H To Include An EIFS Exclusion That InsCorp Believes Would Eliminate Its Indemnity Obligations As To Claims Raised In The Britannia Arbitration. .......................................................................................... 5

    D. InsCorp Did Not Serve Any Of Its Pleadings On Concrete Shell's Counsel, Apparently Serving Only Concrete Shell's Former Principal, Who Is Approximately 75 Years Old And Retired.............................................. 5

    E. Concrete Shell's Counsel Expressly Requested That InsCorp Refrain From Seeking A Default. ................................................................................................. 6

    F. Concrete Shell's Defense Counsel In The Britannia Arbitration Referred InsCorp's Complaint To Concrete Shell's Coverage Counsel, With The Understanding That Coverage Counsel Would Respond To The Complaint ......... 6

    G. Less Than One Week After Britannia Agreed To Settle With Every Party To The Britannia Arbitration Except For H&H, InsCorp Moved For An Entry Of Default Without Notifying Counsel ...................................................... 7

    H. Britannia Has Been Formally Assigned Concrete Shell's Rights And Claims Against InsCorp, And Seeks To Set Aside The Default Entered Against Concrete Shell........................................................................................... 7

    I. InsCorp Moved For A Default Judgment, Which Is Scheduled To Be Heard On May 22, 2008 ......................................................................................... 8

III. ARGUMENT ............................................................................................................................ 9

    A. The Default Should Be Set Aside, Because It Did Not Result From Britannia's Or Concrete Shell's Culpable Conduct ................................................ 9

        1. The Default Should Be Set Aside, Because Britannia Was Unaware That InsCorp Filed An Action Against Concrete Shell Until After The Default Was Entered .......................................................................... 10

        2. The Default Should Be Set Aside, Because It Did Not Result From Culpable Conduct On The Part Of Concrete Shell ................................... 10

    B. The Default Should Be Set Aside, Because Britannia Has A Meritorious Defense ................................................................................................................ 11

        1. There Was No "Meeting Of The Minds" As To The Alleged "Mistake." ................................................................................................. 11

        2. The Alleged "Mistake" Was The Result Of InsCorp's Negligence.......... 12

        3. InsCorp Cannot Provide A Sufficient Explanation For The Alleged "Mistake." ................................................................................................. 13

**TABLE OF CONTENTS**
**(continued)**

| | | | Page |
|---|---|---|---|
| | 4. | InsCorp's Action Is Barred By Laches | 13 |
| | 5. | Reformation Would Prejudice Britannia | 13 |
| C. | | The Default Should Be Set Aside, Because Doing So Would Result In No Prejudice To InsCorp | 14 |
| D. | | The Default Should Be Set Aside, Because Significant Sums Are At Stake | 15 |
| IV. | CONCLUSION | | 15 |

# TABLE OF AUTHORITIES

**Page**

### CASES

*Appalachian Ins. Co. v. McDonnell Douglas Corp.*,
  214 Cal. App. 3d 1 (1989) ................................................................................. 11, 12, 13

*Falk v. Allen*,
  739 F.2d 461 (9th Cir. 1984) ....................................................................................... 14

*Hutton v. Fisher*,
  359 F.2d 913 (3d Cir. 1966) ........................................................................................ 11

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
  304 F.3d 829 (9th Cir. 2002) ....................................................................................... 13

*Mendoza v. Wight Vineyard Mgmt.*,
  783 F.2d 941 (9th Cir. 1986) ..................................................................................... 3, 9

*Roller v. Cal. Pac. Title Ins. Co.*,
  92 Cal. App. 2d 149 (1949) ......................................................................................... 13

*Schools Excess Liability Fund v. Westchester Fire Ins. Co.*,
  117 Cal. App. 4th 1275 (2004) .................................................................................... 14

*Shupe v. Nelson*,
  254 Cal. App. 2d 693 (1967) ....................................................................................... 12

*Swink v. City of Pagedale*,
  810 F.2d 791 (8th Cir. 1987) ............................................................................... 3, 9, 15

*TCI Life Ins. Plan v. Knoebber*,
  244 F.3d 691 (9th Cir. 2001) ................................................................................ passim

*Thompson v. Am. Home Assur. Co.*,
  95 F.3d 429 (6th Cir. 1996) ......................................................................................... 15

*West. Sav. & Loan Ass'n v. Heflin Corp.*,
  797 F. Supp. 790 (N.D. Cal. 1992 ................................................................... 3, 12, 13

### RULES

Fed. R. Civ. Proc. 55 ............................................................................................................ 9

As part of the settlement of a related arbitration, Defendant Concrete Shell Structures, Inc. ("Concrete Shell") has assigned to Britannia Pointe Grand Limited Partnership ("Britannia") all of Concrete Shell's rights and claims against Defendant H & H Plastering, Inc. ("H&H") and H&H's insurers – including Concrete Shell's rights and claims against Plaintiff Insurance Corporation of New York's ("InsCorp"). Third-Party Assignee Britannia now respectfully submits this Memorandum of Points and Authorities in Support of its Motion to Set Aside the Default entered against Defendant Concrete Shell.

