
Norman J. Roger, Esq. SBN 62554
Patricia M. Fama, Esq. SBN 138362
Roger, Scott & Helmer LLP
1001 Marshall Street, Suite 400
Redwood City, Ca. 94063-2000
Telephone: 650-365-7700
Facsimile: 650-365-0677

#130938
Attorneys for Plaintiff
INSURANCE CORPORATON OF NEW YORK

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INSURANCE CORPORATION OF NEW YORK,<br><br>Plaintiff,<br><br>vs.<br><br>H & H PLASTERING, INC., CONCRETE SHELL STRUCTURES, INC. ; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. C 07-05214 JL<br><br>REPLY MEMORANDUM IN SUPPORT OF INSURANCE CORPORATION OF NEW YORK'S APPLICATION FOR DEFAULT JUDGMENT<br><br>DATE: May 22, 2008<br>TIME: 8:00 a.m.<br>DEPT: 9<br>JUDGE: William Alsup |

Insurance Corporation of New York's ("InsCorp") has received electronic notice[1] from the Court that a stranger to this action, Third Party Assignee Britannia Point Grand Limited Partnership ("Britannia"), has filed an opposition memorandum and related declarations in relation to Insurance Corporation of New York's ("InsCorp") Application for Default Judgment. Britannia's filing is improper and not authorized. The basis for Britannia's position is that it received an assignment of the rights of Concrete Shell Structures ("CSS") on April 30, 2008 in relation to the underlying arbitration. With this new assignment Britannia, nearly five months after default was entered against CSS, seeks to be heard on InsCorp's Application for Default Judgment.

Britannia's papers are without procedural basis and should not be considered in light of the default against CSS. Britannia and CSS have known about the default against CSS since January 2008. It was with knowledge of the default that Britannia took the assignment four months later. The only offered explanation for Britannia's late injection into this action is that CSS intended to respond to the complaint herein through an unnamed counsel. Without regard to the validity of the assignment, an issue InsCorp does not address in this Reply, and while CSS is in default, neither CSS nor an assignee can file any paper other than to challenge entry of default. Default was entered against CSS in January 2008 and the only relief available to CSS is under FRCP 55.

**Timeline and Background Facts**

The following timeline is offered for the court's reference.

InsCorp filed this action on or about October 11, 2007. (Dkt. No. 1)

On or about October 15, 2007, Brian Cameron, the registered agent for service of process for CSS, gave a copy of the complaint to his appointed defense counsel, Craig S. Jones. (Jones Dec. ¶2)

---

[1] The Certificate of Service (Dkt. No. 35) indicates that the Opposition Memorandum was served on Brian Cameron/CSS and its two defense counsel in the underlying arbitration and also on H&H Plastering, Inc and its defense counsel in the underlying arbitration.

1
REPLY MEMORANDUM IN SUPPORT OF INSURANCE CORPORATION OF NEW YORK'S APPLICATION FOR DEFAULT JUDGMENT

On or about October 26, 2007, Norm Roger, counsel for InsCorp in this action, and Dave Henningsen, appointed defense counsel for Concrete Shell Structures in the underlying arbitration proceeding, spoke regarding this lawsuit. Counsel have different recall of what was discussed in that conversation. (See Roger Dec) Mr. Roger does not recall that Mr. Henningsen had "made it clear that Concrete Shell intended to answer and protect its interest, but that the process for doing so needed to be worked out." In fact, the letter from Mr. Henningsen which followed the conversation only addressed "H&M Plastering". Mr. Henningsen wrote:

> "Could you please send me a copy of the complaint that you have filed against H&M Plastering? I would like to have the case defended for H&M and so I would request that you please do not take a default at this time." (sic) (Henningsen Dec., Ex. A)

That same day, by email transmission Mr. Roger emailed an endorsed copy of the complaint to Mr. Henningsen, per his request. (See Roger Dec., ¶)7)

On or about October 31, 2007 CSS's other appointed defense counsel, Mr. Jones, declares that he forwarded the complaint to CSS's coverage counsel "with the understanding that coverage counsel would respond to InsCorp's complaint". (See Jones Dec., ¶5) Coverage counsel is not identified.

