Norman J. Roger, Esq. SBN 62554
Patricia M. Fama, Esq. SBN 138362
Roger, Scott & Helmer LLP
1001 Marshall Street, Suite 400
Redwood City, Ca. 94063-2000
Telephone: 650-365-7700
Facsimile: 650-365-0677

#131118
Attorneys for Plaintiff
INSURANCE CORPORATON OF NEW YORK

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INSURANCE CORPORATION OF NEW YORK,<br><br>Plaintiff,<br><br>vs.<br><br>H & H PLASTERING, INC., CONCRETE SHELL STRUCTURES, INC. ; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. C 07-05214 JL<br><br>INSURANCE CORPORATION OF NEW YORK'S OPPOSITION TO BRITTANIA POINTE GRANDE LIMITED PARTNERSHIP'S MOTION TO SET ASIDE THE DEFAULT ENTERED AGAINST CONCRETE SHELL STRUCTURES, INC.<br><br>DATE: June 5, 2008<br>TIME: 8:00 a.m.<br>DEPT: 9<br>JUDGE: William Alsup |

# TABLE OF CONTENTS

STATEMENT OF FACTS.................................................................................... 1

ARGUMENT....................................................................................................... 5

Britannia Does Not Have Standing to Oppose the Application for Default Judgment Based On Its Recently Negotiated Assignment...................................... 6

CSS's Failure to Respond is Culpable Conduct That Should Not Be Excused........... 7

InsCorp Properly Served the Registered Agent for Service of Process for CSS; No Other Service Was Required.......................................................................... 8

Neither CSS, Nor Its Third Party Assignee Did Anything to Prevent Default Against CSS; CSS has known about the Default since January 2008...................... 8

As CSS's Neglect Was Inexcusable, The Merits of Its Underlying Defense, The Prejudice It Will Suffer, and The Amount in Controversy Are Not Relevant............ 10

Brittania is Bound by CSS's Failure to Protect the Rights that It Assigned Brittania; As Such, There Is No Adverse Impact to Third Parties......................................... 11

InsCorp Will Suffer Significant Prejudice if Britania's Motion to Set Aside Default Is Granted............................................................................................................ 11

CONCLUSION.................................................................................................. 11

i

INSURANCE CORPORATION OF NEW YORK'S OPPOSITION TO BRITTANIA POINTE GRANDE LIMITED PARTNERSHIP'S MOTION TO SET ASIDE THE DEFAULT ENTERED AGAINST CONCRETE SHELL STRUCTURES, INC.

# TABLE OF AUTHORITIES

## *Federal Cases*

Education Credit Management Corp. v. Bernal 207 F.3d 595, 598 (9th Cir. 2000)................................................................................................. 7

Franchise Holding II, LLC v. Huntington Restaurants Group, Inc. 375 Fed.3d 922, 925 (9th Cir. 2004)............................................................. 7, 10

Meadows v. Dominican Republic 817 F.2d 517, 521 (9th Cir. 1987)............... 7, 10

TCI Group v. Knoebber, 783 F. 2d 941 (9th Cir. 2001)............................... 9, 10

U-Haul Int'l, Inc. v. Jartran, Inc. (9th Cir. 1986) 793 F.2d 1034, 1038.............. 11

United States for Use and Benefit of Wulff v. CMA, Inc. (1989, 9th Cir.) 890 F.2d 1070, 1074-75................................................................................ 6

## *Federal Statutes*

FRCP Rule 25(c).................................................................................. 6, 7

FRCP Rule 4........................................................................................ 8

Rule 60(b)(1)....................................................................................... 10

INSURANCE CORPORATION OF NEW YORK'S OPPOSITION TO BRITTANIA POINTE GRANDE LIMITED PARTNERSHIP'S MOTION TO SET ASIDE THE DEFAULT ENTERED AGAINST CONCRETE SHELL STRUCTURES, INC.

Insurance Corporation of New York's ("InsCorp") has received electronic notice[1] from the Court that a stranger to this action, Third Party Assignee Britannia Point Grand Limited Partnership ("Britannia"), has filed a Motion to Set Aside the Default Entered Against Concrete Shell Structures, Inc. Britannia alleges that it has standing to make this motion because it received an assignment of the rights from Concrete Shell Structures ("CSS") on April 30, 2008 through a mediation of an underlying matter. With this new assignment Britannia, nearly five months after default was entered against CSS, is attempting to move to set aside the default entered

Even assuming that Britannia can properly make this motion – despite the fact that it is not a party to this action – Britannia still cannot meet the standard of FCRP 55 to set aside a default judgment. Simply put, **default was entered against CSS because CSS repeatedly and with full knowledge of the serious consequences failed to protect its rights by filing a responsive pleading**.

