FOLGER LEVIN & KAHN LLP
Wesley D. Hurst (CSB No. 127564, whurst@flk.com)
Eric M. Lode (CSB No. 209129, elode@flk.com)
Embarcadero Center West
275 Battery Street, 23rd Floor
San Francisco, CA  94111
Telephone: (415) 986-2800
Facsimile: (415) 986-2827

Attorneys for Britannia Pointe Grand
Limited Partnership, Assignee of Defendant
Concrete Shell Structures, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| INSURANCE CORPORATION OF NEW YORK,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>H&H PLASTERING, INC.; CONCRETE SHELL STRUCTURES, INC.; and DOES 1 though 10, inclusive,<br><br>　　　　　　Defendants. | Case No. CV 07-05214 WHA<br><br>**BRITANNIA POINTE GRAND LIMITED PARTNERSHIP'S REPLY MEMORANDUM OF POINTS AND AUTHORITITES IN SUPPORT OF ITS MOTION TO SET ASIDE THE DEFAULT ENTERED AGAINST DEFENDANT CONCRETE SHELL STRUCTURES, INC.**<br><br>Date:　　　　June 5, 2008<br>Time:　　　　2:00 p.m.<br>Courtroom:　9<br>Judge:　　　Hon. William Alsup |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................. 1

II. SUPPLEMENTAL BACKGROUND ............................................................................... 2

   A. InsCorp Filed This Action In An Attempt To Avoid Its Insurance
      Obligations In The Underlying Britannia Arbitration ............................................ 2

   B. Summary Adjudication Was Previously Granted Against InsCorp By The
      California Superior Court On Some Of The Same Issues Involved In This
      Action ...................................................................................................................... 3

   C. Concrete Shell's Counsel Expressly Requested That InsCorp Refrain From
      Seeking A Default In This Action And InsCorp Still Did So Without
      Providing Any Notice To Counsel For Concrete Shell .......................................... 4

   D. After Britannia Agreed To Settle The Britannia Arbitration With All
      Parties Except For H&H, InsCorp Sought, And Obtained, Entries Of
      Default Without Notifying Counsel For Concrete Shell ........................................ 4

III. ARGUMENT ..................................................................................................................... 5

   A. As Concrete Shell's Assignee, Britannia Has The Right To Seek To Set
      Aside The Default Entered Against Concrete Shell ............................................... 5

   B. InsCorp's Own Inequitable Conduct Should Bar It From Receiving The
      Relief It Seeks ......................................................................................................... 6

      1. Courts Of Equity Are Not Open To Those With Unclean Hands ............... 6

      2. InsCorp Should Be Barred From Prevailing By Default – Or From
         Challenging The Conduct Of Concrete Shell – Based Upon
         InsCorp's Own Unclean Hands ................................................................... 6

   C. Concrete Shell Did Not Engage In "Culpable Conduct" ........................................ 7

      1. InsCorp Ignores Binding Ninth Circuit Precedent On How The
         Term "Culpable Conduct" Is To Be Applied .............................................. 7

      2. Concrete Shell's Conduct Was Not "Culpable." ......................................... 8

      3. InsCorp Ignores *Hutton v. Fisher*, Where A Default Was Set Aside
         Based On Very Similar Facts ..................................................................... 10

      4. InsCorp's Citations To Authorities Are Inapposite .................................. 10

      5. Any Doubts Should Be Resolved In Favor Of Setting Aside The
         Default ........................................................................................................ 11

   D. InsCorp Concedes That There Are Meritorious Defenses To Its Claims, ........... 11

   E. Setting Aside The Default Would Not Prejudice InsCorp Under Ninth
      Circuit Authority. .................................................................................................. 12

   F. InsCorp Concedes That Substantial Sums Are At Stake ..................................... 13

   G. Allowing The Default To Stand Would Prejudice Britannia And Would Be
      Contrary To The Sound Administration Of Justice ............................................. 13

IV. CONCLUSION ................................................................................................................ 13

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-i-

BRITANNIA'S REPLY MPA IN SUPPORT OF
MOTION TO SET ASIDE DEFAULT;
CASE NO. CV 07-05214 WHA

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adler v. Federal Republic of Nigeria*,
    219 F.3d 869 (9th Cir.2000) ........................................................................................... 2, 6

*Bateman v. United States Postal Service*,
    231 F.3d 1220 (9th Cir. 2000) ............................................................................................ 8

