FOLGER LEVIN & KAHN LLP
Wesley D. Hurst (CSB No. 127564, whurst@flk.com)
Amy L. Kashiwabara (CSB No. 210562, akashiwabara@flk.com)
Embarcadero Center West
275 Battery Street, 23rd Floor
San Francisco, CA 94111
Telephone: (415) 986-2800
Facsimile: (415) 986-2827

Attorneys for Britannia Pointe Grand
Limited Partnership, Assignee of Defendant
Concrete Shell Structures, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| INSURANCE CORPORATION OF NEW YORK,<br><br>Plaintiff,<br><br>v.<br><br>H&H PLASTERING, INC.; CONCRETE SHELL STRUCTURES, INC.; and DOES 1 though 10, inclusive,<br><br>Defendants. | Case No. CV 07-05214 WHA<br><br>**ASSIGNEE BRITANNIA POINTE GRAND LIMITED PARTNERSHIP'S NOTICE OF MOTION AND MOTION TO INTERVENE, OR, IN THE ALTERNATIVE, SUBSTITUTE FOR ASSIGNOR DEFENDANT CONCRETE SHELL; MEMORANDUM OF POINTS AND AUTHORITITES IN SUPPORT THEREOF**<br><br>Date: July 3, 2008<br>Time: 8:00 a.m.<br>Courtroom: 9<br>Judge: Hon. William Alsup |

# TABLE OF CONTENTS

**Page**

I.  ISSUE TO BE DECIDED ................................................................................................ 1

II. INTRODUCTION .......................................................................................................... 2

III. BACKGROUND ............................................................................................................ 3

    A. InsCorp's Insured, H&H, Is Responsible To Britannia For Defective Construction ........................................................................................................ 3

    B. InsCorp Refused To Participate In H&H's Defense In The Britannia Arbitration For Approximately Two-And-A-Half Years ....................................... 4

    C. Summary Adjudication Was Previously Granted Against InsCorp By The California Superior Court On Some Of The Same Issues Involved In This Action ........................................................................................................ 4

    D. InsCorp Filed This Action Seeking To Rewrite Its Insurance Policies With H&H To Add An EIFS Exclusion That InsCorp Believes Would Eliminate Its Indemnity Obligations As To Claims Raised In The Britannia Arbitration. ......................................................................................................... 5

    E. Concrete Shell's Counsel Expressly Requested That InsCorp Refrain From Seeking A Default. ......................................................................................... 5

    F. Concrete Shell's Defense Counsel In The Britannia Arbitration Referred InsCorp's Complaint To Concrete Shell's Coverage Counsel, With The Understanding That Coverage Counsel Would Respond To The Complaint ........ 6

    G. Less Than One Week After Britannia Agreed To Settle With Every Party To The Britannia Arbitration Except For H&H, InsCorp Moved For An Entry Of Default Without Notifying Counsel ............................................................. 6

    H. Britannia Has Now Been Formally Assigned Concrete Shell's Rights And Claims Against H&H and H&H's Insurers, Including InsCorp ............................ 7

IV. ARGUMENT ................................................................................................................. 8

    A. Because Britannia's Substantial And Valuable Rights Under The InsCorp Policies Will Be Determined By This Action, And Because No Party Represents Britannia's Interests In This Action, Britannia Meets the Requirements for Intervention As Of Right ............................................................. 8

        1. Britannia's Motion To Intervene Meets The Liberal Requirements For Timeliness Under FRCP 24 .................................................................. 9

        2. Britannia Has A Significantly Protectable Interest In The Instant Lawsuit .................................................................................................... 10

        3. Disposition Of The Instant Lawsuit Could Impair And Impede Britannia's Ability To Protect Its Legally Protectable Interests ............... 11

        4. The Existing Parties Do Not Adequately Represent Britannia's Interests ..................................................................................................... 11

