Norman J. Roger, Esq. SBN 62554
Patricia M. Fama, Esq. SBN 138362
Roger, Scott & Helmer LLP
1001 Marshall Street, Suite 400
Redwood City, Ca. 94063-2000
Telephone: 650-365-7700
Facsimile: 650-365-0677

#133008
Attorneys for Plaintiff
INSURANCE CORPORATON OF NEW YORK

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INSURANCE CORPORATION OF NEW YORK,<br><br>   Plaintiff,<br><br>vs.<br><br>H & H PLASTERING, INC., CONCRETE SHELL STRUCTURES, INC. ; and DOES 1 through 10, inclusive,<br><br>   Defendants. | Case No. C 07-05214 JL<br><br>OPPOSITION MEMORANDUM OF INSURANCE CORPORATION OF NEW YORK'S TO BRITANNIA POINTE GRAND LIMITED PARTNERSHIPS MOTION TO INTERVENE OR, IN THE ALTERNATIVE, SUBSTITUTE FOR ASSIGNOR DEFENDANT CONCRETE SHELL<br><br>DATE: July 17, 2008<br>TIME: 8:00 a.m.<br>DEPT: 9<br>JUDGE: William Alsup |

OPPOSITION MEMORANDUM OF INSURANCE CORPORATION OF NEW YORK'S TO BRITANNIA POINTE GRAND LIMITED PARTNERSHIPS MOTION TO INTERVENE OR, IN THE ALTERNATIVE, SUBSTITUTE FOR ASSIGNOR DEFENDANT CONCRETE SHELL

Insurance Corporation of New York's ("InsCorp") Opposes Britannia Point Grand Limited Partnership's ("Britannia") Motion to Intervene, or in the alternative, to Substitute in place of is Assignor, Concrete Shell Structures ("CSS").

Britannia seeks leave to intervene, or in the alternative, to substitute for its assignor CSS in this action. By this request, Britannia seeks to undue the knowing volitional act of CSS in allowing the default to be taken against it. Moreover, equity runs counter to Britannia in that it took the assignment with full knowledge of CSS's status in this action. Still, Britannia failed to offer any evidence as to CSS's position as to the default or that of its unnamed coverage counsel that is purported to have allowed the default to be taken. Even so, and after four months time, Britannia seeks to undue the actions of its assignor. Additionally, Britannia seeks to invoke the default of H&H Plastering, Inc. ("H&H") to bolster its position that it should be allowed to come into this action to also right the default of H&H.

Equity and law are against Britannia. The motion should be denied.

### Assignment – Validity

Britannia's Motion is premised upon the validity of the assignments from CSS. CSS is a dissolved corporation. Records of the California Secretary of State confirm the 2003 dissolution. (See Request for Judicial Notice ("RJN")). A dissolved corporation continues to exist for the purposes of winding up its affairs including defending suits against it. (Cal. Corp. Code 210) In this instance, it can only be concluded that CSS's efforts to wind up its affairs included allowing this suit to go to default. CSS purposefully and volitionally allowed default to be entered against it. Mr. Cameron acknowledged receipt of correspondence advising that default would be taken if CSS did not respond to the complaint. Mr. Cameron's acknowledgment expressed no intent to respond to the complaint. (RJN, Roger Dec. at ¶¶13-14)

Britannia took an assignment from CSS with knowledge of the present suit and the purposeful default CSS allowed. CSS elected to ignore the suit and allow default to be taken. Britannia is hobbled by CSS's action and status. CSS chose to conduct this lawsuit on these

1
**OPPOSITION MEMORANDUM OF INSURANCE CORPORATION OF NEW YORK'S TO BRITANNIA POINTE GRAND LIMITED PARTNERSHIPS MOTION TO INTERVENE OR, IN THE ALTERNATIVE, SUBSTITUTE FOR ASSIGNOR DEFENDANT CONCRETE SHELL**

terms and Britannia cannot undo what CSS did.

The conscious volitional act by CSS to allow default to be taken cannot be ignored. Nor can that of its counsel. It can only be assumed that CSS and its counsel chose to wind up the affairs of the corporation by allowing default. This can be the only conclusion. If it were otherwise, surely CSS or its coverage counsel would have put evidence before the Court to explain its actions or offer explanations of why now, after four months and because of the assignment, it was never CSS's intention to allow default to be entered. They do not. Instead, CSS is silent on the topic and its "coverage counsel" who was purportedly charged with responding to the action is not identified and is merely referred to. If in fact the unnamed counsel took action contrary to CSS's intentions, some word from CSS would be given.

