FOLGER LEVIN & KAHN LLP
Wesley D. Hurst (CSB No. 127564, whurst@flk.com)
Amy L. Kashiwabara (CSB No. 210562, akashiwabara@flk.com)
Embarcadero Center West
275 Battery Street, 23rd Floor
San Francisco, CA 94111
Telephone: (415) 986-2800
Facsimile: (415) 986-2827

Attorneys for Britannia Pointe Grand
Limited Partnership, Assignee of Defendant
Concrete Shell Structures, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| INSURANCE CORPORATION OF NEW YORK,<br><br>Plaintiff,<br><br>v.<br><br>H&H PLASTERING, INC.; CONCRETE SHELL STRUCTURES, INC.; and DOES 1 though 10, inclusive,<br><br>Defendants. | Case No. CV 07-05214 WHA<br><br>**ASSIGNEE BRITANNIA POINTE GRAND LIMITED PARTNERSHIP'S REPLY IN SUPPORT OF MOTION TO INTERVENE, OR, IN THE ALTERNATIVE, SUBSTITUTE FOR ASSIGNOR DEFENDANT CONCRETE SHELL**<br><br>Date:          July 17, 2008<br>Time:          8:00 a.m.<br>Courtroom:  9<br>Judge:         Hon. William Alsup |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .................................................................................................................. 1

II.   ARGUMENT ........................................................................................................................ 1

    A.   Britannia Meets The Requirements For Intervention As A Matter Of Right Under FRCP 24(a) ............................................................................................... 1

    B.   In The Alternative, The Court Should Allow Britannia To Substitute In For Defendant Concrete Shell Under FRPC 25(c) ....................................................... 2

    C.   Equity Does Not Favor InsCorp ................................................................................ 3

    D.   No Default Had Been Entered When Britannia Agreed To Accept Concrete Shell's Assignment ............................................................................................... 5

    E.   InsCorp Has Already Conceded That Britannia May Appear In This Action ........ 6

III.   CONCLUSION ................................................................................................................... 7

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bernal v. Educational Credit Mgmt. Corp.*,
    207 F.3d 595 (2000) .................................................................................................. 6, 7

*First American Savings Bank v. Westside Federal Savings & Loan Assoc.*,
    639 F. Supp. 93 (W.D. Wash. 1986) .............................................................................. 3

*Mountain Top Condominium Assoc. v. Dave Stabbert Master Builder, Inc.*,
    72 F.2d 361 (3rd Cir. 1995) ........................................................................................... 2

*Reliance Ins. Co. v. Superior Court*,
    84 Cal. App. 4th 383 (2000) .......................................................................................... 4

*Southwest Center for Biological Diversity v. Berg*,
    268 F.2d 810 (9th Cir. 2001) ......................................................................................... 2

*Sprint Comm. Co., L.P. v. APCC Services, Inc.*,
    554 U.S., No. 07-552, slip op. at 5 (June 23, 2008) ...................................................... 2

*Truck Ins. Exchange v. Superior Court*,
    60 Cal. App. 4th 342 (1997) .......................................................................................... 4

## OTHER AUTHORITIES

Fed. R. Civ. Proc. 24 ............................................................................................... 1, 2, 3, 6
Fed. R. Civ. Proc. 25 .................................................................................................. 1, 3, 6, 7
Fed. R. Civ. Proc. 55 ........................................................................................................... 6

## I. INTRODUCTION

This matter arises from defective construction at a building owned by Britannia Pointe Grand Limited Partnership ("Britannia") that was caused by named defendant H & H Plastering Inc. ("H&H"). H&H was insured by plaintiff Insurance Corporation of New York ("InsCorp"), which seeks by its Complaint a declaration from this Court that the policies it issued to H&H be "reformed" to exclude coverage for damages suffered by Britannia, which are potentially in excess of $1,000,000. In its Complaint, InsCorp named as defendants only suspended corporation H&H and its general contractor, Concrete Shell Structures, Inc. ("Concrete Shell" or "CSS"), a dissolved corporation. InsCorp chose not to name Britannia as a defendant even though, in its Opposition, InsCorp does not dispute that Britannia is the real party in interest. InsCorp then sought a default and default judgment – not only without notifying the attorneys who InsCorp knew were counsel for Concrete Shell but also in contravention of an express request from Concrete Shell's counsel that InsCorp not seek a default. Moreover, InsCorp did not give notice of its requests for default and default judgment to attorneys who InsCorp knew represented Britannia.

InsCorp urges this Court not to allow Britannia to be heard and instead to issue a declaration absolving it of any liability to Britannia without any hearing on the merits. InsCorp takes this position even though it does <u>not</u> dispute any of the facts that establish that Britannia meets the requirements for intervention as a matter of right under the Federal Rule of Civil Procedure ("FRCP") 24(a). Alternatively, the Court should permit Britannia to substitute in for named defendant Concrete Shell as Concrete Shell's assignee pursuant to FRCP 25(c).

