United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INSURANCE CORPORATION OF NEW YORK,<br><br>   Plaintiff,<br><br>   v.<br><br>H&H PLASTERING INC.,<br><br>   Defendant.<br>_____/ | No. C 07-05214 WHA<br><br>**ORDER GRANTING MOTION TO INTERVENE; GRANTING MOTION TO SET ASIDE ENTRY OF DEFAULT; AND VACATING HEARING** |

**INTRODUCTION**

In this insurance-contract action, plaintiff Insurance Corporation of New York requested that default judgment be entered against defendants H&H Plastering, Inc., and Concrete Shell Structure, Inc. Insurance Corporation was H&H's insurer. It wanted to reform its insurance policies with H&H and to not be held responsible for H&H's legal defense. H&H is no longer in business, and its former principal has been incapacitated by a serious car accident. Concrete Shell is a dissolved corporation. As part of the settlement in a related arbitration, Concrete Shell assigned to a third party, Britannia Pointe Grand Limited Partnership, all of Concrete Shell's rights and claims against H&H and H&H's insurers. Assignee Britannia now moves to intervene (or, in the alternative, to substitute for assignor defendant Concrete Shell) and to set aside entry of default. For the reasons stated below, the motion to intervene is **GRANTED** and the motion to set aside entry of default is **GRANTED.** The hearing set for July 17, 2008, is **VACATED**.

**STATEMENT**

Commercial property owner Britannia hired general contractor Concrete Shell to construct a building on one of its properties in San Francisco. Concrete Shell hired H&H as a subcontractor to install caulk joints and an exterior installation finishing system ("EIFS") on the building's exterior. The work was substantially completed in 1998. Britannia then became aware of construction defects in the project. In June 2004, Britannia filed an arbitration action against Concrete Shell. Concrete Shell, in turn, filed a cross-claim against the subcontractors that had installed the caulk joints and EIFS, which included H&H.

Insurance Corporation was H&H's insurer at the time. Although H&H requested, pursuant to its insurance policy, that Insurance Corporation provide a legal defense against Concrete Shell's claims in January 2005, Insurance Corporation did not agree to defend H&H until June 2007. The law firm of McCarthy & McCarthy eventually defended H&H for the Britannia arbitration. This legal defense is not ongoing in the instant action.

On October 11, 2007, another of Insurance Corporation's law firms, Roger, Scott & Helmer LLP, filed the instant action against H&H and Concrete Shell (but not Britannia). In their complaint, plaintiff claimed that the insurance policies at issue mistakenly omitted an EIFS exclusion, as originally intended by the parties. The alleged omission was first discovered after January 2005, when H&H requested legal defense against the Britannia action. In its complaint, Insurance Corporation sought the following: (i) reformation of the insurance policies to reflect the EIFS exclusion; (ii) declaratory relief saying that, under the reformed insurance policies, Insurance Corporation had no duty to defend H&H against the Britannia and/or the Concrete Shell claims; and (iii) declaratory relief saying that Insurance Corporation had no duty to indemnify H&H for these legal claims.

Meanwhile, the Britannia arbitration continued. Two different law firms appointed by two of Concrete Shell's different insurance companies handled Concrete Shell's defense in the arbitration: StarNet Insurance Company retained Archer Norris, and Travelers retained Robinson & Wood. Only StarNet retained coverage counsel for Concrete Shell. Archer Norris

associate Craig Jones first learned of the complaint filed by Insurance Corporation in the instant action when he received a copy of the complaint from his Concrete Shell client on October 15.

On October 26, Robinson & Wood partner David Henningsen spoke with Insurance Corporation's counsel, Norman Roger. Attorney Henningsen requested that Insurance Corporation refrain from seeking a default. He "made it clear that Concrete Shell intended to answer and protect its interests, but that the process for doing so needed to be worked out" (Henningsen Decl. ¶ 7). Insurance Corporation disagrees with this characterization of the conversation. Its counsel says that it cannot recall ever being asked not to enter default as to Concrete Shell.

But Attorney Henningsen then sent a fax on October 27, stating, "Could you please send me a copy of the complaint that you have filed against H&M [sic] Plastering? I would like to have the case defended for H&M [sic] and so I would request that you please not take a default at this time" (*id.* at ¶ 7; Exh. A). That same day, Attorney Roger emailed Attorney Henningsen a courtesy copy of the filed complaint. On October 31, Attorney Jones forwarded the complaint to a third-party claims adjuster for StarNet and to StarNet's coverage counsel, with the understanding that coverage counsel would respond to Insurance Corporation's complaint.