## I.   INTRODUCTION

Plaintiff InsCorp brought this action in an attempt to reform certain of its insurance policies with Defendant H&H, so that such policies would contain an exclusion that InsCorp believes would eliminate its indemnity obligations for claims raised by Third-Party Assignee Britannia and Defendant Concrete Shell in a related arbitration (the "Britannia Arbitration").

Concrete Shell is a dissolved corporation, and its former principal is approximately 75 years old and retired. Although InsCorp was aware of the identity of Concrete Shell's counsel in the Britannia Arbitration, InsCorp did not serve Concrete Shell's counsel with even a courtesy copy of InsCorp's Complaint. Upon learning of this action, Concrete Shell's counsel contacted counsel for InsCorp and expressly requested that InsCorp refrain from seeking a default on the grounds that Concrete Shell intended to respond to InsCorp's Complaint and protect its interests. This request was then reiterated in writing. InsCorp failed to mention its communications with Concrete Shell's counsel in its request for entry of default. InsCorp also has not served Concrete Shell's counsel with even courtesy copies of any of InsCorp's pleadings in this action.

The Britannia Arbitration involved defective construction at commercial properties located in South San Francisco. Britannia, the owner of the properties, contracted with Concrete Shell, a general contractor, to construct a building for the use of a biopharmaceutical company tenant of Britannia's. Concrete Shell in turn subcontracted with H&H to, among other things, install caulk joints and exterior installation finishing system ("EIFS") on the building's exterior. The construction was defective and, consistent with the parties' contracts, Britannia initiated an American Arbitration Association proceeding against Concrete Shell. Concrete Shell, in turn,

1  cross-claimed for indemnity against various subcontractors, including H&H.

2        H&H was insured by InsCorp.  H&H is no longer in business, and its former principal was
3  involved in serious car accident that left him severely disabled.

4        After refusing to defend H&H in the Britannia Arbitration for almost two-and-a-half
5  years, InsCorp finally agreed to defend H&H under a reservation of rights.  H&H was then
6  represented in the Britannia Arbitration by the law firm of McCarthy & McCarthy.

7        While the parties to the Britannia Arbitration were engaged in settlement discussions,
8  another InsCorp law firm, Roger Scott & Helmer LLP, filed this reformation action against H&H
9  and Concrete Shell.  InsCorp presumably named Concrete Shell as a Defendant because Concrete
10  Shell has additional insured rights under H&H's InsCorp insurance policies.  InsCorp did not
11  name Britannia as a Defendant in this action.

12        In January 2008, all the parties to the Britannia Arbitration – with the exception of H&H –
13  agreed to settle their respective claims against each other in that proceeding.  All potential claims
14  against H&H and H&H insurers (including InsCorp) were carved out of the settlement.  As part
15  of the settlement, Concrete Shell agreed to assign to Britannia all of Concrete Shell's rights and
16  claims against H&H and H&H's insurers – including its additional insured rights against InsCorp.

17        Soon after all the parties except for H&H agreed to settle the Britannia Arbitration,
18  InsCorp sought, and received, entries of default in this Court against both Concrete Shell and
19  H&H.  In doing so, InsCorp did <u>not</u> provide counsel for either Concrete Shell or Britannia with
20  notice of InsCorp's request for an entry of default.  Indeed, InsCorp has not served counsel for
21  either Concrete Shell or Britannia with even courtesy copies of any of InsCorp's pleadings in this
22  action.

23        The assignment agreement pursuant to which Concrete Shell agreed to assign to Britannia
24  all of Concrete Shell's rights and claims against H&H and H&H's insurers – including Concrete
25  Shell's additional insured rights against InsCorp – was not finalized until April 30, 2008.  Now
26  that the assignment agreement has been finalized, Britannia intends to pursue its rights and
27  remedies against H&H and H&H's insurers, including InsCorp.  Britannia therefore respectfully
28  moves this Court set aside the default that was entered against Concrete Shell so that Britannia, as

Concrete Shell's assignee, can pursue its rights against InsCorp.

Courts have a strong policy in favor of resolving disputes on the merits, and this Court has especially broad discretion to set aside an entry of default. *See, e.g.*, *Mendoza v. Wight Vineyard Mgmt.*, 783 F.2d 941, 945-46 (9th Cir. 1986). Britannia's Motion to Set Aside the Default should be granted for four reasons:

<u>First</u>, the default did not result from culpable conduct on the part of Britannia or Concrete Shell. *See TCI Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001). Britannia was not even aware that InsCorp filed an action against Concrete Shell until after the default was entered, and Concrete Shell's counsel expressly requested that InsCorp refrain from seeking a default. InsCorp nevertheless sought a default without denying Concrete Shell's request and without even providing Concrete Shell's counsel with notice of InsCorp's request that a default be entered.