On or about November 7, 2007, counsel for InsCorp did receive a telephone call from the principal of H&H who advised that H&H had gone out of business some time ago and asking what he should do. Mr. Roger, InsCorp's counsel herein, told him he could not advise him, that he should consult with a lawyer, but it he did nothing a default would be entered. At some point after this call, Mr. Roger and Mr. Henningsen spoke again. Mr. Roger related to Mr. Henningsen his conversation with H&H's principal. (Roger Dec., ¶7 and 11)

On or about November 18, 2007 CCS was served with a summons and complaint in this action through its registered agent for service, Brian Cameron. On or about November 30, 2007 the Certificate of Service confirming service on CSS was filed with the Court (Dkt. No. 5).

On or about December 14, 2007, and in accordance with the rules of Court, InsCorp wrote

to CSS/Brian Cameron inviting them to meet and confer for the Initial Statement and Initial Status Conference. (Roger Dec., Ex. B) There was no reply to this letter.

On or about December 28, 2007 by certified letter to Brian Cameron for CSS, delivery of which is confirmed, CSS was advised that an answer to the complaint was due and that if they did not respond their default would be taken by January 4, 2008. (Roger Dec., Ex C).

On January 2, 2008 Mr. Cameron left a voice mail message acknowledging the December 28, 2007 letter indicating that CSS was a dissolved corporation. Mr. Cameron expressed no intent to respond to the complaint. (Roger Dec., ¶ 13 and Connor Dec. in Support of Request to Enter Default of CSS)

On or about January 9, 2008, InsCorp filed and served a Case Management Conference Statement. CSS, through its registered agent, was served with a copy of the Case Management Conference Statement. The Case Management Statement stated:

> "Defendants H&H Plastering, Inc. ("H&H") Concrete Shell Structures, Inc. ("CSS") have been served in this matter but have not yet filed responsive pleadings. It is anticipated that InsCorp will default the defendants and request a prove up hearing to conclude this action.
>
> * * *
>
> CSS is a California corporation with its principal place of business in San Leandro, CA. CSS's corporate status is dissolved. CSS was served through its Agent for Service of Process, Brian R. Cameron on or about November 18, 2007.
>
> By separate certified letters dated December 28, 2007, InsCorp advised H&H and CSS of their need to file responsive pleadings and stated that if no responsive pleading was filed InsCorp would request default judgment against the non-responding party. CSS by James Cameron, acknowledged the letter but CSS has not filed a responsive pleading." (Dkt. No. 6).

On or about January 14, 2008, CSS, through its agent for service of process, was served with InsCorp's consent to proceed before Magistrate Judge. (See Dkt. No. 7)

On or about January 22, 2008, CSS was served with a Request to Enter of Default, and

3
REPLY MEMORANDUM IN SUPPORT OF INSURANCE CORPORATION OF NEW YORK'S APPLICATION FOR DEFAULT JUDGMENT

supporting papers, through its agent for service of process, Brian Cameron. (See Dkt. No. 12).

On or about January 24, 2008, default was entered against CSS (See Dkt. No. 15).

On or about April 4, 2008 InsCorp filed an Application for Default Judgment. The Application was served on CSS through its agent for service of process. (See Dkt. No. 21)

On or about April 24, 2008, InsCorp caused to be served the Notice of the Clerk's Notice to Scheduling Motions and Initial Case Management Conference Reassignment on CSS through its agent for service of process (see Dkt. 27).

On or about April 24, 2008, counsel for InsCorp received correspondence from Mr. Henningsen, defense counsel for CSS in the underlying arbitration, which states:

> "At this time, I would request that you stipulate to withdrawal of your default against Concrete Shell on behalf of InsCorp because we were never informed of your default or given an opportunity to protect our interests until the default was already entered."

On May 1, 2008, InsCorp's counsel, received from the Court an electronic copy of Third Party Assignees Britannia Pointe Grand Limited Partnership's Memorandum of Points and Authorities in Opposition to Plaintiff Insurance Corporation of New York's Application for Default Judgment.

InsCorp's counsel cannot recall ever being asked not to enter default as to CSS. On October 26, 2007 Mr. Henningsen did ask that Mr. Roger not enter a default as to H&M Plastering "at this time." A default as to both H&H Plastering and CSS was not entered until almost three months later. Between October 26, 2007 and the entry of default InsCorp's counsel was not contacted by anyone purporting to represent, or undertaking to represent, either CSS or H&H in this action. During this time no one informed InsCorp's counsel that either entity intended to file a responsive pleading in this action. During this time no one requested that InsCorp's counsel delay further in seeking the default of either entity in this action. From October 26, 2007 until April 24, 2008, when Mr. Roger received correspondence from Mr. Henningsen asking for a stipulation to set aside the default of CSS that had been entered three

months earlier, no one purporting to represent either entity with respect to this action requested that InsCorp take, or defer from taking, any action or otherwise stating that a responsive pleading would be filed by either entity. (Roger Dec. ¶22)