And even if the repeated failure of CSS to protect its rights is excused, Britannia cannot succeed on the merits against InsCorp even if it was granted relief from the default because it is not a party to this action. Further, InsCorp would be prejudiced greatly if it is forced to prosecute this action now after expending significant sums to pursue the default. Finally, although significant sums are admittedly at issue, that only highlights the failure of CSS to protect itself by responding to this action in a timely manner.

## STATEMENT OF FACTS

In its memorandum in support of its motion, Brittania attempts to imply that InsCorp is somehow responsible for the failure of CSS to respond to the Complaint at issue in this matter. A review of the actual circumstances of the default, including the many admissions within the

---

[1] The Certificate of Service (Dkt. No. 35) indicates that the Motion to Set Aside Default was served on Brian Cameron/CSS and its two defense counsel in the underlying arbitration and also on H&H Plastering, Inc and its defense counsel in the underlying arbitration.

1
**INSURANCE CORPORATION OF NEW YORK'S OPPOSITION TO BRITTANIA POINTE GRANDE LIMITED PARTNERSHIP'S MOTION TO SET ASIDE THE DEFAULT ENTERED AGAINST CONCRETE SHELL STRUCTURES, INC.**

Declarations attached to the Motion to Set Aside the default, belies this contention. As such, the following timeline is offered for the court's reference.

InsCorp filed this action on or about October 11, 2007. (Dkt. No. 1)

On or about **October 15, 2007,** Brian Cameron, the registered agent for service of process for CSS, gave a copy of the complaint to his appointed defense counsel in an underlying construction defect arbitration, Craig S. Jones. (Jones Dec. ¶2)

On or about **October 26, 2007**, Norm Roger, counsel for InsCorp in this action, and Dave Henningsen, appointed defense counsel for CSS in the underlying arbitration proceeding, spoke regarding this lawsuit. Counsel have different recollections of what was discussed in that conversation. (See Roger Dec) Mr. Roger does not recall that Mr. Henningsen had "made it clear that Concrete Shell intended to answer and protect its interest, but that the process for doing so needed to be worked out." In fact, the letter from Mr. Henningsen which followed the conversation only addressed "H&M Plastering". Mr. Henningsen wrote:

> "Could you please send me a copy of the complaint that you have filed against H&M Plastering? I would like to have the case defended for H&M and so I would request that you please do not take a default at this time." (sic) (Henningsen Dec., Ex. A)

That same day, by email transmission Mr. Roger emailed an endorsed copy of the complaint to Mr. Henningsen, per his request. (See Roger Dec., ¶)7)

*On or about October 31, 2007 CSS's other appointed defense counsel, Mr. Jones, declares that he forwarded the complaint to CSS's coverage counsel "with the understanding that coverage counsel would respond to InsCorp's complaint".* (See Jones Dec., ¶5, Emphasis added.) Coverage counsel is not identified, nor did any coverage counsel contact InsCorp's counsel or otherwise participate or communicate in this litigation in any fashion. To date, no counsel has yet appeared on behalf of CSS in this matter.

On or about November 7, 2007, counsel for InsCorp did receive a telephone call from the principal of H&H who advised that H&H had gone out of business some time ago and asking what he should do. Mr. Roger, InsCorp's counsel herein, told him he could not advise him,

that he should consult with a lawyer, but if he did nothing a default would be entered. At some point after this call, Mr. Roger and Mr. Henningsen spoke again. Mr. Roger related to Mr. Henningsen his conversation with H&H's principal. (Roger Dec., ¶7 and 11)

On or about November 18, 2007 CSS was served with a summons and complaint in this action through its registered agent for service, Brian Cameron. On or about November 30, 2007 the Certificate of Service confirming service on CSS was filed with the Court (Dkt. No. 5).

On or about December 14, 2007, and in accordance with the rules of Court, InsCorp wrote to CSS/Brian Cameron inviting them to meet and confer for the Initial Statement and Initial Status Conference. (Roger Dec., Ex. B) There was no reply to this letter.