*Demetris v. Demetris*,
    125 Cal. App. 2d 440 (1954) .............................................................................................. 6

*Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.*,
    375 F.3d 922 (9th Cir. 2004) ........................................................................................... 10

*Hutton v. Fisher*,
    359 F.2d 913 (3d Cir. 1966) ............................................................................................ 10

*Meadows v. Dominican Republic*,
    817 F.2d 517 (9th Cir. 1987) ............................................................................................. 7

*Mendoza v. Wight Vineyard Mgmt.*,
    783 F.2d 941 (9th Cir. 1986) ........................................................................................ 1, 11

*N. Star Reinsurance Corp. v. Superior Court*,
    10 Cal. App. 4th 1815 (1992) .......................................................................................... 12

*Schools Excess Liability Fund v. Westchester Fire Ins. Co.*,
    117 Cal. App. 4th 1275 (2004) .......................................................................................... 6

*Swink v. City of Pagedale*,
    810 F.2d 791 (8th Cir. 1987) ........................................................................................ 2, 13

*TCI Life Ins. Plan v. Knoebber*,
    244 F.3d 691 (9th Cir. 2001) ................................................................. 1, 2, 8, 9, 11, 12

*Thompson v. Am. Home Assur. Co.*,
    95 F.3d 429 (6th Cir. 1996) ............................................................................................. 12

*United States for the Use and Benefit of Wulff v. CMA, Inc.*,
    890 F.2d 1070 (9th Cir. 1989) ............................................................................................ 5

*West. Sav. & Loan Ass'n v. Heflin Corp.*,
    797 F. Supp. 790 (N.D. Cal. 1992) .................................................................................. 11

## RULES AND STATUTES

Cal. Civ. Proc. Code § 338 ........................................................................................................ 12

Fed. R. Civ. Proc. 25 .................................................................................................................. 5

Fed. R. Civ. Proc. 55 .................................................................................................................. 1

Folger Levin &
Kahn LLP
Attorneys At Law

-ii-

BRITANNIA'S REPLY MPA IN SUPPORT OF
MOTION TO SET ASIDE DEFAULT;
CASE NO. CV 07-05214 WHA

1   Britannia Pointe Grand Limited Partnership ("Britannia"), as the assignee of Defendant
2   Concrete Shell Structures, Inc. ("Concrete Shell"), respectfully submits this Reply Memorandum
3   of Points and Authorities in Support of its Motion to Set Aside the Default entered against
4   Defendant Concrete Shell (the "Motion").

## I.     INTRODUCTION

Britannia has been assigned Concrete Shell's right and claims against Plaintiff Insurance Corporation of New York ("InsCorp"). Without having provided Britannia or Concrete Shell's counsel with notice of InsCorp's application for a default, InsCorp now opposes Britannia's Motion to Set Aside the Default Entered Against Concrete Shell by incorrectly arguing that the default was the result of Concrete Shell's "culpable conduct." In doing so, InsCorp does not argue that Britannia, as Concrete Shell's assignee, has no meritorious defense to InsCorp's claims. This is unsurprising, because InsCorp lost most of the issues raised in this action in a previous case filed in the California Superior Court by another insurer of Defendant H & H Plastering, Inc. ("H&H"). Compounding its failure to notify Concrete Shell's counsel of its default application, InsCorp has failed to disclose to this Court that the California Superior Court previously ruled against InsCorp on some of the very same issues on which InsCorp now seeks to prevail by default.

This Court has broad discretion to set aside a default for good cause pursuant to Rule 55(c) of the Federal Rules of Civil Procedure. *Mendoza v. Wight Vineyard Mgmt.*, 783 F.2d 941, 945 (9th Cir. 1986). In determining whether a default should be set aside, this Court examines the following factors: "whether the defendant's culpable conduct led to the default; whether the defendant has a meritorious defense; and whether reopening the default judgment would prejudice the plaintiff." *TCI Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001). Any doubts should be resolved in favor of setting aside the default, so that the dispute may be resolved on the merits. *Mendoza*, 783 F.2d at 945-46. Here, the default entered against Concrete Shell should be set aside for seven reasons:

First, Concrete Shell has assigned to Britannia all of Concrete Shell's rights and claims against InsCorp relating to the claims made in the Britannia Arbitration. Britannia is accordingly

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

BRITANNIA'S REPLY MPA IN SUPPORT OF
MOTION TO SET ASIDE DEFAULT;
CASE NO. CV 07-05214 WHA

a real party in interest.