    B. As The Transferee Of Concrete Shell's Interest In This Action, Britannia May, In the Alternative, Substitute For Concrete Shell In This Action ............... 12

V. CONCLUSION ............................................................................................................ 13

# TABLE OF AUTHORITIES

**Page**

### CASES

*Arakaki v. Cayetano*,
   324 F.3d 1078 (9th Cir. 2003) .................................................................................................. 9

*Community Dental Servs. v. Tani*,
   282 F.3d 1164 (9th Cir. 2002) .................................................................................................. 3

*First American Savings Bank v. Westside Federal Savings & Loan Assoc.*,
   639 F. Supp. 93 (W.D. Wash. 1986) ...................................................................................... 12

*Mountain Top Condominium Assoc. v. Dave Stabbert Master Builder, Inc.*,
   72 F.2d 361 (3rd Cir. 1995) ..................................................................................................... 9

*Southwest Center for Biological Diversity v. Berg*,
   268 F.3d 810 (9th Cir. 2001) ........................................................................... 8, 9, 10, 11, 12

*United States v. State of Oregon*,
   745 F.2d 550 (9th Cir. 1984) .............................................................................................. 9, 10

### RULES

Fed. R. Civ. Proc. 24 ................................................................................................... 1, 2, 3, 8, 9
Fed. R. Civ. Proc. 25 ......................................................................................................... 1, 12, 13

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2  NOTICE IS HEREBY GIVEN that at the hearing scheduled for 8:00 a.m. on July 3, 2008, or as soon thereafter as counsel may be heard by the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, before the Honorable William H. Alsup, Courtroom 9 on the 19th Floor, Britannia Pointe Grand Limited Partnership ("Britannia"), assignee of Defendant Concrete Shell Structures, Inc.'s ("Concrete Shell") rights and claims against Defendant H & H Plastering, Inc. ("H&H") and H&H's insurers, including Plaintiff Insurance Corporation of New York ("InsCorp"), will and hereby does move the Court for an order allowing Britannia to intervene in the above-entitled matter, or, in the alternative, substitute for Defendant Concrete Shell.

Britannia timely moves to intervene in this matter under Federal Rule of Civil Procedure ("FRCP") 24 on the ground that its ability to protect its valuable and legally protectable interest in the subject of this action will otherwise be impaired by the disposition of this action. Britannia's interest is not adequately represented by other parties to this action and no party will be prejudiced by allowing Britannia to intervene. In the alternative, Britannia moves to substitute for defendant Concrete Shell under FRCP 25(c) on the ground that Concrete Shell has assigned its interest in this action to Britannia. Britannia's motion is further based upon this Notice of Motion and Motion to Intervene, or, in the Alternative, to Substitute, and Memorandum of Points and Authorities in Support Thereof, the Declarations of Eric M. Lode, David S. Henningsen, and Craig S. Jones, submitted in Opposition to InsCorp's Application for Default Judgment ("Lode Decl.," "Henningsen Decl.," and "Jones Decl.," E-filed Documents 29, 30, and 31), and upon such other matters as may be presented to the Court at the hearing on this matter.

### I. ISSUE TO BE DECIDED

Should Britannia be allowed to intervene in this action in which InsCorp seeks, without allowing Britannia to be heard, a default declaratory judgment rewriting insurance policies under which Britannia recently became the real party in interest through an assignment by Defendant Concrete Shell?

## II. INTRODUCTION

Plaintiff InsCorp brought this action in an attempt to rewrite certain of its insurance policies with Defendant H&H, by adding an exclusion that InsCorp believes would eliminate its indemnity obligations for claims raised by Defendant Concrete Shell and its assignee Britannia in a related arbitration arising from construction defects in buildings owned by Britannia (the "Britannia Arbitration").