**Britannia's Own Actions Do not Support Intervention or Substitution**

Britannia unquestionably had knowledge of the default prior to accepting the assignment. Britannia discussed the default with CSS's counsel and with knowledge of the default, Britannia took the assignment and ultimately agreed to seek relief from this Court pursuant to the assignment from Concrete Shell. (Lode Dec., ¶6, 2:15-18) If there were any representations or understandings as to whether the assignment could infuse Britannia with authority to challenge the default Britannia does not offer them for consideration. Britannia knew of the default in January 2008, took an assignment four months after default was entered and now seeks relief from its assignor's decisions. Equity confirms that Britannia cannot now claim foul. Prior knowledge of an assignors' status is a factor to consider in evaluating the scope of an assignment. See *Truck Ins. Exchange v. Superior Court* (1997) 60 Cal.App.4th 342 at 347; *Reliance Insurance Company v. Superior Court* (2000) 84 Cal.App.4th at 388.

Britannia describes in its moving papers its assignor's capacity relative to the time the default was entered as "essentially incapacitated" (Britannia Brief 3:6) and states that (H&H and) CSS have "ceased to exist for all practical purposes" (Britannia Brief, 12:23-24). Britannia, it must be assumed, utters these characterization as an excuse for CSS allowing default to be

entered. What is missing from Brittania's statement is an explanation how the purported capacity of CSS became clarified prior to the assignment. If it had not Britannia raises challenges to the validity of the assignment.

Britannia cannot use CSS's capacity as both a shield and sword in this matter. If CSS was "essentially incapacitated" and without capacity to contract, the assignment is invalid and default against the dissolved corporation must stand. Britannia cannot rely upon the incapacity of CSS as the basis to seek relief from default. Most likely, CSS knowingly decided not to respond to the suit. The only word from CSS on the topic was by voicemail follow receipt of a letter warning that default would be taken if a response was not made. CSS voicemail message confirmed receipt of the letter and gave no inference that it intended to respond to the suit. From this it can only be concluded that CSS opted to allow default to be taken as part of its winding up. Any other conclusion is without factual basis.

As to the discussions about the default between CSS defense counsel and Britannia's counsel, those discussions offer no basis for relief. The previously submitted declarations of counsel confirm full knowledge of the default and a general acceptance that unnamed coverage counsel was going to address the issue, but did not, and that once the assignment was in place, Britannia would take up the cause. No mention is made that CSS's - the party to this action- preferred default not be entered.

Finally, the language of the assignment itself is instructive. The assignment is entered into pursuant to a January 17, 2008 settlement which has not yet been finalized as of May 1, 2008. (Lode Dec., at ¶4 and 7) The April 30, 2008 assignment makes no mention of CSS's default in this action although it does provide that CSS must cooperate in giving declarations that may assist Britannia in the present action. ( Lode Dec., at ¶2) The assignment requires CSS to pay to Britannia $7,500 in addition to those sums required to be paid in the Settlement Agreement as well as another amount, up to another $7,500 for "attorney's fees and costs that may be incurred in connection with [this action]" ( Lode Dec., at ¶4) The assignment ignores the default or the

implications of it entirely.

### H&H's Default Has No Bearing on Britannia's Position

Britannia raises the issue of H&H's status and its default perhaps to add strength to its argument. (See Opening Brief 10:16-19), 12:23 et. seq.) H&H position does not aid Britannia. H&H is a suspended corporation. It cannot sue, defend or appeal from an adverse decision. H&H's suspension cannot be abated by an assignment for an assignee of a suspended corporation cannot do what the assignor cannot. (*Cleveland v. Gore Bros.* (1936) 14 Cal.App.2d 681, 682.

### Request for Intervention or Substitution

Prefatory to focusing on the request for intervention or substitution Britannia's offers background comments. InsCorp responds to each in turn.

#### 1. H&H Liability

Britannia suggests that H&H is responsible to Britannia for defective construction. There is no evidence before the Court that there has been any liability determination. Britannia's mere expectancy of a determination of liability against H&H does not support either intervention or substitution in place of CSS.