## II. ARGUMENT

### A. Britannia Meets The Requirements For Intervention As A Matter Of Right Under FRCP 24(a).

In its Opposition, InsCorp does not dispute the facts that establish that Britannia meets the requirements for intervention as of right under FRCP 24(a).

<u>First</u>, InsCorp does not dispute that Britannia is now the real party in interest to the insurance policies at issue or that the coverage is potentially worth more than $1,000,000.

Because InsCorp seeks a declaration from this Court that it has no duty to cover claims raised by Britannia based on damages to Britannia caused by InsCorp's insured H&H (Compl., ¶ 40), it is undisputed that Britannia has "an interest relating to the property or transaction that is the subject of the action." *See* FRCP 24(a).

Second, InsCorp does not dispute that if InsCorp obtains from this Court the declaration it seeks, Britannia's ability to recover from InsCorp under the policies will be both legally and practically impaired. Thus, it is undisputed that "disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." *Id.*

Third, InsCorp does not contend that there is an existing party that adequately represents Britannia's interests. As neither named defendant H&H (a suspended corporation with a severely disable former principal) nor named defendant Concrete Shell (a dissolved corporation that has assigned its rights to Britannia) has appeared or will appear in this action, it is undisputed that there are no "existing parties that adequately represent [Britannia's] interest." *Id.*[1]

By failing to dispute these facts or to distinguish *Southwest Center for Biological Diversity v. Berg*, 268 F.2d 810 (9th Cir. 2001) (allowing third party beneficiary of a contract to intervene as of right because it had a substantial interest that would be affected if the contract were invalidated),[2] InsCorp has conceded facts establishing that "the court must permit" Britannia to intervene as of right pursuant to FRCP 24(a).

**B.    In The Alternative, The Court Should Allow Britannia To Substitute In For Defendant Concrete Shell Under FRPC 25(c).**

It is undisputed that Britannia is the assignee of the named defendant Concrete Shell.[3] As

---

[1] In addition, InsCorp does not dispute that Britannia's motion to intervene is timely under the liberal requirements for timeliness under FRCP 24. *See Mountain Top Condominium Assoc. v. Dave Stabbert Master Builder, Inc.*, 72 F.2d 361, 369 (3rd Cir. 1995) ("[T]he critical inquiry is: what proceedings of substance on the merits have occurred?").

[2] The fact that the party granted intervention in *Southwest* was a third-party beneficiary did not make that party's interest a "mere expectancy," as argued without support by InsCorp. [Opp'n, at 6:16-17.]

[3] As Concrete Shell's assignee, Britannia could also bring its own action against InsCorp. *See Sprint Comm. Co., L.P. v. APCC Services, Inc.*, 554 U.S., No. 07-552, slip op. at 5 (June 23, 2008) ("Assignees of a claim, including assignees for collection, have long been permitted to (Continued…)

such, Britannia should be allowed to substitute in for Concrete Shell pursuant to FRCP 25(c). *See First American Savings Bank v. Westside Federal Savings & Loan Assoc.*, 639 F. Supp. 93, 95-96 (W.D. Wash. 1986) (where named defendant had ceased to exist for practical purposes, the court substituted in the transferee of the named defendant's interests).

### C. Equity Does Not Favor InsCorp.

InsCorp incorrectly argues that "equity runs counter to Britannia." [Opp'n, 1:6-7.] As an initial matter, courts are directed to weigh equitable considerations when exercising their discretion under FRCP 24(b) (permissive intervention), not under FRCP 24(a) (intervention of right). Regardless, equity does not favor InsCorp over Britannia. As set forth in the factual background in Britannia's opening memorandum and the Declarations of Eric M. Lode, David S. Henningsen, and Craig S. Jones, submitted in Opposition to InsCorp's Application for Default Judgment ("Lode Decl.," "Henningsen Decl.," and "Jones Decl.," E-filed Documents 29, 30, and 31), the following facts are clear:

First, InsCorp insured H&H, the company whose defective installation of caulk joints and EIFS at a building owned by Britannia caused water intrusion and resulting damages to Britannia. These defects will cost an estimated $1,000,000 or more to repair.

Second, for two-and-a-half years, InsCorp refused to defend H&H in the arbitration related to construction defects at the Britannia building (the "Britannia Arbitration"). InsCorp only began defending H&H when forced to do so by virtue of a summary adjudication order from the Superior Court for the County of San Mateo, in an action brought by another of H&H's insurers. In that state court action, as in this action, InsCorp argued "that the 1999 and 2000 policies should be reformed to include the EIFS exclusions," such that H&H's work on the Britannia building would not be covered by the InsCorp policies. The California Superior Court rejected InsCorp's argument in its entirety. [Order, at 3:18, 24, E-filed Document 49.]