On November 7, the principal of H&H called Insurance Corporation, saying that H&H had gone out of business and asking what he should do. Attorney Roger responded that the H&H principal should consult with a lawyer, and if he did nothing, a default would be entered. After this phone call, Attorney Roger informed Attorney Henningsen about the conversation.

Concrete Shell was served with a summons and complaint herein on November 18, 2007. On November 26, Attorney Jones sent a follow-up email to the third-party claims adjuster. No answer was ever filed. On December 14, Insurance Corporation wrote to Concrete Shell, asking Concrete Shell to meet and prepare a joint statement for the status conference. Attorney Roger, representing Insurance Corporation, states in a sworn declaration that he never received a reply. On December 28, Insurance Corporation sent another letter to Concrete Shell stating that an answer was due and that the failure to respond would result in Insurance Corporation filing a request for default on January 4, 2008. Insurance Corporation filed and

served a case management conference statement on January 9. The statement detailed Insurance Corporation's previous correspondence with Concrete Shell and H&H.

In the meantime, on January 17, every party in the Britannia arbitration, except H&H, agreed to settle their respective claims against each other. As part of the settlement, Concrete Shell agreed to assign to Britannia all of Concrete Shell's rights and claims against H&H and H&H's insurers relating to the arbitration. On January 22, Insurance Corporation requested entries of default against Concrete Shell and H&H. Neither counsel for Concrete Shell (Archer Norris and Robinson & Wood) nor counsel for Britannia was served. Insurance Corporation also did not notify them of the request for entries of default. Insurance Corporation disagrees, saying that Concrete Shell's agent for service of process was served. The clerk entered default against Concrete Shell on January 24.

Britannia and Concrete Shell's counsel were not aware that default was entered against Concrete Shell until January 29. Britannia's counsel had discovered the entry of default and promptly notified Concrete Shell's counsel. After discussing how to resolve the matter, Britannia agreed to seek relief from this Court after Concrete Shell had assigned its rights and claims to Britannia.

On April 24, Attorney Henningsen wrote to Attorney Roger requesting that Insurance Corporation stipulate to withdrawing the default entered against Concrete Shell. He stated that "we were never informed of your default or given an opportunity to protect our interests until the default was already entered" (Henningsen Decl. Exh. B). Counsel never received a response from Insurance Corporation's counsel. The assignment agreement was finalized on April 30. Now that the assignment agreement has been finalized, Britannia intends to pursue its rights against Insurance Corporation. In May, Britannia moved to intervene and to set aside the entry of default.

## ANALYSIS

**1. INTERVENTION OF RIGHT.**

Britannia contends that it fulfills the requirements for an intervention as a matter of right. According to FRCP 24(a)(2), upon timely motion, a district court must permit anyone to

4

1  intervene who "claims an interest relating to the property or transaction that is the subject of the
2  action, and is so situated that disposing of the action may as a practical matter impair or impede
3  the movant's ability to protect its interest, unless existing parties adequately represent that
4  interest." *See also Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003). This rule
5  "traditionally receives liberal construction in favor of applicants for intervention. Courts are
6  guided primarily by practical and equitable considerations." *Ibid*. This order finds that
7  Britannia satisfies the four requirements of FRCP 24(a)(2).[1]

8  *First*, the intervention must be timely. "While the length of time that has passed since a
9  suit was filed is not, in and of itself, determinating of timeliness, '[a] party seeking to intervene
10 must act as soon as he knows *or has reason to know* that his interests might be adversely
11 affected by the outcome of the litigation.'" *California Dept. of Toxic Substances Control v.*
12 *Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1120 (9th Cir. 2002). The Ninth Circuit
13 considers three criteria to assess timeliness: the stage of the proceeding, the prejudice to other
14 parties, and the reason for and length of the delay. *United States v. State of Oregon*, 745 F.2d
15 550, 552 (9th Cir. 1984) (9th Cir. 1990) (holding that Idaho's application to intervene as of
16 right should not have been denied as untimely even though it filed the petition over a decade
17 after the litigation began).

18 Here, Insurance Corporation filed the complaint — of which Britannia was *not* a
19 defendant — in October 2007. Shortly thereafter, counsel for Concrete Shell requested that
20 Insurance Corporation not seek default. Counsel for Concrete Shell and Britannia were
21 unaware that default had been entered against Concrete Shell until late January 2008. The
22 agreement in which Britannia was assigned all of Concrete Shell's rights and claims against
23 H&H and H&H's insurers (which included Insurance Corporation) was not finalized until April
24 30. Britannia filed its motion to intervene in May. This order holds that Britannia timely filed
25 its motion to intervene. So far, there has been no litigation on the merits. There is also little
26 prejudice to Insurance Corporation as Britannia seeks to do what Concrete Shell and H&H

---

[1] Unless indicated otherwise, internal citations are omitted from all quoted authorities.