<u>Second</u>, Britannia, as Concrete Shell's assignee, has a meritorious defense to InsCorp's Complaint. *See TCI Life Ins.*, 244 F.3d at 696. InsCorp's entire action is based on its theory that its policies with H&H should be reformed, on the alleged ground of mutual mistake, to include an EIFS exclusion that InsCorp failed to include in the policies. InsCorp has the burden of proving the alleged mutual mistake by clear and convincing evidence. *West. Sav. & Loan Ass'n v. Heflin Corp.*, 797 F. Supp. 790, 792 (N.D. Cal. 1992). Britannia has numerous meritorious defenses to InsCorp's request for reformation, including defenses that: (a) the alleged mistake was not "mutual," (b) the alleged mistake resulted from InsCorp's own negligence, (c) InsCorp cannot provide a satisfactory explanation for the alleged mistake, (d) InsCorp's action is barred by the doctrine of laches, and (e) InsCorp's belated request for reformation would prejudice the rights of third parties, including Britannia.

<u>Third</u>, having to litigate this action on the merits would not prejudice InsCorp. *TCI*, 244 F.3d at 701.

<u>Fourth</u>, substantial sums are involved in this dispute. *Swink v. City of Pagedale*, 810 F.2d 791, 792 n.2 (8th Cir. 1987).

## II.     BACKGROUND

**A.     InsCorp's Insured, H&H, Is Responsible To Britannia For Defective Construction.**

InsCorp's insured, H&H, defectively installed caulk joints and EIFS at an office building owned by Britannia located at 230 East Grand Avenue, South San Francisco, California ("Building 230"). When defectively installed, caulk joints and EIFS can lead to water intrusion and resultant damage, as they did here.

Britannia became aware of construction defects at Building 230 – including defective installation of caulk joints and EIFS that led to resultant damage – and, consistent with its construction contracts, filed an American Arbitration Association Arbitration Demand against the general contractor, Concrete Shell (American Arbitration Association Case Number No. 74 110 M 00660 04 BRSH). *See* Declaration of Eric M. Lode ("Lode Decl.") ¶¶ 1, 2.[1] Concrete Shell in turn filed cross-claims for indemnification against the subcontractors responsible for the construction, including H&H. *See id.* ¶ 2.

Britannia already has expended over $200,000 in repairing defects at Building 230, and has obtained a repair estimate of $1,700,000 to repair additional defects at that building. Most of these defects relate to construction for which H&H was responsible; H&H's potential liability to Britannia could exceed $1,000,000.

**B.     InsCorp Refused To Participate In H&H's Defense In The Britannia Arbitration For Approximately Two-And-A-Half Years.**

H&H was insured by InsCorp. *See* Complaint ¶ 6. H&H is no longer in business, and its former principal was involved in a serious automobile accident that rendered him severely disabled. *See* Declaration of David S. Henningsen ("Henningsen Decl.") ¶ 6.

InsCorp acknowledges that it refused to defend H&H in the Britannia Arbitration for

---

[1] Britannia also demanded arbitration against Concrete Shell over defective construction at three other buildings, each of which is also located in South San Francisco: 220 East Grand Avenue, 169 Harbor Way, and 170 Harbor Way. InsCorp alleges that H&H performed work only at Building 230.

approximately two-and-a-half years. *See* Complaint ¶ 20. When InsCorp finally agreed to defend H&H in June 2007, InsCorp did so under a reservation of rights. *See id.* H&H was then defended by the law firm of McCarthy & McCarthy. *See* Lode Decl. ¶ 2.

### C. InsCorp Filed This Action Seeking To Reform Its Insurance Policies With H&H To Include An EIFS Exclusion That InsCorp Believes Would Eliminate Its Indemnity Obligations As To Claims Raised In The Britannia Arbitration.

Another of InsCorp's law firms filed this action in October 2007,[2] seeking to reform certain of InsCorp's insurance policies with H&H so that such policies would include an EIFS exclusion that InsCorp failed to include in the policies that it actually issued. *See* Complaint ¶¶ 24-31. Based solely on its request for reformation, InsCorp further requests declarations that it had no duty to defend or indemnify H&H as to the claims raised by Britannia and/or Concrete Shell in the Britannia Arbitration. *See id.* ¶¶ 17, 33-43.