Several days prior to January 22, 2008 Mr. Roger directed that a request to enter the default of CSS be prepared and served. On January 22, 2008 the request to enter the default of CSS was sent to this court. It was not until January 24, 2008, after sending the request to enter default, and several days after Mr. Roger directed that it be prepared, that Mr. Roger was informed that a settlement had been reached in the underlying construction defect case. Prior to January 24, 2008 Mr. Roger knew that the parties had been participating in mediation sessions going back into 2007, but it was not until January 24, 2008 that Mr. Roger learned a settlement had been reached. (Roger Dec. ¶23)

### Neither CSS nor Third Party Assignee Britannia has a Right to Appear in this Action

Entry of defendant's default cuts off the defendant's right to appear in the action or to present evidence. *Breuer Elec. Mfg. v. Toronado Systems of America, Inc.* (7th Cir. 1982) 687 F. 2d 182, 185. Once default was entered against CSS, the only procedural option it has is to file a motion to set aside the default per FRCP 55(c). CSS's assignee stands in no better position than does CSS in this regard.

### Britannia Does not Have Standing to Oppose the Application for Default Judgment based on its Recently Negotiated Assignment

With knowledge of the January 24, 2008 default against CSS, Britannia took an assignment on April 30, 2008 of "all of Concrete Shell's rights and claims against H&H and H&H's insurers that were implicated in the Arbitration Proceeding (H&H and H&H's insurers shall be collectively referred to as the 'H&H Parties'), including Concrete Shell's additional insured rights against H&H's insurers." (See Lode Dec., Exhibit A)

Britannia's status is explained in the Opp. Memorandum at 2:22-27:

"The assignment agreement pursuant to which Concrete Shell

agreed to assign to Britannia all of Concrete Shell's rights and claims against H&H and H&H's insurers – including Concrete Shell's additional insured rights against InsCorp – was not finalized until April 30, 2008. Now that the assignment agreement has been finalized, Britannia intends to pursue its rights and remedies against H&H and H&H Insurers, including InsCorp. Britannia accordingly submits this Opposition to InsCorp's Application for Entry of Default Judgment."

The Assignment, attached to the Lode Declaration provides, in relevant part, that as of April 30, 2008, "Concrete Shell...transfers, assigns and convey to Britannia, to the maximum extent permitted by law of the State of California, all claims, causes of action and rights that Concrete Shell has against the H&H Parties..." The Assignment defines the "H&H Parties" as "H&H and H&H's insurers". (Lode Dec. Ex. A)

With CSS in default, Britannia does not have capacity or standing to appear in this action regardless of the terms of the assignment. The post default assignment does not create rights that otherwise have been limited by the procedural process of the case. The assignment does not infuse Britannia with authority to appear and inject itself into this action when CSS is prohibited from doing so. Similar efforts have been rejected. (See, *United States for Use and Benefit of Wulff v. CMA, Inc.* (1989, 9th Cir.) 890 F. 2d 1070, 1074-75 (An assignee's effort to initiate an action prior to holding the rights to the action rejected.)

Further, Britannia's [Proposed] Answer to Complaint includes in its preface that CSS "has agreed to assign to Britannia" claims against H&H and H&H's insurers". Through this proposed pleading, Britannia seeks to step into the shoes of CSS under its own procedural terms and without regarding to the requirements or direction of the Federal Rules of Civil Procedure.

Britannia's presentation of this opposition should not be considered. CSS must comply with statutory and procedural requirements if it wishes to be heard in this action.

**Inscorp Properly Served the Registered Agent for Service of Process for CSS; No other Service was required.**

When this action was filed, when CSS was served, and now, Brian Cameron is the registered agent for service of process for CSS.

FRCP Rule 4 sets forth the requirements for service of a summons and complaint on a party named in an action. Despite argument otherwise, InsCorp was not required to serve CSS's appointed defense counsel in the underlying action with the complaint in this action. InsCorp had no obligation to serve a stranger to this action such as Britannia. In addition to the proper service on CSS through its registered agent for service of process, and as confirmed in the declarations, CSS's counsel & Britannia's counsel became aware of the action soon after it was filed and served and were aware of CSS's January 2008 default, four months before CSS gave the assignment to Britannia.