On or about December 28, 2007 by certified letter to Brian Cameron for CSS, delivery of which is confirmed, CSS was advised that an answer to the complaint was due and that if they did not respond their default would be taken by January 4, 2008. (Roger Dec., Ex C).

On January 2, 2008 Mr. Cameron left a voice mail message acknowledging the December 28, 2007 letter indicating that CSS was a dissolved corporation. Mr. Cameron expressed no intent to respond to the complaint. (Roger Dec., ¶ 13 and Connor Dec. in Support of Request to Enter Default of CSS)

On or about January 9, 2008, InsCorp filed and served a Case Management Conference Statement. CSS, through its registered agent, was served with a copy of the Case Management Conference Statement. The Case Management Statement stated:

> "Defendants H&H Plastering, Inc. ("H&H") Concrete Shell Structures, Inc. ("CSS") have been served in this matter but have not yet filed responsive pleadings. It is anticipated that InsCorp will default the defendants and request a prove up hearing to conclude this action.
>
> * * *
>
> CSS is a California corporation with its principal place of business in San Leandro, CA. CSS's corporate status is dissolved. CSS was served through its Agent for Service of Process, Brian R. Cameron on or about November 18, 2007.
>
> By separate certified letters dated December 28, 2007, InsCorp

3

> advised H&H and CSS of their need to file responsive pleadings and stated that if no responsive pleading was filed InsCorp would request default judgment against the non-responding party. CSS by James Cameron, acknowledged the letter but CSS has not filed a responsive pleading." (Dkt. No. 6).

On or about January 14, 2008, CSS, through its agent for service of process, was served with InsCorp's consent to proceed before a Magistrate Judge. (See Dkt. No. 7)

On or about January 22, 2008, CSS was served with a Request to Enter of Default, and supporting papers, through its agent for service of process, Brian Cameron. (See Dkt. No. 12).

On or about January 24, 2008, default was entered against CSS (See Dkt. No. 15).

On or about April 4, 2008 InsCorp filed an Application for Default Judgment. The Application was served on CSS through its agent for service of process. (See Dkt. No. 21)

On or about April 24, 2008, InsCorp caused to be served the Notice of the Clerk's Notice to Scheduling Motions and Initial Case Management Conference Reassignment on CSS through its agent for service of process (see Dkt. 27).

On or about April 24, 2008, counsel for InsCorp received correspondence from Mr. Henningsen, defense counsel for CSS in the underlying arbitration, which states:

> "At this time, I would request that you stipulate to withdrawal of your default against Concrete Shell on behalf of InsCorp because we were never informed of your default or given an opportunity to protect our interests until the default was already entered."

On May 1, 2008, InsCorp's counsel, received from the Court an electronic copy of Third Party Assignees Britannia Pointe Grand Limited Partnership's Motion to Set Aside Default Entered Against Concrete Shell Structures, Inc. CSS has not filed any papers itself.

InsCorp's counsel cannot recall ever being asked not to enter default as to CSS. On October 26, 2007 Mr. Henningsen did ask that Mr. Roger not enter a default as to H&M Plastering "at this time." In fact, CSS had not even been served at the time and a default as to both H&H Plastering and CSS was not entered until almost three months later.

Between October 26, 2007 and the entry of default on January 24, 2008, InsCorp's counsel was not contacted by anyone purporting to represent, or undertaking to represent, either CSS or

H&H in this action. During this time no one informed InsCorp's counsel that either entity intended to file a responsive pleading in this action. During this time no one requested that InsCorp's counsel delay further in seeking the default of either entity in this action. From October 26, 2007 until April 24, 2008, when Mr. Roger received correspondence from Mr. Henningsen asking for a stipulation to set aside the default of CSS, no one purporting to represent either entity with respect to this action requested that InsCorp take, or defer from taking, any action or otherwise stating that a responsive pleading would be filed by either entity. (Roger Dec. ¶22)

Several days prior to January 22, 2008 Mr. Roger directed that a request to enter the default of CSS be prepared and served. On January 22, 2008 the request to enter the default of CSS was sent to this court. It was not until January 24, 2008, after sending the request to enter default, and several days after Mr. Roger directed that it be prepared, that Mr. Roger was informed that a settlement had been reached in the underlying construction defect case. Prior to January 24, 2008 Mr. Roger knew that the parties had been participating in mediation sessions going back into 2007, but it was not until January 24, 2008 that Mr. Roger learned a settlement had been reached. (Roger Dec. ¶23)

## ARGUMENT

Default was entered in this matter because CSS failed - despite having several months to do so and with the representation of at least three different law firms - to protect its right by simply filing an answer in the matter. CSS should not now be permitted to set aside a default that was taken because of its own failure to act.