Second, InsCorp's own inequitable conduct should bar it from obtaining by default that which InsCorp previously lost on the merits – especially where, as here, InsCorp obtained the default after failing to disclose to this Court the previous ruling against it and its communications with Concrete Shell's counsel.  *See generally Adler v. Federal Republic of Nigeria*, 219 F.3d 869, 877-76 (9th Cir.2000) (courts of equity are closed to those with unclean hands).  At the very least, this Court should determine that InsCorp is estopped by its own inequitable conduct from seeking to challenge the conduct of Concrete Shell.

Third, Concrete Shell did not engage in culpable conduct.  *TCI*, 244 F.3d at 698.  InsCorp obtained its default without providing notice to counsel for Concrete Shell, even though Concrete Shell's counsel requested that a default not be taken and InsCorp did not deny this request.

Fourth, InsCorp does not dispute that there are meritorious defenses to InsCorp's claims.  Nor could InsCorp dispute this point, because summary adjudication was granted against InsCorp by the California Superior Court on claims that InsCorp purports to raise in this action.

Fifth, having to litigate this action on the merits would not prejudice InsCorp, because "merely being forced to litigate on the merits cannot be considered prejudicial for purposes of lifting a default . . . .".  *TCI*, 244 F.3d at 701.

Sixth, InsCorp concedes that substantial sums are involved in this dispute.  *Swink v. City of Pagedale*, 810 F.2d 791, 792 n.2 (8th Cir. 1987).

Seventh, allowing the default to stand would prejudice Britannia and would not be conducive to the sound administration of justice.

## II.     SUPPLEMENTAL BACKGROUND

### A.     InsCorp Filed This Action In An Attempt To Avoid Its Insurance Obligations In The Underlying Britannia Arbitration.

InsCorp is an insurance company that provided insurance to H&H, a subcontractor that (among other things) installed caulk joints and exterior insulation finishing system ("EIFS"). With this action, InsCorp seeks to reform its policies with H&H to include an EIFS exclusion that was not included in the policies themselves.  Based solely on its request for reformation, InsCorp

seeks declarations that it has no duty to defend or indemnify H&H as to claims raised by Britannia and/or Concrete Shell in the underlying Britannia Arbitration.

The Britannia Arbitration involved defective construction at commercial properties located in South San Francisco. Britannia, the owner of the properties, contracted with Concrete Shell, a general contractor, to construct buildings for the use of biopharmaceutical company tenants of Britannia's. Concrete Shell in turn subcontracted with H&H to, among other things, install caulk joints and EIFS on a building's exterior. The construction was defective and, consistent with the parties' contracts, Britannia initiated an American Arbitration Association proceeding against Concrete Shell. Concrete Shell, in turn, cross-claimed for indemnity against various subcontractors, including H&H.

Britannia already has expended over $200,000 in repairing defects at Building 230, and has obtained a repair estimate in excess of $1,700,000 to repair additional defects at that building. Most of these defects relate to construction for which H&H was responsible; H&H's potential liability to Britannia could exceed $1,000,000. H&H is no longer in business, and its former principal was involved in serious car accident that rendered him severely disabled.

**B.  Summary Adjudication Was Previously Granted Against InsCorp By The California Superior Court On Some Of The Same Issues Involved In This Action.**

After InsCorp refused to defend Defendant H&H in the underlying Britannia Arbitration for approximately a year-and-a-half, another of H&H's insurers, Gerling America Insurance Corporation ("Gerling") brought an action in the Superior Court for the County of San Mateo seeking a declaration that InsCorp had a duty to defend H&H in the Britannia Arbitration. InsCorp's arguments in that action were essentially the same arguments it makes here – *i.e.*, that it supposedly has no duty as to the Britannia Arbitration because two of its H&H insurance policies should be reformed, on the ground of "mutual mistake," to include an EIFS exclusion.