Through an assignment by Defendant Concrete Shell of its rights and claims against H&H and H&H's insurers, including Concrete Shell's additional insured rights against Plaintiff InsCorp, Britannia has become the real party in interest in this action, and Britannia's potential recovery under the insurance policies issued by Plaintiff InsCorp are now at stake. The InsCorp policies provide coverage for the construction defects at a building owned by Britannia for which Defendant Concrete Shell was the general contractor and Defendant H&H was a subcontractor. Britannia has already expended over $200,000 repairing the building's defects and has obtained a repair estimate in excess of $1,700,000 to repair additional defects at the building. By this action, InsCorp seeks to rewrite the policies to exclude coverage for exterior insulation and finishing system ("EIFS") from the policies – coverage that could be worth over $1,000,000 to Britannia. InsCorp also seeks a declaration from this Court that it has no duty under the policies as rewritten to indemnify Defendant H&H as to claims raised by Defendant Concrete Shell and its assignee Britannia.

InsCorp now seeks a default declaratory judgment from this Court and argues that Britannia should not be given the opportunity to be heard. However, Britannia meets the four requirements for intervention <u>as of right</u> under FRCP 24(a) and should be allowed to appear in this matter for at least the following reasons:

<u>First</u>, having received the assignment of Concrete Shell's interest in this action less than a month ago, Britannia's motion is timely, especially in light of the fact that no proceedings on the merits have yet occurred in this Court.

<u>Second</u>, as the assignee of Concrete Shell, Britannia is now the real party in interest to the InsCorp insurance policies at issue. This coverage is potentially worth more than $1,000,000.

Thus, Britannia has a substantial and valuable interest in this action that is legally protectable.

<u>Third</u>, if InsCorp succeeds in its efforts to obtain a declaration from this Court excluding EIFS coverage from the insurance policies at issue, Britannia's ability to recover from InsCorp under the policies will be both legally and practically impaired.

<u>Fourth</u>, none of the existing parties adequately represents Britannia's interests. InsCorp's interests are adverse, and H&H and Concrete Shell are essentially incapacitated. Thus, unless Britannia is allowed to appear, no one will protect Britannia's interests in this action. It would be unjust for Britannia to be denied an opportunity to address this Court, as the Ninth Circuit has urged that a case "should, whenever possible, be decided on the merits." *See Community Dental Servs. v. Tani*, 282 F.3d 1164, 1171 (9th Cir. 2002) (internal quotation and citation omitted). Allowing Britannia to intervene in this action will enable this Court to determine the parties' rights based on merit rather than by default, and InsCorp will have an opportunity to explain to the Court how it can be entitled to declaratory relief that is contrary to a ruling made by a Superior Court of California in a related action that InsCorp has a duty to defend H&H because there may be coverage for Britannia and Concrete Shell's claims.

For all these reasons, Britannia respectfully requests that the Court allow it to intervene as a defendant party under FRCP 24. In the alternative, Britannia respectfully requests that the Court exercise its discretion to allow Britannia to substitute into this action for Concrete Shell because Concrete Shell has transferred its interests in this action to Britannia by assignment.

### III.   BACKGROUND

#### A.   InsCorp's Insured, H&H, Is Responsible To Britannia For Defective Construction.

InsCorp's insured, H&H, defectively installed caulk joints and EIFS at an office building owned by Britannia located at 230 East Grand Avenue, South San Francisco, California ("Building 230"). When defectively installed, caulk joints and EIFS can lead to water intrusion and resultant damage, as they did at Building 230.

Consistent with its construction contracts, Britannia sought to arbitrate its claims against the general contractor, Concrete Shell, in an American Arbitration Association Arbitration

proceeding (American Arbitration Association Case Number No. 74 110 M 00660 04 BRSH). *See* Lode Decl. ¶¶ 1, 2.[1] Concrete Shell in turn filed cross-claims for indemnification against the subcontractors responsible for the construction, including H&H. *See id.* ¶ 2.