#### 2. InsCorp Did Defend H&H

InsCorp did defend H&H subject to a reservation of rights and has shared in H&H's defense expenses since the arbitration proceeding commenced. Britannia's effort to paint InsCorp as a bad actor is without basis and should not impact the Court's evaluation and determination of this motion. As to Britannia's reference to the State Court proceeding, Britannia has put before the Court incomplete and inaccurate information in relation to that proceeding which was between mutual insurers of H&H. The State Court proceeding did not consider the issue of reformation of the two renewal policies. The State Court proceeding did resolve with a finding of the potential for coverage under the InsCorp's policies based on the evidence before the Court.

### 3. The State Court Proceeding and The Coverage Action

Distinguishable from the Superior Court action, in this present proceeding, InsCorp seeks reformation of two of the four policies it issued to H&H. By way of background, the initial policy InsCorp issued to H&H did physically contain the Exterior Insulation Finish System ("EIFS") exclusion when it was assembled and issued in accordance with underwriting guidelines and the parties' intent. The two renewal policies that followed did not. The omission of the EIFS endorsement from the two renewal policies was contrary to the parties' intention and underwriting guidelines for policy issuance. To suggest that these issues were addressed in the State Court's proceedings is error and the Court should not be persuaded by the unfounded and unsupported assertions that the State Court proceeding has substantially considered the issue of reformation raised herein.

### 4. Britannia and CSS Actions

Britannia acknowledges that CSS or its counsel in the underlying arbitration proceeding knew about the pending coverage action and was served with a complaint months in advance of the entry of default. Britannia offers declarations from CSS's defense counsel which confirms their early knowledge of the action. One of these counsel, Craig Jones, confirmed that upon receipt of the coverage complaint, he forwarded it to coverage counsel on behalf of CSS who was expected to respond. No explanation is offered as to why that counsel did nothing to protect CSS. Coverage counsel is not identified.

Moreover, there is no evidence before the Court to suggest that CSS' counsel requested InsCorp refrain from proceeding with this action, including the default of CSS. Evidence confirms there was no request. Even so, Britannia's effort to make much out of the timing of the entry of default has no bearing on this determination.

Britannia and CSS knew of the default against CSS in January 2008. "After learning of the defaults, Concrete Shell's attorney's and Britannia's attorney discussed how to address the default that had been entered against Concrete Shell...Britannia ultimately agreed to seek relief

5
OPPOSITION MEMORANDUM OF INSURANCE CORPORATION OF NEW YORK'S TO BRITANNIA POINTE GRAND LIMITED PARTNERSHIPS MOTION TO INTERVENE OR, IN THE ALTERNATIVE, SUBSTITUTE FOR ASSIGNOR DEFENDANT CONCRETE SHELL

from this Court pursuant to an assignment from Concrete Shell." (Britannia's Memorandum, 7:21-24) Britannia is now bound by its own actions and that of its assignee, CSS.

### Intervention Should Be Denied

Britannia is seeking to intervene in this action as a matter of right pursuant to FRCP 24(a) and urges the Court to accept as true the non-conclusory allegations made in support of its motion. A party claiming a right to intervene based on an interest in the litigation must establish (1) an interest in the subject matter of the pending litigation; (2) a substantial risk that the litigation will impair the interest and (3) that existing parties do not adequately protect the interest. All three factors must be met. See *Gonzales v. Arizona*, 485 F.3d 1041, 1052 (9th Cir. 2007).

Britannia's assignment only gives it rights that CSS has. When the assignment was given in April 2008 CSS had allow its rights to be defined by its default. Those wee the rights CSS assigned. Britannia knowingly accepted the assignment. The assignment offered no provision as to how to respond to the default, if at all. Instead the topic was addressed between counsel without CSS's input. As to the adequacy of the parties to the action protecting Britannia's right, Britannia's rights are only a mere expectancy. H&H cannot offer protection to Britannia under its suspended status. CSS's tactical decision allowing default against it confirm it did not intend to protect its own rights or anyone else's.

The Ninth Circuit, on facts strikingly similar to this case, denied a request for intervention as this Court should do here. In *Bernal v. Educational Credit Management Corp.*(9th Cir. 2000) 207 F. 3d 595, ECMC was the assignee of a loan agreement that Bernal attempted to discharge in bankruptcy. The assignor, CSAC, had not answered the complaint and entry of default had been taken against CSAC. As Britannia has here, ECMC filed a motion to intervene and set aside the default. The Court held that

> "ECMC whole question to obtain intervention ... in the adversary
> proceeding was misguided. It was neither a third party which had

some interest in property that might somehow be impaired if it could not intervene ... nor a party whose interest would somehow be impaired if those who were before the Court proceeded without it." Id. at 597.