Third, having had its arguments regarding the 1999 and 2000 policies rejected by the

---

bring suit."). However, allowing Britannia to intervene or substitute in this pending action promotes judicial economy and efficiency.

1   California Superior Court, InsCorp filed the instant action seeking a contrary declaration from

2   this Court. [Compl., at 9:20-10:12.] InsCorp never told this Court about the prior California

3   Superior Court's decision against InsCorp on some of the same issues raised by its Complaint.[4]

4   Furthermore, knowing that subcontractor H&H is a suspended corporation and that general

5   contractor Concrete Shell is a dissolved corporation, InsCorp named only H&H and Concrete

6   Shell (and not real party in interest Britannia) as defendants.[5]

7          Fourth, having been forced to defend H&H in the Britannia Arbitration, InsCorp, unlike

8   every other insurance company defending the parties responsible for the construction defects at

9   the Britannia building, refused to settle with Britannia as part of the global settlement.

10         Fifth, the week after having failed to settle with Britannia as part of the global settlement,

11  InsCorp requested entry of a default in this matter against both Concrete Shell and H&H.

12  InsCorp did so in contravention of an express request from Concrete Shell's counsel that InsCorp

13  refrain from doing so and without disclosing its communications with Concrete Shell's counsel to

14  this Court. *See* Henningsen Decl. ¶¶ 4-8. Furthermore, InsCorp did not provide any counsel for

15  Concrete Shell or Britannia with even a courtesy copy of InsCorp's request for a default, despite

16  having actual knowledge of the names and contact information of such counsel. *See* Henningsen

17  Decl. ¶ 5; Jones Decl. ¶ 3; Lode Decl. ¶ 3. Given these facts as established by properly submitted

18  declarations, it is difficult to fathom the basis (and none is given) for InsCorp's contentions that

19  Concrete Shell "purposefully and volitionally allowed default to be entered against it" and that

---

[4] In its Opposition, InsCorp contends that Britannia "put before the Court incomplete and inaccurate information" in relation to the state court proceedings, but InsCorp did not submit anything to "complete" or render more "accurate" the information before this Court. [*See* Opp'n, at 4:22-23.]

[5] Contrary to InsCorp's argument, the fact that H&H and Concrete Shell can and will not defend themselves supports Britannia's motion for intervention, as established by the authorities cited by InsCorp. *See, e.g., Truck Ins. Exchange v. Superior Court*, 60 Cal. App. 4th 342, 349 (1997) (intervention allowed under California statute because allowing would-be intervenor "to intervene and putting [plaintiffs] to their proof will simply bar [plaintiffs] from unilaterally obtaining a judicial determination that their policies are rescinded"); *Reliance Ins. Co. v. Superior Court*, 84 Cal. App. 4th 383, 388 (2000) (if would-be intervenor "does not intervene in the instant case and raise defenses to [plaintiffs'] claims, the [plaintiffs] will be able to obtain an unopposed default judgment . . . This result would have the effect of punishing [would-be intervenor] for something it did not do."). Note, unlike the assignor in *Truck Ins. Exchange* and the would-be intervenor's insured in *Reliance Ins. Co.*, Concrete Shell is not a suspended corporation.

"[m]ost likely, CSS knowingly decided not to respond to the suit." [Opp'n, at 1:20-22, 3:7-9.] Contrary to InsCorp's claim that "there is no evidence before the Court to suggest that CSS' counsel requested InsCorp refrain from proceeding with this action, including the default of CSS" (Opp'n, at 5:20-22), Britannia has submitted a declaration from the Concrete Shell counsel who specifically requested orally, and in writing, that InsCorp not seek a default. [Henningsen Decl. ¶¶ 7-8.] The declarations submitted by Britannia further establish that InsCorp sought a default anyway, without giving notice to any counsel for Concrete Shell, including the attorney who had asked that InsCorp refrain from seeking a default.

Having sought at every turn to avoid responsibility to its insured and to Britannia (the party injured by its insured's defective construction), InsCorp now seeks a declaratory judgment from this Court absolving InsCorp from its contractual obligations to H&H, Concrete Shell and Britannia, without any hearing on the merits. InsCorp's desire to hide the weakness of its claim on the merits from the Court is incompatible with the interests of justice. Thus, equity does not favor InsCorp.