5

would have done had they participated in the action. Finally, Britannia's interest in the action had to be finalized before the application to intervene was filed.

*Second*, the applicant must have a "significantly protectable interest relating to the property or transaction that is the subject of the action." *Arakaki*, 324 F.3d at 1083. "An applicant generally satisfies the 'relationship' requirement only if the resolution of the plaintiff's claims actually will affect the applicant." *Id*. at 1084. Insurance Corporation seeks reformation of its insurance policies with H&H and declaratory relief saying that it had no duty to defend or indemnify H&H against the Britannia and/or Concrete Shell claims. In April 2008, Concrete Shell assigned all of its rights and claims to Britannia — including its claims against H&H and H&H's insurers. Brittania therefore has a significantly protectable interest relating to the insurance policies at issue.

*Third*, the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest. *Arakaki*, 324 F.3d at 1083. Insurance Corporation requests that its insurance contracts with H&H be reformed to include an EIFS exclusion. If Insurance Corporation were to prevail, Britannia could potentially lose over $1 million in insurance coverage. It does not matter that there has not yet been a liability determination. FRCP 24(a) only requires that disposition of the action *may* affect Britannia's rights. Consequently, Britannia's application satisfies this requirement.

*Fourth*, the existing parties must not be able to adequately represent the applicant's interests. *Arakaki*, 324 F.3d at 1083. The Ninth Circuit evaluates three factors to determine the adequacy of representation: whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; whether the present party is capable and willing to make such arguments; and whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect. In the instant action, the parties are unlikely to adequately represent Britannia's interest. Insurance Corporation's interests are adverse to Britannia's. H&H is defunct and its former principal has been severely disabled by an accident. Concrete Shell is a dissolved corporation that assigned its rights to Britannia. Neither named defendant has responded to the complaint. Britannia, as the proposed

6

1  intervenor, would litigate the matter on the merits. This order therefore concludes that no party
2  would represent Britannia's interest in the insurance coverage.

3       Insurance Corporation argues that equity favors denying Britannia's application for
4  intervention. Concrete Shell "allowed" this suit to go to default, plaintiff says. Britannia then
5  took the assignment from Concrete Shell with knowledge of the instant action and the entry of
6  default against Concrete Shell. After all, the assignment was finalized four months after
7  Britannia learned about the default. As assignee, Britannia has no more rights than Concrete
8  Shell had; if Concrete Shell suffered default, so must Britannia. "[P]ermitting intervention
9  would [open] the floodgates to a possible abuse . . . by allowing parties to sleep on their rights,
10 neglect their duties with respect to litigation and therefore avoid the consequences of such
11 conduct by merely assigning the subject matter to a third party after defaulting." *Bernal v.*
12 *Educational Credit Management Corp.*, 207 F.3d 595, 597–98 (9th Cir. 2000).

13      This order disagrees with Insurance Corporation. Britannia is correct to point out that
14 it is *permissive* intervention and not intervention *as of right* that is "subject to considerations of
15 equity and judicial economy." *Garza v. County of Los Angeles*, 918 F.2d 763, 777 (9th Cir.
16 1990). But even if equity were considered, it would not favor Insurance Corporation.
17 Although plaintiff says that "[e]vidence confirms there was no request [from Concrete Shell's
18 counsel to refrain from moving forward with default proceedings]," only Britannia provides
19 sworn declarations that it requested orally and in writing that counsel made such a request.
20 Britannia also provides sworn declarations saying that Insurance Corporation did not provide
21 counsel for Concrete Shell or Britannia with even a courtesy copy of the request for default.

22      Furthermore, it is not entirely accurate to say that Britannia knew of the default before
23 assignment occurred. Britannia knew of the default before the assignment agreement was
24 *finalized*. Britannia however actually agreed to accept the assignment from Concrete Shell on
25 January 17, 2008, five days *before* Insurance Corporation moved for entry of default on January
26 22. The clerk entered default on January 24.

27      *Bernal* is inapposite because it concerns a bankruptcy proceeding in which the would-be
28 intervenor was never a third party that had some interest in property that might somehow be

7

impaired if it could not intervene. In the instant action, Britannia has had an interest in the insurance policies from the filing of the complaint. Insurance Corporation's complaint specifically states, "Plaintiff is informed and thereon alleges that it does not have an obligation to indemnify H&H in relation to the Britannia claims and/or CSS [Concrete Shell] claims" (Compl. ¶ 40). All of these factors favor granting Britannia's application to intervene as of right.