InsCorp named both H&H and Concrete Shell as Defendants in this action, presumably because Concrete Shell is listed as an additional insured in H&H's InsCorp policies. InsCorp did not name Britannia as a Defendant in this action. InsCorp also has not served on Britannia or Britannia's counsel either InsCorp's Complaint or any of InsCorp's further pleadings in this action. *See* Lode Decl. ¶ 3.

### D. InsCorp Did Not Serve Any Of Its Pleadings On Concrete Shell's Counsel, Apparently Serving Only Concrete Shell's Former Principal, Who Is Approximately 75 Years Old And Retired.

InsCorp did not serve its Complaint or any of its pleadings on Concrete Shell's counsel, even though InsCorp became aware of such counsel's identities through the Britannia Arbitration. *See* Henningsen Decl. ¶ 3, 5; Jones Decl. ¶ 3. InsCorp appears to have served its Complaint and further pleadings only on Brian Cameron, Concrete Shell's former principal and registered agent. Concrete Shell is a dissolved corporation; Mr. Cameron is approximately 75 years old and retired. *See* Henningsen Decl. ¶ 2.

---

[2] The instant action was filed by the law firm of Roger, Scott & Helmer LLP, which did not represent H&H in the Britannia Arbitration.

### E. Concrete Shell's Counsel Expressly Requested That InsCorp Refrain From Seeking A Default.

On or about October 26, 2007, while the parties to the Britannia Arbitration were involved in settlement discussions, Concrete Shell's counsel became aware of this action and discussed InsCorp's Complaint with InsCorp's counsel. *See id.* ¶ 4-6.

During that conversation, InsCorp's counsel stated that H&H was no longer in business, and that H&H's former principal had been involved in a serious automobile accident that left him severely disabled. *See id.* ¶ 6. As such, InsCorp's counsel stated that it was unlikely that H&H would respond to InsCorp's Complaint. *See id.*

During that same conversation, Concrete Shell's counsel expressly requested that InsCorp refrain from seeking a default, stating that Concrete Shell intended to answer InsCorp's Complaint and protect Concrete Shell's interests, but that the process for doing so needed to be resolved. *See id.* ¶ 7. That same day, Concrete Shell's counsel also requested in writing that InsCorp refrain from seeking a default. *See id.* ¶ 8. InsCorp did not deny, or respond to, Concrete Shell's counsel's request. *See id.* ¶ 9. Concrete Shell's counsel accordingly assumed that InsCorp would not pursue a default. *See id.*

InsCorp has not mentioned its communications with Concrete Shell's counsel in any of its pleadings in this action.

### F. Concrete Shell's Defense Counsel In The Britannia Arbitration Referred InsCorp's Complaint To Concrete Shell's Coverage Counsel, With The Understanding That Coverage Counsel Would Respond To The Complaint.

Concrete Shell's defense in the Britannia arbitration was handled by two different law firms that were appointed by two of Concrete Shell's different insurance companies. *See* Henningsen Decl. ¶ 10; Declaration of Craig S. Jones ("Jones Decl.") ¶ 4. One of these insurance companies retained coverage counsel for Concrete Shell, while the other did not. *See* Henningsen Decl. ¶ 11; Jones Decl. ¶ 5. On or about October 31, 2007, counsel for Concrete Shell in the Britannia Arbitration referred InsCorp's Complaint to a third-party claims adjuster and to Concrete Shell's coverage counsel, with the understanding that coverage counsel would respond to the Complaint. *See* Jones Decl. ¶ 5. On or about November 26, 2007, Concrete Shell's

counsel sent a follow-up email to the third-party claims adjuster. *See id.*

### G. Less Than One Week After Britannia Agreed To Settle With Every Party To The Britannia Arbitration Except For H&H, InsCorp Moved For An Entry Of Default Without Notifying Counsel.

On or about January 17, 2008, Britannia agreed to settle the Britannia Arbitration with every party to that arbitration except for H&H. *See* Lode Decl. ¶ 4; Henningsen Decl. ¶ 12; Jones Decl. ¶ 6. All claims against H&H and H&H insurers are carved out of the settlement. *See* Lode Decl. ¶ 4. As part of the settlement, Concrete Shell agreed to assign to Britannia all of Concrete Shell's rights and claims against H&H and H&H's insurers – including Concrete Shell's additional insured rights against InsCorp. *See* Lode Decl. ¶ 4; Henningsen Decl. ¶ 12; Jones Decl. ¶ 6.

Less than one week later, on January 22, 2008, InsCorp requested entries of default against both Concrete Shell and H&H. In doing so, InsCorp did not notify counsel for either Concrete Shell or Britannia of its request, despite the fact that InsCorp was aware of such counsel's identities. *See* Henningsen Decl. ¶ 5; Jones Decl. ¶ 3; Lode Decl. ¶ 3. In seeking entry of default against Concrete Shell, InsCorp further ignored Concrete Shell's counsel's request that InsCorp refrain from pursuing a default. InsCorp also has did not provide counsel for either Concrete Shell or Britannia with even a courtesy copy of either InsCorp's request. *See* Henningsen Decl. ¶ 5; Jones Decl. ¶ 3; Lode Decl. ¶ 3.