**CSS was named in this action because it was the only party with a direct, affirmative claim against H&H in the underlying arbitration; CSS was named as a defendant in this action so that it would be bound by the judgment.**

Argument is offered in the Opposition that "InsCorp presumably named Concrete Shell as a Defendant because Concrete Shell has additional insured rights under H&H's InsCorp insurance policies." This is not correct. CSS was named as a defendant in this action because it is the only party that asserted a direct, affirmative claim against H&H in the underlying arbitration and, because of this, InsCorp wanted to bind CSS to the outcome of this coverage action. (Roger Dec., ¶3)

**CSS, Its Third Party Assignee Did Nothing to Prevent Default against CSS; CSS has known about the Default since January 2008**

Craig Jones, defense counsel for CSS (hired by StarNet), confirms that he first became aware of this action when he received a copy of the complaint "from [his] client, Brian Cameron president of Concrete Shell Structures" on or about October 15, 2007. (See Jones Dec, ¶2) Mr. Jones forwarded the complaint to Concrete Shell's Star Net appointed coverage counsel "with the understanding that coverage counsel would respond to InsCorp's Complaint" presumably for CSS. (Jones Dec. ¶5 and also Opposition Brief 7:7-11)) (Coverage counsel is not identified in any of the papers and is silent as to what was done in relation to the complaint.) Mr. Jones learned of the default against CSS on January 29, 2008, days after it was entered. (Jones Dec. ¶7).

In addition, on October 26, 2007 Mr. Henningsen requested a copy of the complaint. (Henningsen Dec., Ex. A) Within a few hours of his request, an endorsed filed copy of the complaint was sent via email to Mr. Henningsen as a courtesy. (Roger Dec., Ex. A) (See contrary suggestion in Opposition Brief 2:20-21)

Counsel for Third Party Assignee Britannia, Mr. Lode, confirms that he too has known about the default against CSS since four days after it was entered. Mr. Lode learned of the default against CSS on January 28, 2008. (Lode Dec., ¶5, 2:12-14) With knowledge of the default, Britannia took an the assignment and ultimately agreed to seek relief from this Court pursuant under the assignment from Concrete Shell. (Lode Dec., ¶6, 2:15-18)

The Opposition offers no solid explanation why nothing was done in relation to this action against CSS until now. CSS's and its defense counsel have known about this action against it since October 2007. CSS was formally served with the action November 18, 2007. Twice in December 2007 and four times in January 2008 CSS was sent correspondence or served pleadings in relation to this action, each time receiving notice of the progress of the case and requests to participate in the action. CSS remained silent. Now, and because of the assignment, Britannia inserts itself into this action four months after CSS and Britannia learned of CSS's default. Britannia took an assignment with knowledge of the default. The late acquired assignment cannot give Britannia greater rights than CSS.

### Adverse Impact to Third Parties

When this action was filed and when default was entered against CSS, CSS -- not Britannia – held its own rights in relation to InsCorp. It was not until after default was entered against CSS that Britannia acquired rights, if any, in this matter. If there is an adverse impact to Britannia it should only be measured from when Britannia accepted the assignment. To the extent Britannia may have accepted the assignment expecting certain rights which do not exist Britannia's remedy is not in this action.

The timing of the assignment raises the question whether Britannia has any standing at all to be heard in this matter or if CSS, or someone on its behalf can impact the default. If all of

8
REPLY MEMORANDUM IN SUPPORT OF INSURANCE CORPORATION OF NEW YORK'S APPLICATION FOR DEFAULT JUDGMENT

CSS's rights have been assigned it is questioned whether CSS can even take any action in this matter, including to set aside the default. *U-Haul Int'l, Inc. v. Jartran, Inc.* (9th Cir. 1986) 793 F. 2d 1034, 1038 (explaining that a real party in interest is a "party to whom the relevant substantive law grants a cause of action"); see also 6A Wright & Miller §1545, at p. 351 ("When all the rights to a claim have been assigned, courts generally have held that the assignor no longer may sue").

Britannia is a stranger to the action under the current procedural status. Britannia's Opposition regarding the Application for Default must be disregarded.

DATED: May ___, 2008

ROGER, SCOTT & HELMER

By: /s/ Patricia M. Fama
Patricia M. Fama
Attorneys for Plaintiff
INSURANCE CORPORATION OF NEW YORK