Further, CSS continues in its failure to act. CSS does not seek relief from default. Instead, a non-party and alleged assignee, Britannia, brings a motion to set aside the default. Britannia has not brought a noticed motion to intervene or substitute itself, but instead, and improperly, has directly attacked the default of another party.

///

///

5

INSURANCE CORPORATION OF NEW YORK'S OPPOSITION TO BRITTANIA POINTE GRANDE LIMITED PARTNERSHIP'S MOTION TO SET ASIDE THE DEFAULT ENTERED AGAINST CONCRETE SHELL STRUCTURES, INC.

### Britannia Does not Have Standing to Oppose the Application for Default Judgment based on its Recently Negotiated Assignment

With knowledge of the January 24, 2008 default against CSS, Britannia took an assignment on April 30, 2008 of "all of Concrete Shell's rights and claims against H&H and H&H's insurers that were implicated in the Arbitration Proceeding (H&H and H&H's insurers shall be collectively referred to as the 'H&H Parties'), including Concrete Shell's additional insured rights against H&H's insurers." (See Lode Dec., Exhibit A)

Britannia's status is explained in its Memorandum at 2:23-3:17:

> "The assignment agreement pursuant to which Concrete Shell agreed to assign to Britannia all of Concrete Shell's rights and claims against H&H and H&H's insurers – including Concrete Shell's additional insured rights against InsCorp – was not finalized until April 30, 2008. Now that the assignment agreement has been finalized, Britannia intends to pursue its rights and remedies against H&H and H&H Insurers, including InsCorp. Britannia therefore respectfully moves this Court set [sic] aside the default that was entered against Concrete Shell so that Britannia, as Concrete Shell's assignee, can pursue its rights against InsCorp."

The Assignment, attached to the Lode Declaration provides, in relevant part, that as of April 30, 2008, "Concrete Shell…transfers, assigns and convey to Britannia, to the maximum extent permitted by law of the State of California, all claims, causes of action and rights that Concrete Shell has against the H&H Parties…" The Assignment defines the "H&H Parties" as "H&H and H&H's insurers". (Lode Dec. Ex. A)

With CSS in default, Britannia does not have capacity or standing to appear in this action regardless of the terms of the assignment. The post default assignment does not create rights that otherwise have been limited by the procedural process of the case. The assignment does not infuse Britannia with authority to appear and inject itself into this action when CSS is prohibited from doing so. Similar efforts have been rejected. (See, *United States for Use and Benefit of Wulff v. CMA, Inc.* (1989, 9th Cir.) 890 F. 2d 1070, 1074-75 (An assignee's effort to initiate an action prior to holding the rights to the action rejected.)

Britannia is not a party to this action. Under FRCP Rule 25(c), Britannia may pursue its

rights in the name of CSS, or it may substitute itself as a party into the action based upon its transferred right through a properly noticed motion. It may not simply on its own participate in the action. See FRCP Rule 25(c).

Further, any actions or failures to act by CSS are binding upon Britannia. *See Education Credit Management Corp. v. Bernal*, 207 F.3d 595, 598 (9th Cir. 2000). As such, the culpable conduct of CSS is imputed to Brittania, so Brittania may not assert its own excusable conduct in order to excuse the conduct of CSS.

Britannia's presentation of this motion should not be considered. Britannia must comply with statutory and procedural requirements if it wishes to be heard in this action.

### CSS's Failure to Respond is Culpable Conduct that should not be excused.

As an initial matter, "a defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and failed to answer." *Meadows v. Dominican Republic*, 817 F. 2d 517, 521 (9th Cir. 1987). As the recitation of facts that follows demonstrates, CSS and its representatives were aware of its obligation to respond to the Complaint, yet chose to not respond. As such, CSS was "fully informed of the legal consequences of the failing to respond" by InsCorp's counsel, and presumably their own attorneys. See *Meadows* at 522.