The California Superior Court granted Gerling summary adjudication, ruling that InsCorp had a duty to defend H&H in the Britannia Arbitration because the evidence InsCorp presented in that action – which is essentially the same evidence InsCorp presents here – was <u>not</u> sufficient to carry InsCorp's burden of establishing that there was no insurance coverage. *See* Britannia Pointe

1  Grand Limited Partnership's Request for Judicial Notice ("RJN"), Ex. A, at 2-3 (filed May 20,
2  2008).[1] Moreover, the California Superior Court stated that even if the policies were reformed to
3  an include an EIFS exclusion, some of the damage alleged in the Britannia Arbitration might fall
4  outside the scope of that exclusion. *See id.* at 4. InsCorp then filed a motion for relief from the
5  summary adjudication entered against it. *See* RJN, Ex. B. While that motion was pending,
6  InsCorp and Gerling reached a settlement and the action was dismissed. *See id.*

7  Soon after that dismissal, InsCorp filed this action, seeking to relitigate the same issues it
8  previously lost before the California Superior Court. InsCorp was represented by the same
9  attorneys in the California Superior Court action as it is here.

**C.   Concrete Shell's Counsel Expressly Requested That InsCorp Refrain From Seeking A Default In This Action And InsCorp Still Did So Without Providing Any Notice To Counsel For Concrete Shell.**

12  While the parties to the Britannia Arbitration were engaged in settlement discussions,
13  Concrete Shell's counsel expressly requested that InsCorp refrain from seeking a default in this
14  action. InsCorp's counsel did <u>not</u> deny this request, and Concrete Shell's counsel assumed that
15  no default would be taken. *See* Declaration of David Henningsen ("Henningsen Decl.") ¶ 7 (filed
16  May 1, 2008).

**D.   After Britannia Agreed To Settle The Britannia Arbitration With All Parties Except For H&H, InsCorp Sought, And Obtained, Entries Of Default Without Notifying Counsel For Concrete Shell.**

19  Less than one week after Britannia agreed to settle with all the parties to the Britannia
20  Arbitration except for H&H, InsCorp applied for, and received, an entry of default. In doing so,
21  InsCorp did not notify Concrete Shell's counsel of its application, despite the fact that InsCorp
22  was aware of Concrete Shell's counsels' identities and the fact that Concrete Shell's counsel
23  expressly requested that no default be taken. *See* Henningsen Decl. ¶ 5, 13; Declaration of Craig
24  S. Jones ("Jones Decl.") ¶¶ 3, 7.

25  In April 2008, InsCorp applied for a default judgment, again without notifying Concrete

---

[1] Britannia was unaware of this ruling until after InsCorp referred to its previous litigation with Gerling in the Case Management Statement that InsCorp filed with this Court on May 15, 2008.

Shell's counsel. *See* Henningsen Decl. ¶ 5; Jones Decl. ¶ 3. InsCorp also failed to disclose its communications with Concrete Shell's counsel in InsCorp's moving papers. Moreover, InsCorp failed to disclose to this Court that it was seeking a default judgment on some of the very same issues on which it previously lost before the California Superior Court.

### III.   ARGUMENT

#### A.   As Concrete Shell's Assignee, Britannia Has The Right To Seek To Set Aside The Default Entered Against Concrete Shell.

InsCorp acknowledges that Concrete Shell assigned to Britannia all of Concrete Shell's rights and claims against H&H and H&H insurers – including InsCorp – that were implicated in the Britannia Arbitration. *See* InsCorp Opposition, at 6:3:20. Britannia, as Concrete Shell's assignee, accordingly has rights and claims against InsCorp.[2]

InsCorp's argument based upon *United States for the Use and Benefit of Wulff v. CMA, Inc.*, 890 F.2d 1070 (9th Cir. 1989), is misplaced. In *Wulff*, the plaintiffs filed a complaint <u>before</u> they received an assignment of the requisite cause of action. *See id.* at 1074-75. Here, Britannia did <u>not</u> appear in this action and seek to set aside the default until <u>after</u> Britannia received the assignment from Concrete Shell. Nothing in *Wulff* suggests that Britannia should not be heard in this matter. Indeed, Britannia moved to set aside the default on May 1, 2008, promptly after receiving the assignment on April 30.

InsCorp erroneously suggests that Britannia agreed to the assignment only after becoming aware of the default, and thus argues that Britannia is not prejudiced by the default because Britannia supposedly knew the assignment was useless as to InsCorp. InsCorp's factual premise and argument are both incorrect. Britannia agreed to accept the assignment on January 17, 2008, <u>before</u> the default was entered on January 24. *See* Declaration of Eric M. Lode ("Lode Decl.") ¶ 3 (filed May 1, 2008). After agreeing to the settlement, the settling parties to the Britannia

---

[2] InsCorp concedes that Britannia may substitute in as a party pursuant to Rule 25(c) of the Federal Rules of Civil Procedure, which provides that "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." Fed. R. Civ. Proc. 25(c).