Britannia has already expended over $200,000 in repairing defects at Building 230, and has obtained a repair estimate in excess of $1,700,000 to repair additional defects at that building. Most of these defects relate to construction for which H&H was responsible; H&H's potential liability to Britannia could exceed $1,000,000.

**B.   InsCorp Refused To Participate In H&H's Defense In The Britannia Arbitration For Approximately Two-And-A-Half Years.**

H&H was insured by InsCorp. *See* Complaint ¶ 6. H&H is no longer in business, and its former principal was involved in a serious automobile accident that rendered him severely disabled. Henningsen Decl. ¶ 6.

InsCorp acknowledges that it refused to defend H&H in the Britannia Arbitration for approximately two-and-a-half years. *See* Complaint ¶ 20. When InsCorp finally agreed to defend H&H in June 2007, InsCorp did so under a reservation of rights. *See id.* H&H was then defended by the law firm of McCarthy & McCarthy. *See* Lode Decl. ¶ 2.

**C.   Summary Adjudication Was Previously Granted Against InsCorp By The California Superior Court On Some Of The Same Issues Involved In This Action.**

After InsCorp refused to defend Defendant H&H in the underlying Britannia Arbitration for approximately a year-and-a-half, another of H&H's insurers, Gerling America Insurance Corporation ("Gerling") brought an action in the Superior Court for the County of San Mateo seeking a declaration that InsCorp had a duty to defend H&H in the Britannia Arbitration. *See* Britannia's Request for Judicial Notice, Ex. A, E-filed Document 49. InsCorp's arguments in that action are essentially the same implicated here – *i.e.*, that InsCorp supposedly has no duty as to

---

[1] Britannia also demanded arbitration against Concrete Shell over defective construction at three other buildings, each of which is also located in South San Francisco: 220 East Grand Avenue, 169 Harbor Way, and 170 Harbor Way. InsCorp alleges that H&H performed work only at Building 230.

the Britannia Arbitration because two of its H&H insurance policies should be rewritten, on the ground of "mutual mistake," to include an EIFS exclusion. *Id.*

The California Superior Court granted Gerling summary adjudication, ruling that InsCorp had a duty to defend H&H in the Britannia Arbitration because the evidence InsCorp presented in that action – which is essentially the same evidence InsCorp presents in support of the instant declaratory judgment action – was not sufficient to carry InsCorp's burden of establishing there was no insurance coverage. *Id.*

### D. InsCorp Filed This Action Seeking To Rewrite Its Insurance Policies With H&H To Add An EIFS Exclusion That InsCorp Believes Would Eliminate Its Indemnity Obligations As To Claims Raised In The Britannia Arbitration.

Following the adverse California Superior Court order issued in April 2007, InsCorp filed this federal action in October 2007,[2] seeking a declaratory judgment that would rewrite certain of InsCorp's insurance policies with H&H so that the policies would include the EIFS exclusion that InsCorp failed to include in the policies that it actually issued. *See* Complaint ¶¶ 24-31. Based solely on its request for reformation, InsCorp further requests that this Court declare that it has no duty to defend or indemnify H&H as to the claims raised by Britannia and Concrete Shell in the Britannia Arbitration. *See id.* ¶¶ 17, 33-43. InsCorp never told this Court about the prior California Superior Court decision.

InsCorp named both H&H and Concrete Shell, but not Britannia, as Defendants in this action.

### E. Concrete Shell's Counsel Expressly Requested That InsCorp Refrain From Seeking A Default.

On or about October 26, 2007, while the parties to the Britannia Arbitration were involved in settlement discussions, Concrete Shell's counsel became aware of this action and discussed InsCorp's Complaint with InsCorp's counsel. *See id.* ¶ 4-6.