The Court quoted approvingly the bankruptcy (trial) court which said that "permitting intervention would open the floodgates to a possible abuse ... by allowing parties to sleep on their rights, neglect their duties with respect to litigation, and thereafter avoid the consequences of such conduct by merely assigning the matter to a third party after defaulting. If the third party is allowed to acquire the subject matter and to intervene after the original defendant defaults, the third party is less likely to pursue its remedies against the truly culpable party ... justice dictates that the third party be bound by the representation of the assignor in the litigation through the time of the assignment." Id at 597-98.

Likewise here, CSS was in default when the assignment was given. Without regard to the validity of the assignment or its enforceability Britannia is effectively seeking to intervene so that it may undue CSS earlier litigation strategy. To allow intervention under these circumstances would be an abuse. If CSS's did not purposefully allow default to be taken against it, it instead knowing slept on its rights and neglected its duties with respect to this litigation. To allow Britannia's intervention would allow CSS and Britannia to avoid the consequences of CSS's conduct through the assignment. This should not be allowed.

In addition, Britannia has waited over 4 months to take any action to protect its purported rights as against InsCorp. The evidence before the Court confirms that Britannia knew of the default taken against CSS in January 2008 but did nothing to address the default

and took an assignment with full knowledge of the status of its assignee in relation to this action. Britannia's plea is that it wants to pursue recover against InsCorp and that it would be "unjust for Britannia to lose valuable and substantive rights to recover under the InsCorp policies without having the opportunity to address the Court in this action." (Britannia Brief 8:9-10 and 9:9-10) To allow Britannia intervene to address the Court would provide Britannia a method to abuse the procedural outcome of its assignee's action. This should not be allowed

### Substitution Must Be Denied

The Court is within its discretion to deny the request for substitution dependent upon the exigencies of the situation. (See *McComb v. Row River Lumber Co.* (9th Cir. 1949) 177 F.2d 129. Brittania has offered no exigencies.

In *First American Savings Bank v. Westside Fed. Savigns & Loan Assoc.* (W.D. Wash. 1986) 639 F.Supp. 93 cited by Brittania the party seeking to substitute into the action was a receiver appointed by the Federal Home Loan Bank Board. The receiver filed a Motion to Substitute as well as a motion to discuss. A default was not before the Court.

In *Bernal* supra, the Court explained:

> " ECMC, it seems, does not wish to confront the default by CSAC or attempt to explain the default ... rather it has intoned a monody about how difficult it was for ECMC to proceed in a timely fashion ... nevertheless, it does not even begin to explain why CSAC, its predecessor, allowed its default to be taken, and that is what ECMC would have to do were it allowed to substitute into this action now that it has been assigned CSAC's rights." Id. at 599. (Emphasis in original.)

The Bernal Court further noted:

> [ECMC] ignores the undisputed fact of record that [it] was not a party to the original suit but acquired whatever rights it may have in the property, if any, only by virtue of the assignment from [CSAC], and must therefore stand in [its] shoes with respect to all phases of the litigation. The fact that [CSAC's] litigation may have impaired or adversely affected the rights of [ECMC] under the assignment would

not justify our disturbing all prior orders and decrees entered in this controversy and unfavorable to [ECMC] which were binding upon [CSAC] when made." Id. at 598, quoting *Deauville Assoc. v. Murrell*, 180 F. 2d. 275, 277 (5th Cir. 1950).

Under the facts before the Court neither exigency nor discretion support substitution by Brittania. While CSS is in default, neither CSS nor an assignee can file any paper other than to challenge entry of default. Default was entered against CSS in January 2008 and the only relief available to CSS is under FRCP 55.

Britannia's motion must be denied.

DATED: June 26, 2008

ROGER, SCOTT & HELMER

By: /s/ Patricia M. Fama
Patricia M. Fama
Attorneys for Plaintiff
INSURANCE CORPORATION OF NEW YORK

9

OPPOSITION MEMORANDUM OF INSURANCE CORPORATION OF NEW YORK'S TO BRITANNIA POINTE GRAND LIMITED PARTNERSHIPS MOTION TO INTERVENE OR, IN THE ALTERNATIVE, SUBSTITUTE FOR ASSIGNOR DEFENDANT CONCRETE SHELL