**D.    No Default Had Been Entered When Britannia Agreed To Accept Concrete Shell's Assignment.**

InsCorp incorrectly suggests that Britannia had knowledge of the default entered against Concrete Shell at the time that Britannia agreed to accept from Concrete Shell an assignment of Concrete Shell's rights and claims against H&H and H&H's insurers, including InsCorp. [*See* Opp'n, at 1:7, 24-25, 2:12-13.] The undisputed fact is that Britannia agreed to accept the assignment from Concrete Shell on January 17, 2008, which was five days <u>before</u> InsCorp moved for entries of default on January 22, 2008, and one week before the Clerk entered defaults on January 24, 2008. [*See* Lode Decl. ¶ 4; Henningsen Decl. ¶ 12; Jones Decl. ¶ 6; *see also* Opp'n, at 3:19-21 (acknowledging that the assignment was part of the settlement agreed to on January 17, 2008).][6]

---

[6] InsCorp suggests that it is somehow relevant that the assignment agreement between Britannia and Concrete Shell does not expressly reference the defaults. [*See* Opp'n, at 3:19-4:1.] InsCorp fails to explain why this is purportedly relevant, or to cite any authority that supports the relevance of this issue.

**E.     InsCorp Has Already Conceded That Britannia May Appear In This Action.**

In its Opposition, InsCorp claims that "[w]hile CSS is in default, neither CSS nor an assignee can file any paper other than to challenge entry of default." [Opp'n, at 9:5-6.] However, in opposing Britannia's motion to set aside the default entered against Concrete Shell, InsCorp argued that "[u]nder FRCP 25(c), Britannia may pursue its rights in the name of CSS, or it may substitute itself as a party to the action based upon its transferred right through a properly noticed motion." [InsCorp's Opp'n to Britannia's Mot. to Set Aside Default, 6:28-7:2, E-filed Document 42.] InsCorp cannot have it both ways. Britannia has now moved to intervene or substitute and moved to set aside the default, as suggested by InsCorp. InsCorp has no basis to complain.

As noted above, InsCorp acknowledges that under FRCP 55, Concrete Shell could move to set aside the default. Thus, Britannia's motion to set aside the default is in accord with the Ninth Circuit's directive that an assignee is "bound by what ha[s] gone on before." *Bernal v. Educational Credit Mgmt. Corp.*, 207 F.3d 595, 598 (2000).

*Bernal* involved a bankruptcy petitioner, Martha Bernal, who sought the discharge of her student loan debt after giving birth to a child with severe medical problems. *See id.* at 596. Bernal's loans were obtained from Citibank and guaranteed by CSAC. *See id.* After Bernal obtained an entry of default, CSAC assigned the notes to ECMC. *See id.* at 597. ECMC's subsequent motion to intervene was denied by the bankruptcy court, which noted that "'at the time the complaint was filed – in fact, even at the time the default was entered, ECMC was not a proper party in intervention.'" *Id.* The Ninth Circuit agreed, stating that ECMC was not "a third party which had some interest in property that might somehow be impaired if it could not intervene." *Id.*

In contrast to the assignee in *Bernal*, Britannia here has had an interest in the subject matter of this litigation from the moment it was filed, because InsCorp seeks a declaration from this Court that it has no duty to cover the <u>claims raised by Britannia</u> in the Britannia Arbitration. [Compl. ¶ 40.] Since Britannia has had an interest in the subject matter of this litigation from its inception, it is a proper intervenor under FRCP 24(a). Furthermore, unlike the would-be intervenor in *Bernal* who did "not wish to confront the default by [its assignor] or attempt to

explain that default," Britannia, by its motion to intervene or substitute, seeks the opportunity to confront the default and has explained the circumstances of the default, as set forth in the declarations submitted by Britannia. *See Bernal*, 207 F.3d at 599. Moreover, because Britannia and Concrete Shell (now dissolved) are not repeat players in businesses that constantly involve lawsuits, unlike the lenders and bill collectors in *Bernal*, no "floodgates" would be opened by allowing Britannia to appear in this matter. *See id.* at 597.[7]

### III.     CONCLUSION

For the foregoing reasons, and for the reasons discussed in Britannia's opening memorandum, this Court should allow Britannia to intervene in this action, or, in the alternative, substitute in for named defendant Concrete Shell.

Dated: July 3, 2008                                             FOLGER LEVIN & KAHN LLP

/s/ Amy L. Kashiwabara
Attorneys for Britannia Pointe Grand Limited
Partnership, Assignee of Defendant Concrete
Shell Structures, Inc.

17035\3008\608080.2

---

[7] *Bernal* also supports Britannia's request, in the alternative, that it be allowed to substitute in for Concrete Shell because the *Bernal* court stated that if the assignee were allowed to substitute into the action, it would have to explain why "its predecessor, allowed its default to be taken." *Id.* at 599. This is exactly what Britannia seeks to do. Of course, in *Bernal*, unlike here, the assignee did not request substitution under FRCP 25(c). *Id.* at 597.

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-7-     BRITANNIA'S REPLY ISO MOTION TO INTERVENE
OR SUBSTITUTE; CASE NO. CV 07-05214 WHA