### 2. SETTING ASIDE ENTRY OF DEFAULT.

Britannia, as intervenor, further moves pursuant to FRCP 55(c) to set aside the entry of default against Concrete Shell. FRCP 55(c) provides: "The court may set aside an entry of default *for good cause*, and it may set aside a default judgment under Rule 60(b). The Ninth Circuit has stated that "[t]he court's discretion is especially broad where, as here, it is entry of default that is being set aside, rather than a default judgment . . . 'Where timely relief is sought from a default . . . and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the [default] so that cases may be decided on their merits.'" *Mendoza v. Wight Vineyard Management*, 783 F.2d 941, 945–46 (9th Cir. 1986).

The Ninth Circuit examines three factors in determining whether or not there is "good cause": "whether the defendant's culpable conduct led to the default; whether the defendant has a meritorious defense; and whether reopening the default judgment would prejudice the plaintiff." *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001). This order holds that Britannia has shown good cause to set aside the entry of default against Concrete Shell.

*First*, Concrete Shell did not engage in "culpable conduct." Insurance Corporation of course disagrees, contending that Concrete Shell's failure to respond constituted inexcusable culpable conduct. Plaintiff cites *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987), for the proposition that "[a] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and failed to answer." Plaintiff then says that Concrete Shell was aware of its obligation to respond to the complaint, yet it chose to not respond.

8

The Ninth Circuit, however, has elaborated on this standard for culpable conduct since *Meadows*. "Neglectful failure to answer as to which the defendant offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process is not 'intentional' under our default cases, and is therefore not *necessarily* — although it certainly may be, once the equitable factors are considered — culpable or inexcusable." *TCI*, 244 F.3d at 697–98. The Ninth Circuit further explained, "[W]e have typically held that a defendant's conduct was culpable . . . where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *TCI*, 244 F.3d at 698.

Applying the *TCI* standard, this order holds that Concrete Shell's conduct did not meet the requisite level of culpability. Insurance Corporation served the complaint, which had been filed on October 11, on Concrete Shell's seventy-five years old former principal and registered agent. The principal then forwarded the complaint to Concrete Shell's counsel on October 15, long before any answer was due. Concrete Shell's counsel orally asked Insurance Corporation's counsel to refrain from seeking a default, a conversation plaintiff does not recall. On October 27, Concrete Shell's counsel also sent a written fax to plaintiff's counsel stating, "Could you please send me a copy of the complaint that you have filed against H&M [sic] Plastering? *I would like to have the case defended for H&M* [sic] *and so I would request that you please not take a default at this time*" (Henningsen Decl. Exh. A). Plaintiff does not dispute that this written request was sent; as a matter fact, plaintiff includes it in its recitation of facts in the opposition memorandum. Insurance Corporation emailed Concrete Shell's counsel a copy of the filed complaint. At that time, he did not object to Concrete Shell's request. Concrete Shell's attorney in the Britannia Arbitration referred the matter to coverage counsel, thinking that coverage counsel would respond (which it never did).

In January 2008, Britannia then agreed to settle its claims with every party in the Britannia Arbitration (except for H&H) — one provision of the settlement being that Concrete Shell would agree to assign Britannia all of Concrete Shell's rights and claims against H&H and H&H's insurers. One week later, Insurance Corporation applied for an entry of default without

9

providing notice to Britannia or Concrete Shell. The assignment was finalized on April 30, and Britannia moved to intervene and to set aside the entry of default the next day. This sequence of events shows that neither Concrete Shell nor its counsel engaged in conduct consistent with a devious, deliberate, willful, or bad faith failure to respond.[2]

*Second*, Concrete Shell has a meritorious defense against Insurance Corporation's claims. "A defendant seeking to vacate a default judgment must present specific facts that would constitute a defense. But the burden on a party seeking to vacate a default judgment is not extraordinarily heavy." *TCI*, 244 F.3d at 700.

In the instant action, Insurance Corporation requests reformation of its insurance policies to include the EIFS exclusion and declaratory relief saying that, under the reformed policies, Insurance Corporation had no duty to defend or indemnify H&H against Concrete Shell (and Britannia). Assignee Britannia raises numerous defenses against Insurance Corporation: (i) written contracts are presumed to correctly express the contracting parties' intentions, and there was no *mutual* mistake by plaintiff and H&H to justify reformation here; (ii) it was Insurance Corporation's own negligence that caused the mistake; (iii) Insurance Corporation cannot meet its heavier burden of adequately explaining why it made the alleged mistake within the policy it drafted; (iv) Insurance Corporation's action is barred by laches because it belatedly requested reformation almost eight years after the policies at issue became effective (and almost three years after H&H requested that plaintiff meet its defense obligation under these policies); and (v) Insurance Corporation's request for reformation was made years