### H. Britannia Has Been Formally Assigned Concrete Shell's Rights And Claims Against InsCorp, And Seeks To Set Aside The Default Entered Against Concrete Shell.

Neither Britannia nor Concrete Shell's counsel were aware that a default had been entered against Concrete Shell until January 29, 2008, when the entry of default was discovered by Britannia's counsel. *See* Lode Decl. ¶ 5; Henningsen Decl. ¶ 13; Jones Decl. ¶ 7. Britannia's counsel promptly notified Concrete Shell's counsel that a default had been entered. *See* Lode Decl. ¶ 5.

After learning of the default, Concrete Shell's attorneys and Britannia's attorney discussed how to address the default that had been entered against Concrete Shell. *See* Hennignsen Decl. ¶ 15; Lode Decl. ¶ 6. Britannia ultimately agreed to seek relief from this Court pursuant to an

1   assignment from Concrete Shell.  *See* Lode Decl. ¶ 6; Hennignsen Decl. ¶ 15.

2   On April 24, 2008, Concrete Shell's counsel wrote to InsCorp's counsel requesting that
3   InsCorp stipulate to a withdrawal of the default entered against Concreter Shell because Concrete
4   Shell's attorneys were never informed by InsCorp of Concrete Shell's default and were not given
5   an opportunity to protect Concrete Shell's interests until after the default was entered.  *See*
6   Henningsen Decl. ¶ 16.  Counsel for InsCorp has not responded to Concrete Shell's counsel's
7   request.  *See id.*

8   The settlement agreement between the settling parties to the Britannia Arbitration requires
9   the approval of numerous parties and insurance companies, and still is not finalized.  *See*
10  Henningsen Decl. ¶ 15; Jones Decl. ¶ 9; Lode Decl. ¶ 9.

11  The assignment agreement pursuant to which Britannia was assigned Concrete Shell's
12  rights and claims against H&H and H&H's insurers (the "Assignment Agreement") was not
13  finalized until April 30, 2008.  *See* Lode Decl. ¶ 7; Henningsen Decl. ¶ 16; Jones Decl. 9.

14  Now that the Assignment Agreement have been finalized and Britannia has been formally
15  assigned Concrete Shell's rights and claims against H&H and H&H's insurers, Britannia intends
16  to pursue its rights against InsCorp.  If this Court sets aside the default, Britannia intends to
17  respond to InsCorp's Complaint with an Answer that will be substantially similar to the proposed
18  Answer attached as Exhibit B to the Lode Declaration.

19  **I.     InsCorp Moved For A Default Judgment, Which Is Scheduled To Be Heard On May 22, 2008.**

21  InsCorp moved for a default judgment on April 4, 2008 ("InsCorp's Motion"), without
22  noticing its motion for a hearing and without providing notice of that motion to counsel for either
23  Concrete Shell or Britannia.  *See* Henningsen Decl. ¶ 5; Lode Decl. ¶ 3.  This Court subsequently
24  scheduled a hearing on InsCorp's Motion for May 22, 2008.  *See* Clerk's Notice Scheduling
25  Motions and Initial Case Management Conference on Reassignment (Apr. 16, 2008).  Britannia is
26  filing an Opposition to InsCorp's Motion.[3]

---

27  [3] It is unclear if H&H will be able to respond to InsCorp's Application, since H&H is no longer in business and its former principal is severely disabled.  *See* Henningsen Decl. ¶ 6.

Since InsCorp's Motion will not be heard until May 22, 2008, this Court has <u>not</u> entered a default judgment against either H&H or Concrete Shell.

### III.   ARGUMENT

An entry of default may be set aside for good cause. *See* Fed. R. Civ. Proc. 55(c). This Court has discretion in ruling on a motion to set aside a default. *Mendoza v. Wight Vineyard Mgmt.*, 783 F.2d 941, 945 (9th Cir. 1986). This Court's "discretion is especially broad where, as here, it is entry of default that is being set aside, rather than a default judgment." *Id.*

In determining whether a default should be set aside, this Court examines the following factors: "whether the defendant's culpable conduct led to the default; whether the defendant has a meritorious defense; and whether reopening the default judgment would prejudice the plaintiff." *TCI Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001). Any doubts should be resolved in favor of setting aside the default, so that the dispute may be resolved on the merits. *Mendoza*, 783 F.2d at 945-46. Indeed, there is "a strong public policy, supported by concepts of fundamental fairness, in favor of trial on the merits, particularly when the monetary damages sought are substantial." *Swink v. City of Pagedale*, 810 F.2d 791, 792 n.2 (8th Cir. 1987). Because the relevant factors favor setting aside the default entered against Concrete Shell, this Court should grant Britannia's Motion.

**A.   The Default Should Be Set Aside, Because It Did Not Result From Britannia's Or Concrete Shell's Culpable Conduct.**

Neither Britannia nor Concrete Shell has been guilty of "culpable conduct" – *i.e.*, conduct engaged in with an "intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process." *TCI*, 244 F.3d at 697. Conduct generally is not "culpable" unless "there is <u>no</u> explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *Id.* at 698 (emphasis added). Since neither Britannia nor Concrete Shell engaged in culpable conduct that led to the default, the default should be set aside.

### 1. The Default Should Be Set Aside, Because Britannia Was Unaware That InsCorp Filed An Action Against Concrete Shell Until After The Default Was Entered.

Britannia and its counsel were unaware that InsCorp had filed an action against Concrete Shell – much less that a default was entered – until *after* Britannia agreed to a settlement under which it received an assignment of Concrete Shell's rights and claims against H&H and InsCorp. *See* Lode Decl. ¶¶ 4, 5. The assignment agreement was not finalized until April 30, 2008. *See id.* ¶ 7 & Ex. B. Since Britannia could not have responded to InsCorp's Complaint until after it received an assignment of Concrete Shell's rights and claims, the failure to respond could not have been the result of culpable conduct on the part of Britannia.

### 2. The Default Should Be Set Aside, Because It Did Not Result From Culpable Conduct On The Part Of Concrete Shell.

The default also was not the result of "culpable conduct" on the part of Concrete Shell. Concrete Shell is a dissolved corporation and its former president is 75 years old and retired. *See* Henningsen Decl. ¶ 2. Two different law firms and insurance companies were involved in Concrete Shell's defense in the Britannia Arbitration. *See id.* ¶ 11; Jones Decl. 5. While the parties to the Britannia Arbitration were involved in settlement discussions, one of Concrete Shell's attorneys referred the InsCorp Complaint to Concrete Shell's coverage counsel, with the understanding that coverage counsel would respond to InsCorp's Complaint. *See* Jones Decl. ¶ 5. Another of Concrete Shell's attorneys contacted InsCorp's counsel and requested that InsCorp refrain from seeking a default on the ground that Concrete Shell intended to respond to the Complaint and protect Concrete Shell's interests. *See* Henningsen Dec. ¶ 7. Concrete Shell's counsel then reiterated this request in writing. *See id.* ¶ 8. InsCorp did not deny, or otherwise respond, to Concrete Shell's counsel's request. *See id.* ¶ 9. Concrete Shell's counsel accordingly assumed that InsCorp would not pursue a default. *See id.*

As such, the default should be set aside because there is an "explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *TCI*, 244 F.3d at 698. Multiple parties and insurance companies were engaged in settlement discussions when

InsCorp filed its Complaint, and there appears to have been a misunderstanding among the various law firms associated with Concrete Shell. One of Concrete Shell's attorneys in the Britannia Arbitration referred the matter to coverage counsel with the understanding that coverage counsel would respond. Moreover, another of Concrete Shell's attorneys in the Britannia Arbitration expressly requested that InsCorp refrain from seeking a default. InsCorp then sought an entry of default without even providing notice to counsel for Concrete Shell.

The Third Circuit has vacated a default judgment based on very similar facts. In *Hutton v. Fisher*, 359 F.2d 913 (3d Cir. 1966), the plaintiff's senior attorney knew the defendant had retained an attorney and had also acquiesced in the defense attorney's request for more time to answer. *See id.* at 915. Two months later, a more junior attorney for the plaintiff requested and received an order of default without notifying the defendant's attorney. *See id.* Reversing the District Court, the Third Circuit set aside the default. *See id.* Because InsCorp similarly acquiesced in Concrete Shell's request that InsCorp refrain from seeking a default, this Court should set aside the entry of default here. *See id.*

### B. The Default Should Be Set Aside, Because Britannia Has A Meritorious Defense.

With its Complaint, InsCorp seeks declarations that it has no indemnity obligations as to the claims raised in the Britannia Arbitration. *See* Complaint ¶¶ 39-43. The only purported basis for such declarations is InsCorp's request that its insurance policies with H&H be reformed to include an EIFS exclusion on the ground of mutual mistake. *See* Complaint ¶¶17, 24-31. The default should be set aside because Britannia, as Concrete Shell's assignee, has numerous defenses to InsCorp's request. *TCI*, 244 F.3d at 696. The defenses are both discussed below and stated in the proposed Answer attached as Exhibit B to the Lode Declaration.

#### 1. There Was No "Meeting Of The Minds" As To The Alleged "Mistake."

Written contracts are presumed to correctly express the parties' intentions. *See, e.g.*, *Appalachian Ins. Co. v. McDonnell Douglas Corp.*, 214 Cal. App. 3d 1, 19 (1989). As the party seeking reformation, InsCorp must prove the existence of a <u>mutual</u> mistake by clear and convincing evidence. *See West. Sav. & Loan Ass'n v. Heflin Corp.*, 797 F. Supp. 790, 792 (N.D.

1  Cal. 1992) (citing *Shupe v. Nelson*, 254 Cal. App. 2d 693 (1967)).   One meritorious defense
2  possessed by Britannia therefore is that the purported "mutual mistake" was <u>not</u> shared by H&H,
3  and that reformation therefore is improper.[4]

4  Indeed, InsCorp's Complaint alleges that H&H tendered the claims in the Britannia
5  Arbitration to InsCorp.  *See* Complaint ¶ 20.  Since the claims against H&H relate to H&H's
6  installation of EIFS, InsCorp's allegation is inconsistent with its InsCorp's theory that H&H
7  intended for their to be an EIFS exclusion in the applicable policies.  Moreover, it makes little
8  sense for an EIFS subcontractor to knowingly agree to renew an insurance policy where the EIFS
9  subcontractor knew that the renewed policy would contain an EIFS exclusion – *i.e.*, an exclusion
10 that would purport to eviscerate any insurance protection for the subcontractor's work.

11 The burden on the party seeking to set aside a default is "not extraordinarily heavy." *TCI*,
12 244 F.3d at 700; *see also In re Stone*, 588 F.2d 1316, 1319 n.2 (10th Cir. 1978) (movant need
13 only raise facts or law showing that "a sufficient defense is assertible"), *quoted with approval in*
14 *TCI*, 244 F.3d at 700.  In alleging that H&H did not share InsCorp's purported understanding that
15 the policies were to contain an EIFS exclusion, Britannia is able to allege facts showing that it has
16 a meritorious defense.

**2.    The Alleged "Mistake" Was The Result Of InsCorp's Negligence.**

18 "Since reformation is an equitable remedy, it may be denied if the mistake was the result
19 of 'the want of that degree of care and diligence which would be exercised by persons of
20 reasonable prudence under the circumstances.'" *Appalachian Ins. Co. v. McDonnell Douglas*
21 *Corp.*, 214 Cal. App. 3d 1, 19 (1989).  Here, InsCorp seeks to "explain" the purported mistake by
22 alleging that "[t]hrough error and oversight it appears that the mandatory EIFS endorsement was
23 not user selected . . . ."  Complaint ¶ 17.  InsCorp's negligence as to the alleged mistake provides
24 Britannia with an additional meritorious defense.  *Appalachian Ins.*, 214 Cal. App. 3d at 19.

---

[4] InsCorp's own allegations regarding H&H's state of mind are made on mere information and belief.  *See, e.g.*, Complaint ¶ 31.

### 3. InsCorp Cannot Provide A Sufficient Explanation For The Alleged "Mistake."

A party's burden of explaining the alleged mistake is "much heavier" where, as here, that party itself caused the alleged mistake. *See id.* at 22 n.10 (quoting *Roller v. Cal. Pac. Title Ins. Co.*, 92 Cal. App. 2d 149, 154 (1949)). Since InsCorp admits that it is responsible for the alleged mistake, *see* Complaint ¶ 17, Britannia also has the meritorious defense that InsCorp fails to provide a satisfactory explanation for the alleged mistake contained within an insurance policy that it itself drafted. *Appalachian Ins.*, 214 Cal. App. at 20.

### 4. InsCorp's Action Is Barred By Laches.

Britannia also has the meritorious defense of laches. Laches may be shown where, as here, a defendant suffered prejudice as a result of the plaintiff's unreasonable delay in bringing suit. *See, e.g.*, *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002). Here, InsCorp delayed in filing this reformation action for almost <u>eight years</u> after the effective date of the first policy it seeks to reform, and for almost <u>three years</u> after H&H tendered the Britannia claims to InsCorp. *See* Complaint ¶¶ 10-11, 20.

InsCorp's delays in filing this lawsuit therefore prejudiced Britannia in Britannia's role as Concrete Shell's assignee. After the effective date of the policies – and apparently after H&H tendered the claims to Britannia – H&H went out of business and its former principal was involved in a serious automobile accident, which rendered him severely disabled. *See* Henningsen Decl. ¶ 6. InsCorp's own counsel stated that he did not expect H&H to even respond to InsCorp's Complaint (which H&H has not), much less to participate in these proceedings. *See id.* As noted above, InsCorp bears the burden of establishing, by clear and convincing evidence, that the alleged mistake was shared by both InsCorp and H&H. *West. Sav. & Loan Ass'n v. Heflin Corp.*, 797 F. Supp. 790, 792 (N.D. Cal. 1992). InsCorp's delay in filing this action has prejudiced Britannia by hindering it in its ability to obtain evidence that would establish, among other things, that the alleged mistake was <u>not</u> shared by H&H.

### 5. Reformation Would Prejudice Britannia.

An additional meritorious defense is that InsCorp's request for would prejudice the rights

of third parties, including Britannia. InsCorp seeks reformation under California law, *see* Complaint ¶ 16, and the California Court of Appeal has held that a request for reformation may be denied where, as here, it was made years after the policy was executed and only after the prejudice to third parties was apparent:

> We agree with the trial court that where the parties attempt reformation years after the policy was executed and only after the adverse impact to third parties was apparent, such prejudice should be considered in determining the initial intent of the contracting parties. Under such circumstances, although they may eventually achieve reformation, they are not free merely to decide between themselves that something other than their clear written provision was their initial intent. A court of equity must look at the whole picture in deciding if there was a mutual mistake that permits reformation.

*Schools Excess Liability Fund v. Westchester Fire Ins. Co.*, 117 Cal. App. 4th 1275, 1284 (2004).

The policies that InsCorp seeks to reform were issued over seven and eight years ago – in October 1999 and October 2000. *See* Complaint ¶¶ 29-30. Moreover, InsCorp's request for reformation was not made until well after the commencement of the Britannia Arbitration that implicates those policies. Furthermore, InsCorp fails to allege facts sufficient to show that it sought reformation in a timely manner after purportedly discovering the alleged mistake – InsCorp alleges that it only that it discovered the alleged mistake sometime since January 2005 – when "H&H tendered tendered the Britannia claims to InsCorp." *Id.* ¶ 27. As in *Schools Excess Liability Fund*, the request for reformation at issue here was not made "until years after the policy was executed and only after the adverse impact to third parties was apparent." *Schools Excess Liability Fund*, 117 Cal. App. 4th at 1284. Since InsCorp's belated and unilateral request would adversely impact Britannia, this Court should conclude that Britannia has a meritorious defense.

**C.   The Default Should Be Set Aside, Because Doing So Would Result In No Prejudice To InsCorp.**

Setting aside a default would prejudice a plaintiff only if doing so would hinder the plaintiff in its ability to pursue its claim. *See Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984) (per curiam). As the Ninth Circuit has made clear, "merely being forced to litigate on the merits cannot be considered prejudicial for purposes of lifting a default . . . ." *TCI*, 244 F.3d at 701

(emphasis added). To be prejudicial, a "delay must result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *Thompson v. Am. Home Assur. Co.*, 95 F.3d 429, 433-34 (6th Cir. 1996), *quoted in TCI*, 244 F.3d at 701.

Here, InsCorp did not even seek reformation of the policies until almost <u>three years</u> after H&H tendered claims to InsCorp. *See* Complaint ¶ 20 (alleging that claims were tendered on January 31, 2005).[5] Any "hindrance" in InsCorp's ability to pursue its claim was caused by InsCorp's own delays in filing this action, and not by Britannia or Concrete Shell.

### D. The Default Should Be Set Aside, Because Significant Sums Are At Stake.

There is "a strong public policy, supported by concepts of fundamental fairness, in favor of trial on the merits, particularly when the monetary damages sought are substantial." *Swink v. City of Pagedale*, 810 F.2d 791, 792 n.2 (8th Cir. 1987). H&H's potential liability to Britannia exceeds $1,000,000, and H&H's InsCorp policy limits were $1,000,000 per occurrence and $2,000,000 aggregate. InsCorp itself recognizes that significant sums are involved in this dispute because InsCorp has invoked the diversity jurisdiction of this Court – thereby conceding that at least $75,000 is at stake. *See* Complaint ¶ 4. Because significant sums are involved, the default should be set aside.

### IV. CONCLUSION

For the foregoing reasons, this Court should set aside the default that was entered against Concrete Shell Structures, Inc.

---

[5] Indeed, InsCorp alleges that it refused to even to participate in H&H's defense until two-and-a-half years after H&H tendered claims to InsCorp. *See* Complaint ¶ 20 (alleging that H&H tendered claims on January 31, 2005 and that InsCorp did not agree to participate in H&H's defense until June 1, 2007).

| | | |
|---|---|---|
| 1 | Dated: May 1, 2008 | FOLGER LEVIN & KAHN LLP |
| 2 | | /s/ Eric M. Lode |
| 3 | | Eric M. Lode |
| 4 | | Attorneys for Third-Party Assignee<br>Britannia Pointe Grand Limited Partnership |

17035\3008\599777.1