The same contentions that are made in Britannia's memorandum have been rejected. In *Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.*, the defaulting party had received service of the complaint but not filed a responsive pleading. Franchise Holding II, LLC v. Huntington Restaurants Group, Inc. 375 Fed. 3d 922, 925 (9th Cir. 2004). Similarly to this matter, the defaulting party – HRG - contended that it had a "side-agreement to extend the filing deadlines", and consequently did not file an answer to protect its rights. Id. at 926 As in this matter, the plaintiff disagreed that any such agreement existed. Id.

The Court held that the default was the result of the culpable conduct of the defendant, and stated that "even if the parties did enter into a side-agreement, HRG remains culpable for the entry of default." Id.

///

### InsCorp Properly Served the Registered Agent for Service of Process for CSS; No other Service was required.

When this action was filed, when CSS was served, and now, Brian Cameron is the registered agent for service of process for CSS.

FRCP Rule 4 sets forth the requirements for service of a summons and complaint on a party named in an action. At no point does Brittania contend that CSS was not properly served, nor that it is was unaware of the action. Despite argument otherwise, InsCorp was not required to serve CSS's appointed defense counsel in the underlying arbitration with the complaint in this action. InsCorp had no obligation to serve a stranger to this action such as Britannia. In addition to the proper service on CSS through its registered agent for service of process, and as confirmed in the declarations, CSS's counsel and Britannia's counsel became aware of the action soon after it was filed and served and were aware of CSS's January 2008 default, four months before Britannia took the assignment of CSS's rights. The assignment clearly was taken subject to the default.

### Neither CSS, Nor Its Third Party Assignee Did Anything to Prevent Default against CSS; CSS has known about the Default since January 2008

Mr. Jones, defense counsel for CSS in the underlying arbitration proceeding (hired by StarNet), confirms that he first became aware of this action when he received a copy of the complaint "from [his] client, Brian Cameron president of Concrete Shell Structures" on or about **October 15, 2007**. (See Jones Dec, ¶2) Mr. Jones forwarded the complaint to CSS's Star Net-appointed coverage counsel *"with the understanding that coverage counsel would respond to InsCorp's Complaint"* presumably for CSS. (Jones Dec. ¶5; Emphasis added) (Coverage counsel is not identified in any of the papers and is silent as to what was done in relation to the complaint.) Mr. Jones learned of the default against CSS on January 29, 2008, days after it was entered. (Jones Dec. ¶7).

In addition, on **October 26, 2007** Mr. Henningsen requested a copy of the complaint. (Henningsen Dec., Ex. A) Within a few hours of his request, an endorsed filed copy of the complaint was sent via email to Mr. Henningsen as a courtesy. (Roger Dec., Ex. A)    (See

contrary suggestion in Opposition Brief 2:20-21)

Counsel for Third Party Assignee Britannia, Mr. Lode, confirms that he too has known about the default against CSS since four days after it was entered. Mr. Lode learned of the default against CSS on January 28, 2008. (Lode Dec., ¶5, 2:12-14) With knowledge of the default, Britannia took the assignment and ultimately agreed to seek relief from this Court pursuant to the assignment from Concrete Shell. (Lode Dec., ¶6, 2:15-18).

As such, and by their own admission, at least three law firms representing CSS knew of the Complaint since October 2007. Further, Brittania, the moving party, knew of the default shortly after it was entered – approximately four months ago – and when it took the assignment of CSS's rights.

The memorandum in support of the motion to set aside the default offers no reasonable explanation why nothing was done in relation to this action against CSS until now. CSS's and its defense counsel have known about this action against it since October 2007. CSS was formally served with the action November 18, 2007. Twice in December 2007 and four times in January 2008 CSS was sent correspondence or served pleadings in relation to this action, each time receiving notice of the progress of the case and requests to participate in the action. CSS remained silent. Now, and because of the assignment, Britannia inserts itself into this action four months after CSS and Britannia learned of CSS's default. Britannia took an assignment with knowledge of the default. The late acquired assignment cannot give Britannia greater rights than CSS.

In the case upon which Brittania primarily relies, *TCI Group v. Knoebber*, 783 F. 2d 941 (9th Cir.2001) the Court discusses the implication of legal knowledge in determining the fault of the party. In a footnote, the Court states:

> We have tended to consider the defaulting party's general familiarity with legal processes or consulation with lawyers at the time of the default as pertinent to the determination whether the party's conduct in failing to respond to legal process was deliberate, willful or in bad faith … Absent some explanation … it is fair to expect that individuals who have previously been involved in litigation or have consulted with a lawyer appreciate the consequence of failing to answer

and do so only if they see some advantage to themselves. *TCI Group*, FN 6.

Although the court in *TCI Group* stated that legal representation by itself was not determinative of culpability, certainly, in this matter, the fact that three different firms represented CSS in some capacity at the time of this action, were aware of the complaint, and yet filed no answer, and were aware of the default and yet took no action for four months, indicates that the failure to respond is not the result of excusable neglect. The basic failure to respond to this Complaint should not be excused.

Similarly to this matter, the court in *Franchise Holding* discussed the contention that the failure of a party represented by counsel to file a responsive pleading was excusable neglect. The Court rejected the holding and concluded that "the entry of default and default judgment were squarely within HRG's control. HRG received actual notice of both the action and Franchise Holding's intent to pursue it. HRG ***nevertheless failed to file an extension or anything else*** with district court until Franchise Holding began to collect on the default judgment." *Franchise Holding*, supra, at 927. As such, the Court held that "HRG did not establish excusable neglect." *Id.*

The Court should conclude that CSS's "default was intentional, culpable and inexcusable under Rule 60(b)(1)". See *Meadows* at 522. As such, neither CSS nor Brittania should be granted their motion to set aside the default.

**As CSS's Neglect was Inexcusable, the merits of its underlying defense, the prejudice it will suffer, and the amount in controversy are not relevant**

CSS's neglect "was inexcusable" and, therefore, the Court "need not determine whether the record shows a meritorious defense or prejudice to" CSS or Brittania. *Meadows* at 522. As discussed above, CSS cannot meet the threshold standard of showing that its conduct was excusable. To the degree that it has a meritorious defense, that only makes the failure to act more culpable, and this failure should not be excused.

///

///

### Brittania is bound by CSS's failure to protect the rights that it assigned Brittania; As such, there is no Adverse Impact to Third Parties

When this action was filed and when default was entered against CSS, CSS -- not Britannia – held its own rights in relation to InsCorp. It was not until after default was entered against CSS that Britannia acquired rights, if any, in this matter. If there is an adverse impact to Britannia it should only be measured from when Britannia accepted the assignment. To the extent Britannia may have accepted the assignment expecting certain rights which do not exist Britannia's remedy is not in this action. Brittania accepted the assignment with full knowledge of the default. As such, Brittania cannot credibly claim that it is unfairly impacted by the default because it knew the risk it was accepting.

The timing of the assignment raises the question whether Britannia has any standing at all to be heard in this matter or if CSS, or someone on its behalf can impact the default. If all of CSS's rights have been assigned it is questioned whether CSS can even take any action in this matter, including to set aside the default. *U-Haul Int'l, Inc. v. Jartran, Inc.* (9th Cir. 1986) 793 F. 2d 1034, 1038 (explaining that a real party in interest is a "party to whom the relevant substantive law grants a cause of action").

As such, Brittania cannot claim its own innocence as a justification for reviving this matter after CSS's failure to respond. Brittania took the assignment fully aware of the default, did nothing to protect the rights in the four months since the default was entered, and should be bound by the determination.

### InsCorp Will Suffer Significant Prejudice if Britania's Motion to Set Aside Default is Granted

If Britania's motion to set aside default is granted, InsCorp will suffer significant prejudice in the expense of attorney's fees that were expended to take the default against CSS. At a very minimum, if the motion is granted, it should be granted with the condition that CSS reimburse InsCorp for all the costs and fees expended in taking the default.

### CONCLUSION

CSS, and its attorneys, took no action to protect its rights in the several months since this

case began, and even in the four months since default was entered. As such, CSS conduct should not be considered excusable neglect and default should not be set aside.

Further, Brittania, the moving party, is not a party to this action and should not be permitted to revive CSS's defense after CSS inaction. As such, InsCorp respectfully requests that this Court deny Brittania's motion to set aside the default.

DATED: May 12, 2008

ROGER, SCOTT & HELMER

By: *Patricia M. Fama*
Norman J. Roger
Patricia M. Fama
Attorneys for Plaintiff
INSURANCE CORPORATION OF NEW YORK