Arbitration then began drafting settlement documents – including the assignment – and Britannia moved to set aside the default the very day after the parties finalized the assignment agreement. *See id.* ¶ 7.

### B. InsCorp's Own Inequitable Conduct Should Bar It From Receiving The Relief It Seeks.

#### 1. Courts Of Equity Are Not Open To Those With Unclean Hands.

"The unclean hands doctrine 'closes the court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant. Under this doctrine, plaintiffs seeking equitable relief must have 'acted fairly and without fraud or deceit as to the controversy in issue.'" *Adler v. Federal Republic of Nigeria*, 219 F.3d 869, 876-77 (9th Cir. 2000) (citations omitted).[3]

With this action, InsCorp seeks to reform two of its insurance policies with H&H and, based upon its request for reformation, also seeks declarations that it has no duty to defend or indemnify H&H as to claims raised in the Britannia Arbitration. Reformation is an equitable remedy. *See, e.g.*, *Schools Excess Liability Fund v. Westchester Fire Ins. Co.*, 117 Cal. App. 4th 1275, 1284 n.12 (2004) (quoting *Demetris v. Demetris*, 125 Cal. App. 2d 440, 443 (1954)).

#### 2. InsCorp Should Be Barred From Prevailing By Default – Or From Challenging The Conduct Of Concrete Shell – Based Upon InsCorp's Own Unclean Hands.

The California Superior Court has already determined that InsCorp <u>does</u> have a duty to defend H&H as to the claims raised in the Britannia Arbitration. Soon after that ruling, InsCorp settled that action and then filed an action involving the same issues in this Court.

Without notifying this Court of the previous ruling against it, InsCorp obtained a default on issues that it previously lost. InsCorp then applied for a default judgment, again without disclosing the previous ruling to this Court.

Moreover, H&H is out of business, and its former principal was in a car accident that left

---

[3] "In California, the unclean hands doctrine applies not only to equitable claims, but also to legal ones." *Adler*, 219 F.3d at 877.

him severely disabled. Concrete Shell is a dissolved corporation; its former principal is approximately 75 years old and retired. Upon learning of this action while the parties to the Britannia Arbitration were engaged in settlement discussions, counsel for Concrete Shell expressly requested that InsCorp refrain from seeking a default and InsCorp's counsel did <u>not</u> deny this request. Less than one week after Britannia reached a settlement with all the parties to the Britannia Arbitration – except for H&H – InsCorp applied entries of default against H&H and Concrete Shell without notifying counsel for Concrete Shell and without informing this Court of InsCorp's communications with Concrete Shell's counsel.

In engaging in the above conduct, InsCorp has failed to be candid with this Court and has improperly sought to take advantage of Concrete Shell, H&H, and Britannia. InsCorp should accordingly be barred from prevailing by default based upon InsCorp's own unclean hands.[4] At the very least, this Court should determine that InsCorp itself has engaged it inequitable conduct and is estopped from seeking to challenge the conduct of Concrete Shell.

### C. Concrete Shell Did Not Engage In "Culpable Conduct".

Were this Court to evaluate Concrete Shell's conduct, this Court should rule that such conduct was not "culpable."

#### 1. InsCorp Ignores Binding Ninth Circuit Precedent On How The Term "Culpable Conduct" Is To Be Applied.

Relying on *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987), InsCorp argues that "a defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and failed to answer." InsCorp's Opposition, at 7:11-13. In making this argument, InsCorp ignores that, four years after *Meadows*, the Ninth Circuit made it clear that a mere failure to respond to an action of which a defendant has notice is <u>not</u>, standing alone, "culpable conduct." *TCI*, 244 F.3d at 697.

In *TCI*, the Ninth Circuit defined "culpable conduct" as conduct engaged in with an

---

[4] After this Court rules on Britannia's motion to set aside the default, Britannia reserves the right to argue in further pleadings that InsCorp's entire Complaint should be dismissed based upon (among other things) InsCorp's unclean hands.

1   "intention to take advantage of the opposing party, interfere with judicial decisionmaking, or
2   otherwise manipulate the legal process." *Id.*  Moreover, the Ninth Circuit stated in *TCI* that "we
3   have typically held that a defendant's conduct was culpable . . . where there is no explanation of
4   the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *Id.* at
5   698 (emphasis added).

6   The *TCI* court also discussed numerous cases in which the Ninth Circuit had applied these
7   standards, as well the "closely analogous" case of *Bateman v. United States Postal Service*, 231
8   F.3d 1220 (9th Cir. 2000), "where an attorney left the country for a family emergency, missing
9   the deadline to answer a motion for summary judgment while he was away, and did not contact
10  the district court or opposing counsel until 16 days after his return because it took him that long to
11  recover from his trip and sort through his mail." *TCI*, 244 F.3d at 698 & n.4.  The Ninth Circuit
12  concluded in *Bateman* that "because the lawyer acted in good faith without prejudice to the
13  opposing party, and with minimal delay or impact on the judicial proceedings, his neglect was
14  excusable." *Id.* (citing *Bateman*, 231 F.3d at 1225).  "Noteworthy for present purposes is that the
15  fact that the attorney knew that the summary judgment motion response would be due while he
16  was away, yet did nothing about obtaining an extension, did not preclude a finding of 'excusable
17  neglect.'" *Id.* (citing *Bateman*, 231 F.3d at 1223).

18  Thus, contrary to InsCorp's suggestion, Concrete Shell did not engage in "culpable
19  conduct" simply by not responding to InsCorp's Complaint before default was entered.  As
20  discussed below, there is an explanation of the default consistent with a good faith, excusable
21  failure to respond, which precludes any finding that Concrete Shell engaged in culpable conduct.
22  *See id.* at 698.

23  **2.    Concrete Shell's Conduct Was Not "Culpable."**

24  As to Concrete Shell, InsCorp appears to have served its Complaint only on Brian
25  Cameron, Concrete Shell's former principal and registered agent.  Concrete Shell is a dissolved
26  corporation; Mr. Cameron is approximately seventy-five years old and retired.

27  InsCorp does not dispute that Mr. Cameron forwarded InsCorp's Complaint to Concrete
28  Shell's attorneys in the Britannia Arbitration well before any response would be due.  Thus, the

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-8-

BRITANNIA'S REPLY MPA IN SUPPORT OF
MOTION TO SET ASIDE DEFAULT;
CASE NO. CV 07-05214 WHA

default did not result from any "culpable conduct" on the part of Mr. Cameron or Concrete Shell itself.

The default also did not result from any "culpable conduct" on the part of Concrete Shell's attorneys. Concrete Shell's counsel learned of InsCorp's Complaint while the parties to the Britannia Arbitration were involved in settlement discussions. One of Concrete Shell's attorneys contacted InsCorp's counsel and requested that InsCorp refrain from seeking a default on the ground that Concrete Shell intended to respond to the Complaint and protect Concrete Shell's interests. *See* Henningsen Decl. ¶ 7. Concrete Shell's counsel then reiterated in writing his request that no default be taken. *See id.* ¶ 8. InsCorp did not object to Concrete Shell's counsel's request. *See id.* ¶ 9. Concrete Shell's counsel accordingly assumed that InsCorp would not pursue a default. *See id.*

Another of Concrete Shell's attorneys referred InsCorp's Complaint to a third-party claims adjuster and to Concrete Shell's coverage counsel, with the understanding that coverage counsel would respond to the Complaint. *See* Jones Decl. ¶ 5. That same Concrete Shell attorney also sent at least one follow-up email to the third-party claims adjuster. *See id.*

Britannia then agreed to settle its claims in the Britannia Arbitration with every party except for InsCorp's insured, H&H. All claims against H&H were carved out of the settlement, and, as part of the settlement, Concrete Shell agreed to assign to Britannia all of Concrete Shell's rights and claims against H&H and InsCorp.

Less than one week later, InsCorp applied for an entry of default without providing notice to counsel for either Britannia or Concrete Shell.

As such, there is an explanation of the default consistent with an excusable, good faith failure to respond. *TCI*, 244 F.3d. at 698. Among other things, InsCorp did not deny Concrete Shell's counsel's request that InsCorp not seek a default; Concrete Shell's counsel justifiably concluded that InsCorp would not do so; and InsCorp applied for entry of default without even providing notice to counsel for Concrete Shell.

### 3. InsCorp Ignores *Hutton v. Fisher*, Where A Default Was Set Aside Based On Very Similar Facts.

In *Hutton v. Fisher*, 359 F.2d 913 (3d Cir. 1966), the Third Circuit set aside a default based upon facts similar to those here. In *Hutton*, the plaintiff's senior attorney knew the defendant had retained an attorney and had also acquiesced in the defense attorney's request for more time to answer. *See id.* at 915. Two months later, a more junior attorney for the plaintiff requested and received an order of default without notifying the defendants' attorney. *See id.* The defendants did not move to set aside the default until more than <u>three years</u> after it was entered. *See id.* at 914-15. Reversing the District Court, the Third Circuit set aside the default. *See id.* at 915. Because InsCorp similarly acquiesced in Concrete Shell's request that InsCorp refrain from seeking a default, this Court should set aside the entry of default here. *See id.*

### 4. InsCorp's Citations To Authorities Are Inapposite.

InsCorp's reliance on *Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.*, 375 F.3d 922 (9th Cir. 2004), is misplaced. In *Franchise Holding*, HRG's attorney accepted service on behalf of HRG. *See id.* at 925. HRG alleged that it had a side agreement with Franchise Holding that Franchise Holding would not pursue litigation while settlement negotiations were continuing in good faith. *See id.* at 926. Franchise Holding then expressly "warned HRG that negotiations had broken down and that it was proceeding with litigation." *Id.* "HRG nevertheless failed to file anything with the district court until after Franchise Holding began collecting on the default judgment." *Id.*

Since HRG's attorney accepted service in *Franchise Holding*, it appears that Franchise Holding provided HRG's <u>attorney</u> with notice that Franchise Holding was pursuing litigation and that it thereby might seek a default. HRG nonetheless failed to answer. Here, InsCorp concedes that it did <u>not</u> provide notice of its application for entry of default to counsel for Concrete Shell. Moreover, unlike in *Franchise Holding*, it is <u>not</u> the case here that nothing was filed until after the plaintiff sought to collect on a default judgment. No default judgment has been entered in this action, and Britannia moved to set aside the default entered against Defendant Concrete Shell the very day after Britannia and Concrete Shell signed the agreement pursuant to which Concrete

1  Shell assigned to Britannia Concrete Shell's rights and claims against H&H and InsCorp.

2  InsCorp's discussion of *TCI* is also misplaced. *See* InsCorp's Opposition, at 9:25-10:8.

3  InsCorp concedes that legal representation is "not determinative of culpability." *Id.* at 10:3-4.

4  Moreover, the default here is explained by InsCorp's failure to notify Concrete Shell's counsel of

5  InsCorp's intent to seek a default after Concrete Shell's counsel requested that one not be taken.

6  Indeed, InsCorp failed to serve Concrete Shell's counsel with InsCorp's application. Nothing in

7  *TCI* suggests that either Concrete Shell or its counsel engaged in culpable conduct here.[5]

### 5. Any Doubts Should Be Resolved In Favor Of Setting Aside The Default.

The facts and authorities discussed above establish that there was no culpable conduct on the part of Concrete Shell. Any doubts should be resolved in favor of setting aside the default, so that the dispute may be resolved on the merits. *Mendoza v. Wight Vineyard Mgmt.*, 783 F.2d 941, 945 (9th Cir. 1986). It would be particularly inappropriate to allow InsCorp to prevail by default in this action, because InsCorp previously lost in state court on most of the issues that the default encompasses.

### D. InsCorp Concedes That There Are Meritorious Defenses To Its Claims,

Given that the California Superior Court has already granted summary adjudication against InsCorp, InsCorp does not dispute that there are meritorious defenses to its claims. Britannia stated many of these defenses in its Opening Memorandum. Among other things, InsCorp bears the burden of establishing a "mutual mistake" by clear and convincing evidence. *West. Sav. & Loan Ass'n v. Heflin Corp.*, 797 F. Supp. 790, 792 (N.D. Cal. 1992). Yet InsCorp pleads no facts sufficient to establish that the alleged "mistake" was shared by H&H.

Now that Britannia has had the opportunity to review some of the pleadings in the previous state court action involving InsCorp and Gerling, Britannia is aware of additional

---

[5] The *TCI* court also stated that a "defendant's . . . physical or mental illness is a common ground for finding conduct non-culpable." *TCI*, 244 F.3d at 698 n.5. Since H&H is no longer in business and it appears that its former principal is severely disabled, this provides grounds for setting aside the default entered against H&H as well.

1  meritorious defenses.  For example, as argued by Gerling in the state court action, InsCorp's
2  request for reformation is barred by the statute of limitations in that InsCorp did not file this
3  action until more than three years after purportedly discovering the alleged facts on which the
4  request for reformation is based.  *See*  Cal. Civ. Proc. Code § 338(d); *N. Star Reinsurance Corp.*
5  *v. Superior Court*, 10 Cal. App. 4th 1815, 1822 (1992).  Moreover, InsCorp's conduct and
6  failures to disclose provide Britannia with the additional defense of unclean hands.

7  Even if there is reformation and an EIFS exclusion is read into InsCorp's policies with
8  H&H, Britannia still would have the additional defense that such an exclusion would not
9  eliminate InsCorp's obligations as to the Britannia Arbitration.  Indeed, the California Superior
10 Court already has ruled on summary adjudication that InsCorp offered no evidence in that
11 proceeding that <u>all</u> of Britannia's claims "would be subsumed by such an exclusion" and that at
12 least some of the alleged damage may "fall outside that exclusion."  RJN, Ex. A, 4.

### E. Setting Aside The Default Would Not Prejudice InsCorp Under Ninth Circuit Authority.

15 Without citing any authority, InsCorp incorrectly argues that it would somehow be
16 prejudiced if the default were set aside, because it expended attorneys' fees in seeking the default.
17 *See* InsCorp's Opposition, at 11:22-25.  This argument ignores binding Ninth Circuit authority
18 holding that "<u>merely being forced to litigate on the merits cannot be considered prejudicial</u> for
19 purposes of lifting a default . . . ."  *TCI*, 244 F.3d at 701 (emphasis added).

20 Moreover, Britannia pointed out in its Opening Memorandum that, in order to be
21 prejudicial, a "delay must result in tangible harm such as loss of evidence, increased difficulties
22 of discovery, or greater opportunity for fraud or collusion."  *Thompson v. Am. Home Assur. Co.*,
23 95 F.3d 429, 433-34 (6th Cir. 1996), *quoted in TCI*, 244 F.3d at 701.  InsCorp does not and
24 cannot argue that any such tangible harm has resulted from any delay on the part of Defendants or
25 Britannia here.  This Court should accordingly conclude that setting aside the default would not
26 prejudice InsCorp.

### F. InsCorp Concedes That Substantial Sums Are At Stake.

InsCorp states that "significant sums admittedly are at issue" in this action. InsCorp Opposition, at 1:18. Moreover, InsCorp does not dispute that there is "a strong public policy, supported by concepts of fundamental fairness, in favor of trial on the merits, particularly when the monetary damages sought are substantial." *Swink v. City of Pagedale*, 810 F.2d 791, 792 n.2 (8th Cir. 1987). The default should accordingly be set aside.

### G. Allowing The Default To Stand Would Prejudice Britannia And Would Be Contrary To The Sound Administration Of Justice.

This Court should reject InsCorp's argument that there would be no adverse impact to third parties if the default is allowed to stand. The default was not entered until after Britannia agreed to accept an assignment of Concrete Shell's rights and claims against InsCorp. Allowing the default to stand could prejudice Britannia by hindering it in its ability to recover for the damages caused by InsCorp's insured, H&H, that were at issue in the Britannia Arbitration.

Allowing the default to stand also would be contrary to the sound administration of justice: InsCorp would be rewarded for seeking to escape its duties under it insurance policies with H&H by settling the California Superior Court action after it received an unfavorable summary adjudication ruling, by then filing a new action in this Court on some of the same issues it had previously lost, and by then obtaining a default without ever disclosing to this Court the previously rulings against it. Public confidence in the judicial system would not be fostered by allowing the default to stand.

## IV. CONCLUSION

For the foregoing reasons, and for the reasons discussed in Britannia's Opening Memorandum, this Court should set aside the default entered against Britannia's Assignor, Defendant Concrete Shell. Britannia, as the assignee of Defendant Concrete Shell, should be allowed to litigate this case on the merits.

| | | |
|---|---|---|
| 1 | Dated: May 22, 2008 | FOLGER LEVIN & KAHN LLP |
| 2 | | /s/ Eric M. Lode |
| 3 | | Eric M. Lode |
| 4 | | Attorneys for Britannia Pointe Grand Limited Partnership, Assignee of Defendant Concrete Shell Structures, Inc. |

17035\3008\602034.5