During that conversation, InsCorp's counsel stated that H&H was no longer in business,

---

[2] The instant action was filed by the law firm of Roger, Scott & Helmer LLP, which did not represent H&H in the Britannia Arbitration.

and that H&H's former principal had been involved in a serious automobile accident that left him severely disabled. *See id.* ¶ 6. As such, InsCorp's counsel stated that it was unlikely that H&H would respond to InsCorp's Complaint. *See id.*

During that same conversation, Concrete Shell's counsel expressly requested that InsCorp refrain from seeking a default, stating that Concrete Shell intended to answer InsCorp's Complaint and protect Concrete Shell's interests, but that the process for doing so needed to be resolved. *See id.* ¶ 7. That same day, Concrete Shell's counsel also requested in writing that InsCorp refrain from seeking a default. *See id.* ¶ 8. InsCorp did not deny, or respond to, the request from Concrete Shell's counsel. *See id.* ¶ 9. Concrete Shell's counsel accordingly assumed that InsCorp would not pursue a default. *See id.*

InsCorp did not mention its communications with Concrete Shell's counsel or what it knew about Concrete Shell's position in its Request for Default or its Application for Default Judgment.

**F.  Concrete Shell's Defense Counsel In The Britannia Arbitration Referred InsCorp's Complaint To Concrete Shell's Coverage Counsel, With The Understanding That Coverage Counsel Would Respond To The Complaint.**

Concrete Shell's defense in the Britannia arbitration was handled by two different law firms that were appointed by two of Concrete Shell's different insurance companies. *See* Henningsen Decl. ¶ 10; Jones Decl. ¶ 4. One of these insurance companies retained coverage counsel for Concrete Shell, while the other did not. *See* Henningsen Decl. ¶ 11; Jones Decl. ¶ 5. On or about October 31, 2007, counsel for Concrete Shell in the Britannia Arbitration referred InsCorp's Complaint to a third-party claims adjuster and to Concrete Shell's coverage counsel, with the understanding that coverage counsel would respond to the Complaint. *See* Jones Decl. ¶ 5. On or about November 26, 2007, Concrete Shell's counsel sent a follow-up email to the third-party claims adjuster. *See id.*

**G.  Less Than One Week After Britannia Agreed To Settle With Every Party To The Britannia Arbitration Except For H&H, InsCorp Moved For An Entry Of Default Without Notifying Counsel.**

On January 17, 2008, Britannia agreed to settle the Britannia Arbitration with every party to that arbitration except for H&H. *See* Lode Decl. ¶ 4; Henningsen Decl. ¶ 12; Jones Decl. ¶ 6.

Any and all claims against H&H and H&H insurers were expressly carved out of the settlement. As part of the settlement, Concrete Shell agreed to assign to Britannia all of Concrete Shell's rights and claims against H&H and H&H's insurers – including Concrete Shell's additional insured rights against InsCorp. *See* Lode Decl. ¶ 4; Henningsen Decl. ¶ 12; Jones Decl. ¶ 6.

Less than one week later, on January 22, 2008, InsCorp requested entries of default against both Concrete Shell and H&H. In doing so, InsCorp did not notify counsel for either Concrete Shell or Britannia of its request, despite the fact that InsCorp was aware of such counsel's identities. *See* Henningsen Decl. ¶ 5; Jones Decl. ¶ 3; Lode Decl. ¶ 3. In seeking entry of default against Concrete Shell, InsCorp further ignored Concrete Shell's counsel's request that InsCorp refrain from pursuing a default. InsCorp also has not provided counsel for either Concrete Shell or Britannia with even a courtesy copy of either InsCorp's request for a default or InsCorp's Application for a Default Judgment. *See* Henningsen Decl. ¶ 5; Jones Decl. ¶ 3; Lode Decl. ¶ 3.

### H. Britannia Has Now Been Formally Assigned Concrete Shell's Rights And Claims Against H&H and H&H's Insurers, Including InsCorp.

Neither Britannia nor Concrete Shell's counsel were aware that this Court entered a default against Concrete Shell until January 29, 2008, when the entry of default was discovered by counsel for Britannia. *See* Lode Decl. ¶ 5; Henningsen Decl. ¶ 13; Jones Decl. ¶ 7. Britannia's counsel promptly notified Concrete Shell's counsel that defaults had been entered. *See* Lode Decl. ¶ 5.

After learning of the defaults, Concrete Shell's attorneys and Britannia's attorney discussed how to address the default that had been entered against Concrete Shell. *See* Hennignsen Decl. ¶ 15; Lode Decl. ¶ 6. Britannia ultimately agreed to seek relief from this Court pursuant to an assignment from Concrete Shell. *See* Lode Decl. ¶ 6; Hennignsen Decl. ¶ 15.

On April 24, 2008, Concrete Shell's counsel wrote to InsCorp's counsel requesting that InsCorp stipulate to a withdrawal of the default entered against Concrete Shell on the grounds that Concrete Shell's attorneys were never informed by InsCorp of the default and were not given an opportunity to protect Concrete Shell's interests. *See* Henningsen Decl. ¶ 16. Counsel for

InsCorp has not responded to this request. *See id.*

The assignment agreement pursuant to which Britannia was assigned Concrete Shell's rights and claims against H&H and H&H's insurers (the "Assignment Agreement") was not finalized until April 30, 2008. *See* Lode Decl. ¶ 7 & Ex. A; Henningsen Decl. ¶ 16; Jones Decl. 9. The settlement agreement between the settling parties to the Britannia Arbitration requires the approval of numerous parties and insurance companies, and is still being finalized. *See* Henningsen Decl. ¶ 15; Jones Decl. ¶ 9; Lode Decl. ¶ 9.

Now that the Assignment Agreement has been finalized and Britannia has been formally assigned Concrete Shell's rights and claims against H&H and H&H's insurers, Britannia seeks to pursue recovery under the InsCorp policies at issue.

## IV.   ARGUMENT

### A. Because Britannia's Substantial And Valuable Rights Under The InsCorp Policies Will Be Determined By This Action, And Because No Party Represents Britannia's Interests In This Action, Britannia Meets the Requirements for Intervention As Of Right.

FRCP 24(a) provides: "On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." FRCP 24(a) (emphasis added).

In applying FRCP 24(a), the Ninth Circuit uses a four-part test:

> (1) the application for intervention must be timely; (2) the applicant must have a 'significantly protectable' interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit.

*Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001).

In applying the four-part test under FRCP 24(a), "a district court is required to accept as true the non-conclusory allegations made in support of an intervention motion." *Southwest*

*Center*, 268 F.3d at 819 (citations omitted) (joining the "unanimous precedent" of circuits that have considered the issued).  "Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." *Id.* at 820.

FRCP 24 also "traditionally receives liberal construction in favor of applicants for intervention." *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003) (citation omitted). "Courts are guided primarily by practical and equitable considerations." *Id.*  Here, practically speaking, the Court will be unable to consider the merits of InsCorp's declaratory judgment action unless Britannia is allowed to appear.  Furthermore, it would be unjust for Britannia to lose valuable and substantial rights to recover under the InsCorp policies without having the opportunity to address the Court in this action.  Thus, as discussed below, Britannia meets all the requirements for intervention of right under FRCP 24(a)(2).[3]

### 1. Britannia's Motion To Intervene Meets The Liberal Requirements For Timeliness Under FRCP 24.

"In determining timeliness [of a motion to intervene, the Ninth Circuit] has stated that it looks to three factors: (1) the stage of the proceeding; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *United States v. State of Oregon*, 745 F.2d 550, 552 (9th Cir. 1984) (citations omitted).  "Mere lapse of time alone is not determinative." *Id.*  "[T]he critical inquiry is: what proceedings of substance on the merits have occurred?" *Mountain Top Condominium Assoc. v. Dave Stabbert Master Builder, Inc.*, 72 F.2d 361, 369 (3rd Cir. 1995) (citation omitted).

In *United States v. State of Oregon*, the State of Idaho petitioned to intervene as of right in litigation concerning fishing rights in the Columbia River.  *See State of Oregon*, 745 F.2d at 552. Although Idaho's petition to intervene was filed over a decade after the litigation began, the Ninth Circuit reversed the trial court and held that intervention should not have been denied as

---

[3] The facts discussed herein also qualify Britannia for permissive intervention under FRCP 24(b).

1 untimely. *Id.* at 552-553. According to the court, "Idaho gives changed circumstance – the
2 possibility of new and expanded negotiations – as a major reason for its attempted intervention at
3 this time. This change of circumstance, which suggests that the litigation is entering a new stage,
4 indicates that the stage of the proceeding and reason for delay are factors which militate in favor
5 of granting the application." *Id.* "The question of timeliness here thus turns upon the issue of
6 prejudice to the existing parties, which has been termed the most important consideration in
7 deciding whether a motion for intervention is untimely." *Id.* (internal quotations and citation
8 omitted). As Idaho "disclaimed any intent to relitigate matters" which had been previously
9 litigated, to raise any unrelated claims or to assert any claims against other states, there was "no
10 basis in the record for holding that the intervention would prejudice the existing parties because
11 of the passage of time." *Id.* at 533

12 Similarly, the assignment of Concrete Shell's interest in this action in favor of Britannia –
13 which was finalized less than a month ago – is the major reason for Britannia's request to
14 intervene at this time. Furthermore, Britannia does not seek to relitigate matters which have been
15 previously litigated in this Court: There has been no litigation on the merits of this action at all.
16 Nor does Britannia seek to raise unrelated claims. Britannia seeks only to do what Concrete Shell
17 and H&H could do if they were actually participating in this litigation at this time – oppose
18 InsCorp's motion for default judgment, move to set aside the default, and, if successful, litigate
19 this action on the merits. Thus, there is no prejudice to InsCorp.

20 **2.   Britannia Has A Significantly Protectable Interest In The Instant Lawsuit.**
21

22 The second part of the test for intervention as of right applied by the Ninth Circuit
23 examines whether Britannia has a significantly protectable interest relating to the transaction that
24 is the subject of the action. *See Southwest Center*, 268 F.3d at 818. In *Southwest Center*, the
25 Ninth Circuit concluded that the intervenor "made a prima facie showing . . . that he has a
26 substantial interest as a third-party beneficiary of the assurances and approval process set out in [a
27 contract] that could be affected if the [contract] were invalidated." *Id.* at 820. These third-party
28 beneficiary rights "create[d] sufficient legally protectable interests to support intervention as of

right." *Id.* Similarly, Britannia has a substantial interest in the policies at issue as the assignee of Defendant Concrete Shell. Britannia's potential recovery under the insurance policies between H&H and InsCorp creates sufficient legally protectable interests to support intervention as of right. *See id.*

### 3. Disposition Of The Instant Lawsuit Could Impair And Impede Britannia's Ability To Protect Its Legally Protectable Interests.

The third part of the test for intervention as of right applied by the Ninth Circuit examines whether this action may, as a practical matter, impair or impede Britannia's ability to protect its legally protectable interests. *See Southwest Center*, 268 F.3d at 818. In *Southwest Center*, the Ninth Circuit held that "invalidation of [a contract under which would-be intervenors had third party beneficiary rights] would both legally and practically affect" their interests. *Id.* at 822. Here, InsCorp seeks a declaration from this Court that its insurance contracts with H&H be rewritten to exclude EIFS coverage worth potentially over $1 million to Britannia. As in *Southwest Center*, the injunctive relief sought here by InsCorp "would both legally and practically affect" Britannia's interests because InsCorp seeks both to rewrite the insurance policies to include an EIFS exclusion and a declaration that, as rewritten, the policies create no duty to cover Britannia's claims in the Britannia Arbitration. As a practical matter, Britannia could lose over $1,000,000 in coverage.

### 4. The Existing Parties Do Not Adequately Represent Britannia's Interests.

The final part of the test for intervention as of right applied by the Ninth Circuit examines whether the existing parties adequately represent Britannia's interests. *See Southwest Center*, 268 F.3d at 818. "In determining whether a would-be intervenor's interests will be adequately represented by an existing party, courts consider: (1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments;" and (3) whether the intervenor offers any necessary elements to the proceedings that the other parties would neglect. *Id.* at 822. "[T]he burden of showing inadequacy is 'minimal' and the applicant need only show that representation

1    of its interests by existing parties 'may be' inadequate." *Id.* at 823 (citation omitted).

2    In this action, the existing parties do not adequately represent Britannia's interests.
3    Plaintiff InsCorp is adverse to Britannia's interests; defendant H&H is no longer in business, with
4    a former principal who is severely disabled; and defendant Concrete Shell is a dissolved
5    corporation that has assigned its rights to Britannia. Neither H&H nor Concrete Shell have
6    responded to InsCorp's Complaint, which seeks to preclude Britannia's recovery for defects they
7    caused. In short, none of the present parties have interests aligned with Britannia's and neither of
8    the Defendants are capable and willing to make Britannia's arguments. Thus, unless Britannia is
9    allowed to appear, no one will protect Britannia's interests in this action. Britannia's presence is
10   necessary to a determination of this action on its merits.

11   **B.     As The Transferee Of Concrete Shell's Interest In This Action, Britannia May, In the Alternative, Substitute For Concrete Shell In This Action.**
12

13   FRCP 25(c) provides: "If an interest is transferred, the action may be continued by or
14   against the original party unless the court, on motion, orders the transferee to be substituted in the
15   action or joined with the original party." "A motion under this rule is directed to the sound
16   discretion of the court, taking into account the exigencies of the situation." *First American*
17   *Savings Bank v. Westside Federal Savings & Loan Assoc.*, 639 F. Supp. 93, 95-96 (W.D. Wash.
18   1986) (citation omitted).

19   In *First American*, the named defendant, although not "formally liquidated and dissolved,
20   for the practical purposes of this suit, it ha[d] ceased to exist." *Id.* at 96. "Upon consideration of
21   the circumstances," the court concluded that the transferee of the named defendant's interests
22   "should be substituted as party defendant" under FRCP 25(c). *Id.*

23   As in *First American*, named defendants H&H and Concrete Shell have "ceased to exist"
24   for practical purposes of this lawsuit. Concrete Shell has been formally dissolved, its principal
25   being now seventy-five years-old and retired; and H&H is no longer in business, its principal
26   having suffered a serious car accident that left him severely disabled. Furthermore, Concrete
27   Shell has transferred its interest in this lawsuit to Britannia by assignment. Given these

28

circumstances, it would be appropriate to substitute Britannia for Concrete Shell in this action.[4] To refrain from exercising the Court's discretion to allow Britannia to substitute for Concrete Shell would allow InsCorp to escape its obligations under the insurance policies it issued, without a ruling on the merits.

## V.   CONCLUSION

For the foregoing reasons, Britannia respectfully requests that this Court order that Britannia be allowed to intervene in this action, or, in the alternative, substitute for Concrete Shell.

Dated: May 29, 2008

FOLGER LEVIN & KAHN LLP

/s/ Amy L. Kashiwabara
Attorneys for Britannia Pointe Grand Limited Partnership, Assignee of Defendant Concrete Shell Structures, Inc.

17035\3008\603238.5

---

[4] InsCorp acknowledges that "[u]nder FRCP Rule 25(c), Britannia may pursue its rights in the name of CSS, or it may substitute itself as a party into the action based upon its transferred right through a properly noticed motion." InsCorp's Opposition to Britannia's Motion to Set Aside Default, at 6-7.