---

[2] Insurance Corporation also cites *Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.*, 375 F.3d 922, 925 (9th Cir. 2004), where the Ninth Circuit affirmed the district court's decision to deny a defendant's motion for relief from default judgment. Again, this decision is distinguishable. In *Franchise Holding*, the plaintiff properly served defense counsel with the complaint. The parties tried to settle the case — but unsuccessfully. As a result, the plaintiff sent a letter to defendant stating that, because of a break down in negotiations, it had no choice but to pursue all of its rights and remedies, including "promptly prosecuting all existing litigation." A few days later, the plaintiff applied for entry of default, which the district court clerk entered that same day. Seven months later, the plaintiff requested that the district court enter default judgment against the defendant. The district court entered default judgment over a month after the plaintiff's request. The plaintiff then began collecting upon the judgment, approximately *ten months* after the clerk entered default against the defendant. Essentially, the defendant in *Franchise Holding* did not file anything until the plaintiff began to collect on the default judgment. In the instant action, however, no default judgment has been entered yet. Insurance Corporation gave no notice to Concrete Shell or Britannia that it requested entry of default from the clerk. Britannia moved to set aside default as soon as it was assigned Concrete Shell's rights and claims.

10

after the policy was executed and only after prejudice to third parties became apparent. This order holds that Britannia, as Concrete Shell's assignee, has presented a meritorious defense to Insurance Corporation's complaint, subject to proof.

*Third*, reopening the default judgment would not prejudice Insurance Corporation, as defined by the Ninth Circuit. "To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case. Rather, 'the standard is whether [plaintiff's] ability to pursue his claim will be hindered.'" *TCI*, 244 F.3d at 701. Examples of hindrance include the loss of evidence, increased difficulties of discovery, or a greater opportunity for fraud or collusion. *Ibid.* The Ninth Circuit further stated in *TCI*, "It should be obvious why merely being forced to litigate on the merits cannot be considered prejudicial for purposes of lifting a default judgment. For had there been no default, the plaintiff would of course have had to litigate the merits of the case, incurring the costs of doing so. A default judgment gives the plaintiff something of a windfall by sparing her from litigating the merits of her claim because of her opponent's failure to respond; vacating the default judgment merely restores the parties to an even footing in the litigation." *Ibid*.

This order holds that setting aside the entry of default would not prejudice plaintiff. Insurance Corporation has not shown that doing so would result in evidentiary or discovery problems or increase the risk for fraud. Rather, Insurance Corporation essentially complains that it would have to litigate the merits of the case: "InsCorp would be prejudiced greatly if it is forced to prosecute this action now after expending significant sums to pursue the default" (Opp. 1). As stated, the Ninth Circuit does not recognize being forced to litigate on the merits as prejudicial.

Insurance Corporation further attempts to oppose the motion on the ground that Britannia does not have standing to bring this motion. It argues that Concrete Shell assigned all of its all claims against H&H and H&H's insurers to Britannia on April 30, 2008, *after* default had been entered against Concrete Shell. Britannia therefore had no standing to inject itself into this action, plaintiff argues. *See United States for Use and Benefit of Wulff v. CMA, Inc.*, 890 F.2d 1070, 1074–75 (9th Cir. 1989) (holding that judgment creditors could not recover

11

from a contractor based on an assignment to them of a subcontractor's claim against the contractor because the creditors were aware at all times that the subcontractor was the real party in interest).

Plaintiff's reliance on *Wulff* is misplaced, however. In *Wulff*, the plaintiff creditors filed a complaint *before* they received an assignment of a Miller Act claim. The Ninth Circuit concluded that the later assignment could not relate back to create a Miller Act claim which the plaintiffs did not have when they filed their original complaint. *Id.* at 1074. In the instant action, Britannia did not seek to set aside the default until *after* Britannia finalized the assignment from Concrete Shell. Moreover, as discussed in the earlier section, Britannia is a proper intervenor that has assumed all of Concrete Shell's rights and claims against Insurance Corporation. Assignment aside, Insurance Corporation's complaint stated that it did not "have an obligation to indemnify H&H in relation to the Britannia claims and/or CSS [Concrete Shell] claims" (Compl. ¶ 40).

## CONCLUSION

For the foregoing reasons, Britannia's motion to intervene is **GRANTED**, and its motion to set aside entry of default (Dkt. No. 15) is **GRANTED**. Because oral argument is unnecessary, the hearing set for July 17, 2008, is **VACATED**.

**IT IS SO ORDERED.**

Dated: July 14, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE